UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.	Index No. 19-1171

                                                   **COMPLAINT AND**
                          Plaintiff,       **DEMAND FOR JURY TRIAL**

         v.

JDS DEVELOPMENT LLC;
SHOP ARCHITECTS LLP;
PROPERTY MARKETS GROUP, INC.;
CETRA/CRI ARCHITECTURE, PLLC; and
WERBER MANAGEMENT, INC.,

                          Defendants.
----------------------------------------------------------X

       Plaintiff Fair Housing Justice Center, Inc, by and through its attorneys, Cuti Hecker Wang LLP, for its Complaint alleges as follows:

## INTRODUCTION

       1.     JDS Development LLC is one of the largest luxury multi-family residential real estate developers in New York City.  With nearly a dozen large residential complexes already under its belt, and several more in the design and construction phase, JDS's properties have a meaningful impact on housing available to residents of New York City.

       2.     JDS boasts that it is "an industry leader that's reinventing the process through which major architectural projects are designed and built."

       3.     Unfortunately for individuals with disabilities, that process and JDS's signature "innovation" amount to a flagrant disregard for long-established legal requirements that newly designed and constructed residential properties must meet certain accessibility requirements and provide equal access to housing opportunities.

4. For over a decade, the Fair Housing Justice Center has worked to level the housing playing field for all New Yorkers by investigating and enforcing through litigation compliance with federal, state, and local fair housing laws. As a result of FHJC's persistent and effective efforts, much progress has been made to afford New Yorkers equal housing opportunities.

5. JDS's flouting of its legal obligations is all the more concerning given the considerable strides made to improve housing opportunities available to individuals with disabilities.

6. Plaintiff seeks to put an end to the rampant and offensive discrimination that JDS and its partners have engaged in for nearly a decade.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the FHAA. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's related claims arising under New York State and New York City laws.

8. Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination occurred in this District and one of the two residential apartment buildings that are the subject of this action is located in this District.

## JURY DEMAND

9. Plaintiff hereby demands a trial by jury.

## THE PROPERTIES

10. There are two pieces of real property at issue in this action.

11. The buildings located at 626 1st Avenue in Manhattan ("American Copper Buildings") are two connected residential apartment buildings with 41 and 48 stories, respectively, and consist of 760 luxury rental apartments. The American Copper Buildings were completed for partial occupancy beginning in 2017, and the project was completed and ready for full occupancy in 2018.

12. The building located at 202 Eighth Street in the Park Slope neighborhood of Brooklyn ("202 Eighth Street") is a 12-story, 51-unit luxury residential rental building that was completed for occupancy in 2011.

## PARTIES

13. Plaintiff FHJC is a non-profit organization incorporated in the State of New York and based in Long Island City. FHJC is dedicated to ensuring that all people have equal access to housing opportunities in the New York region by eliminating housing discrimination and creating open and inclusive communities. FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources away from other FHJC activities. Defendant's discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New York region.

14. JDS Development LLC ("JDS") is a limited liability company formed under the laws of the State of New York, with its headquarters located at 104 5th Avenue, 9th Floor, New York, New York 10011. JDS owns and developed the American Copper Buildings. JDS developed and constructed 202 Eighth Street.

15. SHoP Architects LLP ("SHoP") is a limited liability partnership formed under the laws of the State of New York with its principal place of business located at 233 Broadway, 11th

Floor, New York, New York 10279.  SHoP performed architectural services for the design and construction of the dwelling units and commons areas at American Copper Buildings.

16. Property Markets Group, Inc. ("PMG") is a New York corporation incorporated under the laws of the State of New York with a principal place of business located at 111 Fifth Avenue, 6th Floor, New York, New York, 10003.  PMG developed 202 Eighth Street in partnership with JDS.

17. CETRA/CRI Architecture, PLLC ("Cetra/Ruddy") is a professional service limited liability company formed under the laws of the State of New York with its headquarters located at One Battery Park Plaza, New York, New York, 10004.  CetraRuddy performed architectural services for the design and construction of the individual dwellings and common areas at 202 Eighth Street.

