UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

FAIR HOUSING JUSTICE CENTER, INC.

                        Plaintiff,

        -against-

JDS DEVELOPMENT LLC;                 Case No.: 1:19-cv-1171 (AT)(GWG)
616 FIRST AVENUE LLC; 202 8th LLC;
SHOP ARCHITECTS LLP;
PROPERTY MARKETS GROUP, INC.;
WERBER MANAGEMENT, INC.; and
202 PARK SLOPE LLC,

                        Defendants.

------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S**
**OPPOSITION TO DEFENDANT PROPERTY MARKETS GROUP, INC.'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**GORDON REES SCULLY MANSUKHANI, LLP**
ATTORNEYS FOR DEFENDANT
PROPERTY MARKETS GROUP, INC.
1 BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500
FAX: (212) 269-5505

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | ARGUMENT | | 3 |
| | A. | THE CONTINUING VIOLATIONS DOCTRINE DOES NOT APPLY TO TOLL THE STATUTE OF LIMITATIONS UNTIL THE ALLEGED VIOLATION IS REMEDIED | 3 |
| | B. | CONSIDERATION OF THE DATE OF INJURY DOES NOT CUT AGAINST DISMISSAL | 6 |
| | | 1. The Statute of Limitations does not Run from the Date of Injury | 6 |
| | | 2. The Date of Injury is the Date When Design and Construction was Completed | 7 |
| | C. | THE STATUTE OF LIMITATIONS BEGINS TO RUN ONCE DESIGN AND CONSTRUCTION IS COMPLETE | 8 |
| | D. | THE DISCOVERY RULE DOES NOT APPLY TO TOLL THE STATUTE OF LIMITATIONS | 9 |
| | E. | PMG IS NOT ENGAGED IN A CONTINUOUS POLICY OR PRACTICE OF DISCRIMINATION ACROSS MULTIPLE-PROPERTIES | 11 |
| | F. | PLAINTIFF'S CLAIMS UNDER THE NEW YORK STATE AND NEW YORK CITY HUMAN RIGHTS LAWS ARE TIME-BARRED | 12 |
| IV. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.Q.C. ex rel. Castillo v. United States*,
  656 F.3d 135 (2d Cir. 2011) .................................................................................................. 10

*Adkins v. Morgan Stanley*,
  2013 U.S. Dist LEXIS 104369 12 cv 7667 (HB) (S.D.N.Y. July 25, 2013) .......................... 11

*Alliance for Disabled In Action, Inc. v. Renaissance Enterprises, Inc.*,
  371 N.J. Super. 409 (App. Div. 2004) ..................................................................................... 3

*Del. State Coll. v. Ricks*,
  449 U.S. 250 (1980) ................................................................................................................. 6

*Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews*,
  210 Fed. Appx. 469 (6th Cir. 2006) ..................................................................................... 3, 8

*Garcia v. Brockway*,
  526 F.3d 456 (9th Cir. 2008) ............................................................................. 3, 4, 5, 7, 8, 9

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ............................................................................................................. 6, 7

*Kuchmas v. Towson Univ.*,
  No. RDB 06-3281, 2007 U.S. Dist. LEXIS 66689 (D. Md. Sept. 10, 2007) .......................... 4

*Moseke v. Miller & Smith, Inc.*,
  (202 F. Supp. 2d 492 (E.D. Va. 2002) ................................................................................. 3, 5

*Nuetzman v. Con-Way Transp. Serv., Inc.*,
  No. 06-2730 (PAM/JSM), 2007 U.S. Dist. LEXIS 73329 (D. Minn. 2007) .......................... 5

*Sentell v. RPM Mgmt. Co.*,
  653 F. Supp. 2d 917 (D. Kan. 2009) ........................................................................................ 8

*United States v. Taigen & Sons, Inc.*,
  303 F.Supp.2d 1129 (D. Idaho 2003) ...................................................................................... 3

*United States v. Tanski*,
  No. 1:04-CV-714, 2007 U.S. Dist. LEXIS 23606 (N.D.N.Y. Mar. 30, 2007) ........................ 9

**Statutes**

28 U.S.C. § 3621(a) ........................................................................................................................ 9