18. Werber Management, Inc. ("Werber") is a corporation formed under the laws of the State of New York with a principal place of business located at 40-52 75th Street, Elmhurst, New York, 11373.  Werber is the owner of 202 Eighth Street, and, as such has been responsible for the overall design and construction of the dwelling units and common areas at 202 Eighth Street.

19. Each Defendant participated in the design and construction process for one or both of the properties at issue in this action.  Consequently, each Defendant had an independent, non-delegable duty to comply with the requirements of federal, state, and local fair housing laws.

## FACTUAL ALLEGATIONS

**Statutory and Regulatory Framework**

20. In 1988, Congress enacted the Fair Housing Act Amendments ("FHAA").  According to the legislative history of the FHAA, Congress intended the amendments to reflect

4

the "clear pronouncement of a national commitment to end the unnecessary exclusive of persons with handicaps[1] from the American mainstream." H.R. Rep. No. 711.

21. Congress went on to describe the discriminatory effect created by architectural barriers to entry and use and enjoyment of a dwelling: "A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying 'No Handicapped People Allowed.'" H.R. Rep. No. 711.

22. Specifically, the FHAA mandates that any multi-family dwelling that consists of four or more dwelling units and is built for first occupancy after March 13, 1991 ("covered dwellings") must provide the following:

    a. At least one accessible building entrance on an accessible route;

    b. Accessible and usable public- and common-use areas, which include all parts of the building beyond the individual units;

    c. Doors designed to allow passage into and within all premises in such dwellings that are sufficiently wide to allow passage by persons using wheelchairs;

    d. An accessible route into and through each dwelling;

    e. Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

    f. Reinforcements in bathroom walls that allow for the later installation of grab bars; and

---

[1] While the FHAA uses the term "handicap" for "disability," both terms carry the same legal meaning. *See Bradgon v. Abbott*, 524 U.S. 624, 631 (1998). The term "disability" is generally more accepted, and this Complaint uses the two terms interchangeably.

5

    g.  Usable kitchens and bathrooms such that a person using a wheelchair can maneuver about the space.

23. To give meaning to the FHAA design and construction requirements, the United States Department of Housing and Urban Development ("HUD") promulgated the final FHAA design and construction regulations in January 1989, which are codified in 24 C.F.R. § 100.205. HUG published the final Fair Housing Accessibility Guidelines on March 6, 1991, 56 Fed. Reg. 9472 ("FHAAG"), which incorporate the requirements of the American National Standard for buildings and facilities providing accessibility and usability for people with physical disabilities, A117-1-1986 ("ANSE"), the *Fair Housing Act Design Manual* in August 1996, which was updated in August 1998, and the *Accessibility Requirements for Covered Multifamily Dwellings under the Fair Housing Act* in April 2013.

24. With nearly identical language to its federal counterpart, the New York State Human Rights Law prohibits failing to design and construct covered multi-family dwellings in an accessible manner. Article 15 of the New York Executive Law §§ 296(5), (18).

25. The New York City Human Rights Law likewise prohibits discrimination in housing accommodations. Section 27-292.8 of the NYC Administrative Code contains the accessibility requirements under the New York City Building Code. Section 8-107(5) characterizes the failure to comply with those accessibility requirements as an unlawful deprivation of the full use and enjoyment of a housing accommodation by individuals with disabilities.

**Fair Housing Justice Center**

26. Since 2005, the mission of the Fair Housing Justice Center has been to eliminate housing discrimination, promote open, accessible, and inclusive communities, and strengthen

enforcement of the fair housing laws.

27. FHJC's efforts to promote open and inclusive communities includes (a) providing information to the public and other non-profit organizations in the New York region about fair housing laws; (b) providing intake counseling to individuals and organizations with allegations of housing discrimination; (c) conducting testing and other investigations of allegations of housing discrimination; (d) making legal referrals to cooperating attorneys; (e) assisting with the preparation and filing of administrative housing discrimination complaints; and (f) providing post-referral litigation support services.  FHJC provides these and other services free of charge and without regard to income.