42 U.S.C. §3613(a)(1)(A) ................................................................................................ 5

# I. PRELIMINARY STATEMENT

In its opposition to Defendant Property Markets Group, Inc.'s ("PMG" or "Moving Defendant") motion to dismiss, Plaintiff Fair Housing Justice Center, Inc. ("FHJC") argues that the statute of limitations on its design and construction claims under the Fair Housing Act ("FHA") does not begin to run until either (1) remediation of the alleged violation, or (2) the date of injury to the aggrieved plaintiff, and not, as PMG contends, upon the completion of the design and construction phase or issuance of the final Certificate of Occupancy.[1] Plaintiff further contends that, even if the statute of limitations runs, as PMG argues, upon completion of the design and construction or the issuance of the final Certificate of Occupancy, the discovery rule serves to toll the statute of limitations until such time as the alleged violations are discovered. Plaintiff further contends, though without providing any specificity or substantiation, that PMG is engaged in an ongoing pattern of FHA violations, which, even if the Court rejects all of Plaintiff's other arguments, would create a continuing violation sufficient to extend the statute of limitations as to all claims against PMG.

While Plaintiff's opposition provides quantity, it fails to provide quality. Plaintiff's contention that the statute of limitations runs from the date of remediation has been soundly rejected by the courts and Plaintiff offers no legal support for its claim that the statute of limitations in design and construction cases under the FHA otherwise runs from the date of injury. Even if Plaintiff could support this position, tying the statute of limitations to the date of injury would support dismissal, as Plaintiff's injuries accrued at the completion of 202 Eighth Street's (the

---

[1] While PMG understands that for purposes of this motion to dismiss, all allegations in the Amended Complaint are deemed to be true, PMG denies any active involvement in the design and construction of the building at 202 Eighth Street, Park Slope, Brooklyn.

1

"Premises") design and construction phase, which, in this case, occurred more than two years prior to FHJC's initiation of this action.

Instead, courts across the country have supported PMG's position that the applicable statute of limitations runs from either the completion of the design and construction phase or the issuance of the final Certificate of Occupancy. Any work PMG performed with regard to the premises was completed by September 2013, when the Premises was sold. The final Certificate of Occupancy for the Premises was issued in December 2013. There can be no argument raised that PMG had any involvement in the Premises beyond 2013, and there can be no question that the statute of limitations began to run, at the latest, in December 2013, almost five years prior to the commencement of this action. Accordingly, Plaintiff's claims against PMG are barred by the FHA's two-year statute of limitations.

Plaintiff's assertion that the discovery rule applies to toll the statute of limitations is misguided, and is not supported by legal precedent. Moreover, application of the discovery rule to this matter is not necessary to promote fairness or protect Plaintiff from a scheme intended to circumvent the FHA's two-year statute of limitations. Additionally, the discovery rule is inapplicable as Plaintiff had ample time to inspect the Premises for any violations. Its failure to do so in a timely manner should not result in the indefinite extension of the statute of limitations.

Additionally, Plaintiff's effort to extend the statute of limitations based upon PMG's allegedly ongoing practice of designing or constructing inaccessible housing is unavailing. Plaintiff's allegations against PMG in this case invol*ve a single building constructed nearly six years ago*. Plaintiff provides zero evidence, or even allegations, of FHA violations at any other building with which PMG has been involved. Plaintiff's conclusory statements in this regard are insufficient to extend the statute of limitations in this matter.

Finally, even if Plaintiff is permitted to move forward with its claims against PMG, PMG is unable to provide injunctive relief, as its involvement with the Premises ended in 2013. Any claim against PMG would be limited to damages, streaming from violations at a building it has not been involved with for six years. Holding that PMG is liable for damages in such a situation would not only render the FHA's statute of limitations illusory, but would not comport with the principles of fairness.