28. When conducting testing investigations into the accessibility of housing accommodations, FHJC dispatches individuals as "testers" – persons who pose as relatives or friends of prospective renters or homebuyers with disabilities for the purpose of obtaining information about the dwellings, including by taking measurements of particular components of the common areas and individual residential units.

29. Prior to participating in a testing investigation coordinated by FHJC, the testers receive training from FHJC, which includes instructions on conducting tests, preparing tester report forms, and using concealed digital audio recorders during the tests.

**Inaccessible Features of the American Copper Buildings Violate Fair Housing Laws**

30. The American Copper Buildings are two buildings that form a flashy, newly constructed luxury residential condominium complex overlooking the East River in Manhattan. The buildings are 41-stories and 48-stories, respectively, and are connected by a three-story "Skybridge."  There are a combined 760 residential rental units on the property.  All of the apartments in the American Copper Buildings are covered dwelling units as defined by the fair

housing laws.  Among the plethora of luxury amenities available in the American Copper Buildings is a fitness center, an indoor lap pool, a lounge/bar, and a communal outdoor space.  The individual residential units and all the common areas were designed and/or constructed by Defendants JDS and SHoP.

31.	On February 23, 2017, FHJC dispatched two testers to view one- and two-bedroom apartments at the American Copper Buildings.  The testers posed as a husband and wife who were looking for apartments on behalf of a relative with disabilities who uses a wheelchair.

32.	The testers met with a leasing agent named Jake Valente and another named Shanice Coull.  At the time of the testers' visit, the common areas, including the roof deck, fitness center, swimming pool, and private club and sky bar, were unable for viewing because construction had not yet been completed.

33.	FHJC sent a second set of testers on August 20, 2018 to view individual dwellings and the common areas.  That pair of testers were shown around by leasing agent Jake Valente, and they viewed available two- and three-bedroom apartments together.

34.	The testers observed the following on their visits to the American Copper Buildings:

    a)	Mailboxes were located inaccessibly high for a person using a wheelchair;

    b)	entrances to the individual dwellings were too narrow;

    c)	entrances to the bathrooms were too narrow;

    d)	the doorways/openings into the bedrooms in all apartments the testers viewed were too narrow;

    e)	there was a step down into the bathrooms in the apartments the testers viewed; and

f) environmental controls were located in inaccessible positions.

35. When one of the testers inquired about whether the bathroom walls were reinforced to allow for the later installation of grab bars, as required by law, the leasing agent said she did not know.

36. Upon information and belief, a full inspection of the American Copper Buildings will reveal the existence of other barriers to access.

37. As required by the FHAA, Plaintiff requires a full inspection of the American Coppers Building in order to document and seek remedy for areas of non-compliance not identified in this Complaint. Plaintiff intends on amending this Complaint to include any violations of fair housing laws during an inspection that are not contained herein.

**Inaccessible Features at 202 Eighth Street Also Violate Fair Housing Laws**

38. Several years before JDS developed and constructed the American Copper Buildings, it designed and constructed a different luxury residential rental property in violation of federal, state, and local accessibility laws.

39. 202 Eighth Street is a 12-story, 51-unit residential building in Park Slope, Brooklyn. It opened for occupancy in 2011. All of the apartments at 202 Eighth Street are covered dwelling units as defined by the Fair Housing Act. Among other amenities, 202 Eighth Street offers two landscaped common courtyards, a common roof deck with grilling capabilities, a fitness center, and bicycle and other storage. The individual apartments and common areas at 202 Eighth Street have been designed and/or constructed by Defendants JDS, PMG, Cetra/Ruddy, and Werber.

40. On August 29, 2018, FHJC dispatched two testers to 202 Eighth Street posing as two brothers who were viewing one- and two-bedroom apartments on behalf of a relative who uses a wheelchair.