## **II. ARGUMENT**

### A. <u>The Continuing Violations Doctrine does not Apply to toll the Statute of Limitations until the Alleged Violation is Remedied</u>

In FHA discrimination claims based on discriminatory design and construction, the continuing violations act does not, as Plaintiff erroneously contends, apply to toll the two-year statute of limitations until such time as the alleged violation is remedied. *See Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews*, 210 Fed. Appx. 469, 481 (6th Cir. 2006) (holding that the continuing violation doctrine applied *only* while some act pertaining to design and construction was being performed and that sale of the final unit triggered the two-year statute of limitations period); *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. May 13, 2008) (en banc) (declining to apply continuing violation doctrine and holding that even where the ill effects of design and construction continue, the failure to design and construct is a "single instance of unlawful conduct."); *Moseke v. Miller & Smith, Inc.*, (202 F. Supp. 2d 492 (E.D. Va. 2002) (stating that if the mere existence of non-compliance constitutes a continuing violation there is "no limitations period on a disability discrimination claim involving design and construction"); *United States v. Taigen & Sons, Inc.*, 303 F.Supp.2d 1129 (D. Idaho 2003) (finding that the continuing violation doctrine is inapplicable for purposes of a design and construction case); *Alliance for Disabled In Action, Inc. v. Renaissance Enterprises, Inc.*, 371 N.J. Super. 409, 422-423 (App. Div. 2004) (distinguishing

between a continuing effect and a continuing violation); *Kuchmas v. Towson Univ.*, No. RDB 06-3281, 2007 U.S. Dist. LEXIS 66689 (D. Md. Sept. 10, 2007).

The situation presented in *Kuchmas, supra*, mirrors the instant matter. Specifically, in that case, Plaintiff argued that the continuing violation doctrine should apply to extend the statute of limitations applicable to Plaintiff's claim under the FHA against the architect of a development, based on the ongoing presence of violations rendering the property inaccessible. *Id.* at *11 (D. Md. Sept. 10, 2007). The Court rejected Plaintiff's argument, concluding that the statute of limitations would be rendered meaningless if the continuing violations doctrine applied "because a company designing or constructing a non-compliant building could be subject to liability indefinitely." *Id.*

Similarly, in the instant matter, any involvement PMG had in the Premises ceased no later than September 2013, when the building was sold. To hold PMG liable for alleged design and construction violations more than six years after it severed its involvement with the Premises would render the statute of limitations illusory. Although Plaintiff advances this interpretation as inconsistent with the broad manner in which the protections of the FHA are to be applied, the fact that the FHA provides broad protections for individuals does not mean that its statute of limitations should be interpreted out of existence.

In fact, Plaintiff's lengthiest argument in favor of the application of the continuing violation doctrine comes from Judge Fisher's *dissent* in *Garcia, supra*, wherein Judge Fisher argues that the statute of limitations should not run until at least the time of injury resulting in the existence of an aggrieved person. *Garcia v. Brockway*, 526 F.3d 456, 470 (9th Cir. 2008).[2]

---

[2] As discussed below, even if the date of injury was the relevant date for statute of limitations purposes, the result would be the same, as the alleged injury occurred more than two years prior to the filing of the initial Complaint in this action.

4

Despite Plaintiff's claims to the contrary, the overwhelming case law across the country holds that the continuing violations doctrine will not apply to design and construction claims under the FHA. It is telling that Plaintiff is forced to rely largely upon a dissenting opinion in a case in which the majority expressly rejects Plaintiff's proposed application of the continuing violation doctrine to a situation similar to the one presented by the instant matter.

Plaintiff attempts to bolster its argument with a textual analysis of the FHA. The FHA provides that "an aggrieved person may commence a civil action in an appropriate United States district court or state court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. §3613(a)(1)(A). Plaintiff contends that the addition of the word "termination" into this provision indicates a clear intent, on the part of the legislature, to tie the FHA's statute of limitations to the date upon which the alleged violation has "terminated," which Plaintiff interprets to mean "remedied,"

Not only have the courts not adopted this interpretation, they have expressly rejected it. *See Garcia v. Brockway*, 526 F.3d at 462. In *Garcia, supra*, plaintiff raised an identical argument, but the court held that, in the context of design-and-construction claims, the alleged discriminatory failure to adequately design or construct is a "discrete instance of discrimination" that "terminates" at the conclusion of the design-and-construction phase, which is marked by the issuance of the final Certificate of Occupancy. *Id.*

As in *Garcia, supra*, FHJC confuses a continuing violation with the continuing effect of a past violation. *Id*; *see also Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d at 507 (providing that the continuing effects of prior discriminatory act do not constitute a continuing violation); *Nuetzman v. Con-Way Transp. Serv., Inc.*, No. 06-2730 (PAM/JSM), 2007 U.S. Dist. LEXIS 73329 * 6 (D. Minn. 2007) (providing that "a plaintiff cannot assert a continuing violation based

on isolated instances of discrimination in the past, even if effects of the discrimination continue into the present.").