41. The testers met with a woman named Amanda Boffa, a leasing agent for 202 Eighth Street, and they viewed one- and two-bedroom apartments together. The testers observed the following during their visit to 202 Eighth Street:

 a) The main entrance door, which is operated in a push/pull manner, was extremely heavy and did not have the capacity to open automatically. The leasing agent informed the testers that there is a door man on duty only from 7:00 a.m. until 11:00 p.m.;

 b) the mailboxes were obstructed by a 9-inch shelf under the lowest mailbox, and the highest mailbox was too high;

 c) the interior doorways to all the bathrooms and bedrooms in all three units they visited were too narrow;

 d) in at least one of the apartments they viewed, the walk-in closet doorway was too narrow;

 e) in at least one of the units they visited, the terrace had a high threshold;

 f) environmental controls in each of the three apartments the testers viewed were not in an accessible location;

 g) in at least one of the apartments they viewed, there was insufficient room in the galley kitchen; and

 h) the bathrooms lacked clear floor space.

42. Upon information and belief, a full inspection of 202 Eighth Street will reveal the existence of other barriers to access.

43. As required by the FHAA, Plaintiff requires a full inspection of 202 Eighth Street in order to document and seek remedy for areas of non-compliance not identified in this Complaint. Plaintiff intends on amending this Complaint to include any violations of fair housing laws discovered during an inspection, which are not contained herein.

**Defendants' Ongoing Design and Construction of Inaccessible Housing**

44. That Defendant JDS was responsible for and/or participated in the design and construction of two luxury residential projects over a seven-year time period, both of which contain similar design and construction features, demonstrates that Defendant JDS and its affiliated companies have a regular practice of designing and constructing multi-family residential dwellings in New York City in violation of federal, state, and local accessibility laws.

45. FHJC has identified other multi-family residential apartment buildings that Defendant JDS is currently in the process of designing and constructing in New York City. Among those ongoing projects, Defendants JDS, PMG, and SHoP are working in partnership to develop 111 West 57th Street, a 1,400-ft luxury residential skyscraper overlooking Central Park that is scheduled to be ready for occupancy in 2019.

46. Because construction is not completed on Defendant JDS's ongoing projects, FHJC is currently unable to assess whether the design and construction of those buildings comport with the fair housing laws' accessibility requirements.

47. Because of Defendant JDS's and its partners' regular and ongoing practice of designing and constructing inaccessible apartment complexes as described above, FHJC believes

11

that it will likely be injured by Defendant JDS's future design and construction of covered dwellings in New York City in violation of federal, state, and local laws.

## FIRST CAUSE OF ACTION

**(Federal Fair Housing Act – 42 U.S.C. § 3601 *et seq*.)**

48. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

49. Plaintiff is an aggrieved person as defined in 42 U.S.C. §§ 3602(d) and (i), has been injured by Defendants' discriminatory conduct, and has suffered damages as a result.

50. The apartment units at the American Copper Buildings and 202 Eighth Street are "covered multi-family dwellings" as defined by 42 U.S.C. § 3604(f)(7).

51. Defendants designed and/or constructed the covered multi-family dwellings and common use areas at the American Copper Buildings and 202 Eighth Street in violation of 42 U.S.C. § 3604(f)(3)(C).

52. As a direct and proximate result of Defendants' failure to design and construct the above-identified covered multi-family dwellings in compliance with the accessibility requirements of the Fair Housing Act, Plaintiff FHJC has suffered injury, including monetary damages.

53. Defendants' discriminatory practices frustrated and continue to frustrate Plaintiff's mission to ensure that all people have equal access to housing opportunities in the New York City region by designing and construction inaccessible housing.

54. As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the Fair Housing Act, inaccessible dwellings

have been constructed in New York City that reduce housing opportunities for persons with physical disabilities.

55. Upon information and belief, Defendants have and continue to design and construct additional multi-family dwellings and residential properties for first occupancy after March 13, 1992, which are subject to the FHAA, New York Executive Law, and New York City Administrative Code accessibility requirements, and which also violate those fair housing laws.

56. Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

57. Accordingly, pursuant to 42 U.S.C. §§ 3613(a) and (c), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law – N.Y. Exec. Law § 296 *et seq.*)**

58. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

59. Plaintiff is a person as defined by Executive Law § 292(1).

60. 202 Eighth Street and the American Copper Buildings are "housing accommodations" as defined by Executive Law § 292(10).

61. Defendants have designed and constructed the above-identified housing accommodations in violation of the accessibility requirements found in the Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

62. Defendants' conduct as set forth above constitutes an unlawful discriminatory practice that discriminates in the furnishing of housing accommodations in violation of the accessibility requirements found in Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

63. Defendants' conduct as set forth above constitutes aiding, abetting, inciting, compelling or coercing the doing of any of the acts forbidden by New York Executive Law § 296(5), in violation of the New York Executive Law § 296(6).

64. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been injured and continues to suffer damages, including diversion of resources and frustration of mission.

65. Accordingly, pursuant to Article 15 of the New York Executive Law § 297, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

66. Defendants' failure to design and construct was intentional, willful, or made in reckless disregard for the rights of others.

### THIRD CAUSE OF ACTION
**(New York City Human Rights Law – Administrative Code § 8-107 *et seq*.)**

67. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

68. Plaintiff is a person as defined by Administrative Code § 8-102(1).

69. 202 Eighth Street and the American Copper Buildings are "housing accommodations" as defined by Administrative Code § 8-102(10).

70. Defendants have designed and constructed the above-identified housing accommodations in violation of the accessibility requirements found in Administrative Code § 27-292.8.

71. Defendants' conduct constitutes the unlawful denial and/or withholding of housing accommodations from people with disabilities in violation of Administrative Code § 8-107(5)(a)(1).

72. Defendants' conduct constitutes the discriminatory furnishing of facilities or services in connection with housing accommodations on the basis of disability in violation of Administrative Code § 8-107(5)(a)(2).

73. Defendants' conduct as set forth above constitutes aiding, abetting, inciting, compelling or coercing the doing of any of the acts forbidden by the New York City Human Rights law, or the attempt to do so, in violation of Administrative Code § 8-107(6).

74. As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the New York City Human Rights Law, Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result, including diversion of resources and frustration of its mission.

75. Accordingly, pursuant to Administrative Code § 8-502, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

76. Defendants' failure to design and construct was intentional, willful, or made with reckless disregard for the rights of others.

77. Plaintiff will cause to be served a copy of this Complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to Administrative Code § 8-502(c).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a. An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*, the New York State Human Rights Law, New York Executive Law § 290 *et seq.*, and the New York City Human Rights Law Administrative Code § 8-107 *et seq.*;

  b. An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation from:

   (i) Discriminating against persons with disabilities in the design and/or construction of all dwellings;

   (ii) aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws;

  c. An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation to:

   (i) make or pay for all necessary modifications to their policies, practices, and procedures of designing and constructing multi-family residential buildings to conform and comply with fair housing and civil rights laws;

   (ii) train all management, agents, and employees on pertinent fair housing, civil, and human rights laws;

   (iii) allow for monitoring of its future design and construction processes;

   (iv) allow for periodic monitoring of the subject properties to ensure compliance;

   (v) retain records to allow for appropriate monitoring; and

   (vi) develop a written fair housing policy to be distributed to all employees and agents.

  d. An order and judgment awarding monetary damages to Plaintiff FHJC to compensate it fully for the economic losses, diversion of resources, and interference with mission fulfillment caused by Defendants' unlawful discriminatory practices;

  e. An order and judgment awarding punitive damages;

      f.      An order and judgment awarding Plaintiff reasonable attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

      g.      Interest on any and all such awards; and

      h.      Any further relief that may be just and proper.

Dated: New York, New York
       February 7, 2019

By:   /s/ Mariann Meier Wang
     Mariann Meier Wang
     Alice G. Reiter

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2603
mwang@chwllp.com
areiter@chwllp.com

*Attorneys for Plaintiff Fair Housing Justice Center*