PMG's allegedly discriminatory violation is the failure to properly design or construct the Premises. The design and construction of the Premises is complete and, therefore, the allegedly discriminatory violation has terminated. The effects of the alleged violation may continue, but their continued existence does not serve to extend the statute of limitations. To permit such an outcome would indefinitely extend the statute of limitations and would provide no finality to PMG in any of its projects. *Del. State Coll. v. Ricks*, 449 U.S. 250, 256-57 (1980) (providing that the limitations period "protects defendants from the burden of defending claims arising from…decisions that are long past.").

Given the cases discussed herein, it is clear that the statute of limitations on design-and-construction claims under the FHA does not begin to run, as Plaintiff contends, only upon remediation of the alleged defect. As such, Plaintiff's contentions that the continuing violations doctrine applies to the instant matter and that the statute of limitations begins to run upon remediation of the alleged violation, fail.

B. Consideration of the Date of Injury does not Cut Against Dismissal

1. The Statute of Limitations does not Run from the Date of Injury

Plaintiff argues that even if the statute of limitations does not begin to run upon remediation, its claims against PMG are still timely, because the statute of limitations must begin to run no earlier than the date of injury.

This contention, however, does not find support in the case law. Plaintiff cites to *Havens Realty Corp. v. Coleman* for support. *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). Plaintiff's reliance on *Havens Realty* is misguided. *Havens* involved the ongoing practice of racial

6

steering – advising white individuals that apartments were available while denying availability to black individuals – which was held to be a continuing violation, distinct from "one discrete act of discrimination," which is how the courts have regularly treated alleged design and construction violations. *Id.* at 379. As such, *Havens* is, in this regard, inapplicable to this case. Plaintiff provides no other legal support, other than Judge Fisher's dissent in *Garcia, supra,* for its contention that the statute of limitations runs from the date of injury.

While Plaintiff relies on Judge Fisher's dissent, Plaintiff fails to acknowledge the majority opinion expressly rejects this interpretation, holding that "the FHA's limitations period does not start when a particular disabled person is injured...but [is started by] the occurrence or the termination of an alleged discriminatory housing practice." *Garcia v. Brockway*, 526 F.3d at 464.

### 2. The Date of Injury is the Date When Design and Construction was Completed

Even if this Court, however, determines that the statute of limitations does, in fact, run from the date of injury, then dismissal remains proper.

Plaintiff is a non-profit organization incorporated in New York, "dedicated to ensuring that all people have equal access to housing opportunities in the New York region by eliminating housing discrimination ..." *See* Amended Complaint ¶ 13. Plaintiff is not an individual who has been prevented from residing at the Premises because of a specific FHA violation. Rather, Plaintiff contends that PMG's alleged violations have frustrated Plaintiff's mission to ensure that all people have equal access to housing and have required Plaintiff to divert its resources. *See* Amended Complaint ¶¶ 55, 66.

If the existence of inaccessible housing frustrates Plaintiff's purpose, such frustration occurs at the time the inaccessible housing is available for occupancy. Therefore, Plaintiff becomes "aggrieved" under the FHA at the time construction is complete on an inaccessible dwelling or, at


7

the very latest, when that dwelling is sold, and not, as Plaintiff contends, at the time of testing. Adoption of Plaintiff's proffered interpretation would have the unintended and absurd effect of extending the statute of limitations indefinitely – until such time as Plaintiff decided to devote resources to conducting an inspection.

Plaintiff's injury in this matter occurred no later than September 2013, at the time of the sale of the Premises. As such, even if the statute of limitations were to run from the date of injury, Plaintiff's claims against PMG would still be untimely and would be barred by the applicable two-year statute of limitations.

C. The Statute of Limitations Begins to Run Once Design and Construction is Complete

Courts across the country have determined that FHA claims arising out of the design or construction of a building accrue – and the limitations period commences – when the final certificate of occupancy is issued or when the final allegedly inaccessible unit is sold. *See Garcia v. Brockway*, 526 F.3d 456 at 462. (holding, in design and construction case under the FHA, that limitations period began to run on the date the final certificate of occupancy was issued); *see also Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews*, 210 Fed. Appx. at 481 (holding that the continuing violation doctrine applied *only* while some act pertaining to design and construction was being performed and that sale of the final unit triggered the two-year statute of limitations period); *Sentell v. RPM Mgmt. Co.*, 653 F. Supp. 2d 917, 922 (holding that the statute of limitations for design-and-construction claims under the FHA begins to run upon the substantial completion of the building). Plaintiff, in contesting this position, again relies on the dissenting opinion of Judge Fisher in *Garcia, supra*. In doing so, Plaintiff willfully ignores that the majority opinion in that decision expressly held that the statute of limitations in design and construction cases under the

FHA begins to run as of the date the final certificate of occupancy is issued. *Garcia v. Brockway*, 526 F.3d at 462.

In supporting its position, Plaintiff also ignores the U.S. District Court decision in the Northern District of New York, *United States v. Tanski*, No. 1:04-CV-714, 2007 U.S. Dist. LEXIS 23606 (N.D.N.Y. Mar. 30, 2007). In *Tanski*, the United States sought civil penalties under 28 U.S.C. § 3621(a), and the court held that the statute of limitations for such claims begins to run, in design and construction cases, "upon the issuance of the final certificate of occupancy." *Id.* at 22. The Court subsequently stated that there was no basis to hold that a claim for non-compliant design or construction under the FHA would accrue in any other manner. *Id.*

There is ample support for the position that the statute of limitations in design and construction claims under the FHA runs as of the completion of the design and construction phase, which multiple courts have determined to be the issuance of the final Certificate of Occupancy.

In the instant matter, the final Certificate of Occupancy was issued in December 2013, three months after the building was sold and any alleged work PMG may have performed was complete. Therefore, the very latest point at which the statute of limitations could begin to run against PMG was December 2013, nearly five years prior to the commencement of this action. As a result, Plaintiff's claims against PMG are barred by the FHA's two-year statute of limitations.

### D. The Discovery Rule does not Apply to Toll the Statute of Limitations

Plaintiff contends that, even if PMG's interpretation as to the running of the statute of limitations is accurate, the discovery rule tolls the statute of limitations until the time at which Plaintiff discovered the alleged violations. As PMG set forth in its memorandum of law in support of its motion to dismiss, Plaintiff cannot demonstrate that it "would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted," as required to trigger application

of the discovery rule. *See A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139-40 (2d Cir. 2011).

Here, there is no indication that Plaintiffs were barred from inspecting the Premises or that the alleged violations were not readily apparent upon inspection. Part of Plaintiff's mission statement is to review potentially inaccessible housing and it is not "absurd," as Plaintiff contends, for an organization dedicated to such activities to conduct them in a timely manner. Plaintiff's failure to inspect the Premises within two years does not justify an indefinite extension of the statute of limitations applicable to this matter.

Moreover, applying the discovery rule in this matter would achieve neither of the purposes Plaintiff cites as reasons for applying the discovery rule in this matter: (1) to create fairness; and (2) to avoid sophisticated schemes using the law to facilitate injustice.

It can hardly be argued that holding PMG liable for any work it may have performed on the Premises more than five years prior to the commencement of this action, despite the two-year statute of limitations under the FHA, is necessary to promote fairness. This is particularly true where, as here, Plaintiff may recover from other defendants against whom timely claims have been filed. Moreover, there is no indication that PMG attempted to manipulate the law in order to avoid liability for the alleged violations. There is no allegation, for example, that PMG delayed the sale of the Premises in an effort to run the statute of limitations prior to making the units available to residents. In fact, the building was sold in September 2013, three months *prior* to the issuance of the final Certificate of Occupancy.[3] Application of the discovery rule to this case would harm PMG without achieving any of the purposes Plaintiff cites in favor of its application.

---

[3] 202 8th Street was sold in September 2013 to co-defendant Werber. *See* Deed of Sale, Exhibit A. PMG has had no involvement with the building since that time and there is no allegation in the Amended Complaint to the contrary.

10

Finally, Plaintiff's reliance upon *St. Jean v. Emigrant Mortg. Co.* and *Adkins v. Morgan Stanley* is misplaced. Those claims did not address singular FHA design and construction violations, but rather, addressed patterns of discriminatory and abusive home mortgages, where extending the statute of limitations was necessary to achieve fairness. For example, In *Adkins*, the Court applied the discovery rule because the disparate impact created by the facially neutral policy at issue was undetectable during the limitations period. *Adkins v. Morgan Stanley*, 2013 U.S. Dist LEXIS 104369 12 cv 7667 (HB) (S.D.N.Y. July 25, 2013).

Plaintiff provides no legal authority supporting the application of the discovery rule to claims of design and construction violations under the FHA and alleges no special circumstances rendering application of the discovery rule necessary in this matter. In fact, it is clear that with reasonable diligence, Plaintiff could have discovered the alleged injury long before August 2018, when it first dispatched testers to the Premises.

Plaintiff, therefore, cannot avail itself of the discovery rule in order to extend its time to bring this action against PMG.

### E. PMG is not Engaged in a Continuous Policy or Practice of Discrimination Across Multiple-Properties

Plaintiff, in its opposition, argues that the continuing violations doctrine applies to toll the statute of limitations in this matter, because PMG is currently engaged in work on a separate building with co-defendant JDS Development, LLC ("JDS"). *See* Amended Complaint ¶¶ 47-49.

Plaintiff, however, offers no factual basis for its belief that PMG has engaged in any conduct that violates the FHA with regard to this new building. Plaintiff has not inspected this new property and operates on nothing but assumptions. Nor does Plaintiff allege that PMG has committed any FHA violations with regard to any other properties in the intervening years between the sale of the Premises in September 2013 and the present.

Plaintiff's merely conclusory statements that PMG continues to commit unlawful, discriminatory violations, without anything further, are simply insufficient to justify application of the continuing violations doctrine. Plaintiff's conclusory allegations against PMG, relating to this new property, represent nothing more than a naked attempt at circumventing the FHA's statute of limitations, which clearly bars Plaintiff's claims against PMG in this action. Indeed, far from supporting Plaintiff's argument, the fact that Plaintiff has failed to identify a single FHA violation in any other property in which PMG has been involved all but refutes the claim that PMG has a policy or practice of violating the FHA.

F. <u>Plaintiff's Claims Under the New York State and New York City Human Rights Laws are Time-Barred</u>

PMG, for the same reasons as detailed above, reiterates the position set forth in its memorandum of law in support of its motion to dismiss, that Plaintiff's claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") are time-barred.

Plaintiff's only substantive argument in this regard, that the NYSHRL and, particularly, the NYCHRL, are to be interpreted broadly, relates to the protections afforded to individuals. Plaintiff cites no legal support that this broad interpretation extends to the statute of limitations governing these statutes, which are clearly drafted to provide three years for claims.

As Plaintiff contends, the analysis under the NYSHRL and NYCHRL is similar to that under the FHA. As detailed above, PMG's involvement with the Premises ceased in 2013. To the extent Plaintiff contends that PMG violated the NYSHRL and NYCHRL by failing to design and/or construct the Premises in a manner that complies with the FHA, PMG's allegedly discriminatory conduct could not have extended beyond 2013, when PMG's involvement with the Premises ceased. As Plaintiff filed its initial Complaint more than five years after PMG's alleged

involvement with the Premises came to an end, Plaintiff's claims against PMG under the NYSHRL and NYCHRL, like its claims under the FHA, are time-barred and must be dismissed.

## IV. CONCLUSION

For all the foregoing reasons, Defendant PMG respectfully requests that the Court dismiss Plaintiff's Amended Complaint with respect to Moving Defendant, and grant such other and further relief that this Court deems just and proper.

Dated: New York, New York
August 28, 2019

Respectfully Submitted,

GORDON REES SCULLY
MANSUKHANI LLP

By: _____
Mercedes Colwin
Christopher A. Seacord
Jeffrey A. Camhi
1 Battery Park Plaza, 28th Floor
New York, NY 10004
Tel: (212) 269-5500
Fax: (212) 269-5505
Email: mcolwin@grsm.com
cseacord@grsm.com
jcamhi@grsm.com

*Attorneys for Defendant Property Markets Group, Inc.*

# EXHIBIT A

| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br>2013091100806006006E599A |
|---|---|

**RECORDING AND ENDORSEMENT COVER PAGE**      PAGE 1 OF 7

Document ID: 2013091100806006    Document Date: 09-03-2013    Preparation Date: 09-11-2013
Document Type: DEED
Document Page Count: 5

| PRESENTER: | RETURN TO: |
|---|---|
| CHICAGO TITLE INSURANCE CO. (PICK-UP)<br>711 THIRD AVE, 5TH FLOOR<br>3413-00105<br>NEW YORK, NY 10017<br>212-880-1200<br>NYCOMMOPS@CTT.COM | CHICAGO TITLE INSURANCE CO. (PICK-UP)<br>SMITH GAMBRELL & RUSSELL<br>488 MADISON AVENUE, SUITE 1600<br>NEW YORK, NY 10022 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1003 | 29 Entire Lot | | 202 8 STREET |
| Property Type: | APARTMENT BUILDING | | | |
| Borough | Block | Lot | Unit | Address |
| BROOKLYN | 1003 | 32 Entire Lot | | 204 8 STREET |
| Property Type: | APARTMENT BUILDING | | | |

☒ Additional Properties on Continuation Page

**CROSS REFERENCE DATA**

CRFN_____ or  DocumentID_____ or  _____ Year____ Reel____ Page____ or File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 202 8TH LLC<br>104 FIFTH AVENUE, 9TH FLOOR<br>NEW YORK, NY 10011 | 202 PARK SLOPE LLC<br>40-52 75TH STREET<br>ELMHURST, NY 11373 |

**FEES AND TAXES**

| Mortgage: | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 250.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 990,937.50 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 151,000.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| NYCTA: | $ | 0.00 | Recorded/Filed  09-20-2013 09:20 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | 2013000387801 | |
| Recording Fee: | $ | 68.00 | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | |

| | |
|---|---|
| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br>2013091100806006006E599A |

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 7 |
|---|---|

Document ID: 2013091100806006  Document Date: 09-03-2013  Preparation Date: 09-11-2013
Document Type: DEED
Document Page Count: 5

| PRESENTER: | RETURN TO: |
|---|---|
| CHICAGO TITLE INSURANCE CO. (PICK-UP)<br>711 THIRD AVE, 5TH FLOOR<br>3413-00105<br>NEW YORK, NY 10017<br>212-880-1200<br>NYCOMMOPS@CTT.COM | CHICAGO TITLE INSURANCE CO. (PICK-UP)<br>SMITH GAMBRELL & RUSSELL<br>488 MADISON AVENUE, SUITE 1600<br>NEW YORK, NY 10022 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1003 | 29 Entire Lot | | 202 8 STREET |

Property Type: APARTMENT BUILDING

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1003 | 32 Entire Lot | | 204 8 STREET |

Property Type: APARTMENT BUILDING

[X] Additional Properties on Continuation Page

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____ Year____ Reel____ Page____ or File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 202 8TH LLC<br>104 FIFTH AVENUE, 9TH FLOOR<br>NEW YORK, NY 10011 | 202 PARK SLOPE LLC<br>40-52 75TH STREET<br>ELMHURST, NY 11373 |

### FEES AND TAXES

| Mortgage: | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | $ | 250.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 990,937.50 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 151,000.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 68.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed   09-20-2013 09:20
City Register File No.(CRFN): 2013000387801

*Annette M Hill*
*City Register Official Signature*