USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/9/2020__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAIR HOUSING JUSTICE CENTER, INC.,

    Plaintiff,

-against-

JDS DEVELOPMENT LLC; 616 FIRST AVENUE LLC;
202 8TH LLC; SHOP ARCHITECTS LLP; PROPERTY
MARKETS GROUP, INC.; CETRA/CRI
ARCHITECTURE, PLLC; WERBER MANAGEMENT,
INC.; and 202 PARK SLOPE LLC,

    Defendants.

19 Civ. 1171 (AT)

**OPINION
AND ORDER**

ANALISA TORRES, District Judge:

    This motion to dismiss raises the question of when the limitations period starts to run for Fair Housing Act ("FHA") disability discrimination claims premised on that law's requirement that "the design and construction of covered multifamily dwellings" meet certain accessibility requirements. 42 U.S.C. § 3604(f)(3)(C). Plaintiff, Fair Housing Justice Center, Inc., sent testers to a residential building developed by Defendant Property Markets Group, Inc. ("PMG") and others. Compl. ¶ 42, ECF No. 94. Plaintiff claims that those testers discovered a number of features of the building that were not compliant with the FHA, as well as the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 209 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq. Id.* ¶¶ 43, 50–54, 60–65, 69–75. PMG moves to dismiss the amended complaint solely on statute of limitations grounds, arguing that the statute of limitations for any design-or-construction claim under those laws runs from the date that the last unit in the building was rented or sold. ECF No. 110; Def. Mem. at 2, ECF No. 111. But that position is not consistent with the text, background, and purpose of the FHA, and

is contrary to state and local law. Accordingly, for the reasons stated below, PMG's motion is DENIED.

## BACKGROUND

The following facts are drawn from Plaintiff's amended complaint, and accepted as true for the purposes of this motion. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) ("On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive.").

202 8th Street (the "Park Slope Building") is a 12-story, 51-unit rental residential building in Park Slope, Brooklyn. Compl. ¶¶ 40–41. It was developed by two of the Defendants: JDS Development LLC, and PMG, *id.* ¶¶ 14, 18, and owned by 202 8th LLC, an LLC associated with JDS Development, *id.* ¶ 15. It opened for occupancy in 2011. *Id.* ¶ 41. In September 2013, 202 8th LLC sold the Park Slope Building to 202 Park Slope LLC, another Defendant, which is associated with Defendant Werber Management Inc. *Id.* ¶¶ 19–20; Deed, ECF No. 112 Ex. A.[1]

Plaintiff is an advocacy organization that "work[s] to level the housing playing field for all New Yorkers by investigating and enforcing through litigation compliance with federal, state, and local fair housing laws." Compl. ¶ 4. Plaintiff investigates potential unlawful inaccessibility in residential buildings by "dispatch[ing] individuals as 'testers' – persons who pose as relatives

---

[1] The Court may take judicial notice of the publicly recorded deed on this motion to dismiss. "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see Awan v. Ashcroft*, No. 09 Civ. 1653, 2010 WL 3924849, at *2 (E.D.N.Y. Sept. 28, 2010) ("On a motion to dismiss, courts may take judicial notice of public records, such as properly recorded deeds.").

or friends of prospective renters or homebuyers with disabilities for the purpose of obtaining information about the dwellings, including by taking measurements of particular components of the common areas and individual residential units." *Id.* ¶¶ 29–30. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) ("'[T]esters' are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful . . . practices.").

On August 29, 2018, Plaintiff sent two testers to the Park Slope Building. Compl. ¶ 42. The testers posed as brothers interested in viewing one-bedroom and two-bedroom apartments on behalf of a relative who uses a wheelchair. *Id.* The testers met with a leasing agent, who showed them several apartments. *Id.* ¶ 43. Inspection of the building and those apartments by the testers revealed the following inaccessible elements:

> [1] The main entrance door, which is operated in a push/pull manner, was extremely heavy and did not have the capacity to open automatically. The leasing agent informed the testers that there is a door man on duty only from 7:00 a.m. until 11:00 p.m.;
>
> [2] the mailboxes were obstructed by a 9-inch shelf under the lowest mailbox, and the highest mailbox was too high;
>
> [3] the interior doorways to all the bathrooms and bedrooms in all three units they visited were too narrow;
>
> [4] in at least one of the apartments they viewed, the walk-in closet doorway was too narrow;
>
> [5] in at least one of the units they visited, the terrace had a high threshold;
>
> [6] environmental controls in each of the three apartments the testers viewed were not in an accessible location;
>
> [7] in at least one of the apartments they viewed, there was insufficient room in the galley kitchen; and
>
> [8] the bathrooms lacked clear floor space.

*Id.*

Plaintiff filed suit against JDS Development and PMG (as well as other Defendants not relevant to this motion) on February 7, 2019. ECF No. 1.

**DISCUSSION**

I.   Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On such a motion, the Court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that Plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)

II.   Fair Housing Act

PMG argues that Plaintiff's action is barred by the FHA's two-year limitations period. That provision provides:

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A). PMG contends that Plaintiff's suit falls outside the statute of limitations because an FHA claim arising out of the design or construction of a residential building accrues—and thus, the limitations period begins to run—either when the last certificate of occupancy for the building is issued, or the last unit in the building is sold. Def. Mem. at 4–5. PMG states that the building as a whole was sold in September 2013, and that the final certificate of occupancy was issued in December 2013, making Plaintiff's February 2019 suit untimely. *Id.* at 5–6.

Plaintiff argues that PMG misapprehends the law. Plaintiff maintains that a design-or-construction claim does not accrue at the time that a building is sold or fully occupied, but rather remains available either until the plaintiff experiences the discrimination, or until the violation is remedied. Pl. Opp. at 2, ECF No. 133.

The Second Circuit has not addressed the question of when the limitations period begins to run, and each position finds support in opinions from other courts. PMG's argument closely tracks the holding of the *en banc* Ninth Circuit in *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) (*en banc*). The Ninth Circuit held that because the discriminatory practice at issue in a design-or-construction suit "is the failure to design and construct a multifamily dwelling according to FHA standards . . . [t]he statute of limitations is thus triggered at the conclusion of the design-and-construction phase, which occurs on the date the last certificate of occupancy is issued." *Id.* at 461. PMG's position is also similar to that taken by the Sixth Circuit in an unpublished opinion in *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 F. App'x 469, 480 (6th Cir. 2006). There, the Sixth Circuit held that "[i]n the context of the construction and design of multifamily dwelling units that are inaccessible to disabled individuals, the discriminatory act occurs during the sale or rental of that unit. Thus, once a unit

has been sold or rented, the discriminatory act is complete," and the two-year limitations period begins to run. *Id.* The court recognized that "where the plaintiff alleges that the owner or developer engaged in a policy or practice throughout the entire development of constructing housing units that fail to comply with the FHA, the continuing violations doctrine applies to toll the statute of limitations until the sale of the last unit in that development," but did not address the possibility that the limitations period could be extended beyond that point. *Id.* at 481. The court qualified its holding, however, noting that it was addressing the rule that applied to a building with units for sale, and that "the limitations period will depend on the specific circumstances of each case." *Id.* at 481 & n.6.

Plaintiff's argument that inaccessible construction or design reflects a continuing violation, meanwhile, is supported by the published decision of a court in this circuit in *Eastern Paralyzed Veterans Association v. Lazarus-Burman Associates*, 133 F. Supp. 2d 203 (E.D.N.Y. 2001). In that case, the court concluded that inaccessible construction or design represents not "a discrete violation of the FHA, but instead describes an unlawful practice" that begins at the date of construction, and continues until remedied. *Id.* at 213. The court determined that such a "continuing violation" means that a claim is timely regardless of when the discriminatory condition first materialized, or was first encountered. *Id.* At least one other court has also taken this position. *See Montana Fair Hous., Inc. v. Am. Capital Dev., Inc.*, 81 F. Supp. 2d 1057, 1063 (D. Mont. 1999).

Finally, Plaintiff's argument that the limitations period does not begin to run until the plaintiff actually experiences the discrimination embedded in the design or construction mirrors the position taken by the dissent in *Garcia*, written by the Honorable Raymond C. Fisher. *See* 526 F.3d 467 (Fisher, J., dissenting). The Ninth Circuit dissenters argued that "[t]he most natural

6

reading of" the FHA's language is that the "statute of limitations is triggered when someone is aggrieved by one of the unlawful actions specified by § 3604(f)(1) or § 3604(f)(2), with the two-year period running from the occurrence or termination of the offending practice," and consequently that "[t]he limitations period for a disabled would-be buyer or renter or tester thus begins (at the earliest) when that individual first attempts to buy or rent or tests a FHA-noncompliant unit." *Id.* at 469. That is so because "[a]t that point—but not previously—it can be said that a real estate developer or landlord has discriminated in the sale or rental, or has otherwise made unavailable or denied a dwelling to the individual because of a handicap, or has discriminated against the individual in the terms, conditions, or privileges of sale or rental of a dwelling because of a handicap. Until then, the disabled person has not been subjected to any discriminatory action." *Id.* (internal quotation marks, citations, and alterations omitted).

The Court is persuaded that Judge Fisher's construction of the statute is the correct one. The text of the statute, the nature of the cause of action it creates, and the purposes it was enacted to advance all indicate that a claim based on inaccessible design or construction accrues when a person experiences the violation, and thus that the limitations period extends two years from that date.

    A.    Text

The Court "begin[s] [its] interpretation of a federal statute with the statutory text." *United States v. Maynard*, 743 F.3d 374, 378 (2d Cir. 2014). Several provisions of the FHA are relevant to understanding the meaning of the statute's limitations period. First is Section 3613(a)(1)(A) itself, which contains the limitations period. For convenience, the Court will reproduce that section here:

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the

> termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A).

Second is the definition of "discriminatory housing practice" as used in Section 3613(a)(1)(A). A "discriminatory housing practice . . . means an act that is unlawful under section 3604 . . . of this title." *Id.* § 3602(f). Among other actions, Section 3604 makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter[;] a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that buyer or renter," *id.* § 3604(f)(1), and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person; or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that person," *id.* § 3604(f)(2). Section 3604 further provides that one act that constitutes prohibited discrimination is a failure to design or construct a dwelling accessible to persons with disabilities. *Id.* § 3604(f)(3)(C).

Reading those provisions in concert makes it clear that Section 3613(a)(1)(A) requires a suit to be brought within two years of a protected person's experiencing discrimination, not the date on which a discriminatory condition manifests in the abstract. The "occurrence . . . of a discriminatory housing practice" is the act of "discriminat[ing] in the sale or rental, or. . . otherwise mak[ing] unavailable or deny[ing], a dwelling to any buyer or renter." *Id.* § 3604(f)(1). The means of such discrimination may be a building's inaccessible design or construction, which may have existed for some time before the prospective buyer or renter

8

appears. But it takes two to discriminate: until the prospective buyer or renter has been exposed to the unlawful condition, the "discriminatory housing practice" has not "occur[red]." *Id.* § 3613(a)(1)(A). That reading is confirmed by the ordinary meaning of "discriminate," defined in a prominent legal dictionary as: "Differential treatment; esp., a failure to treat all persons equally when no reasonable distinction can be found between those favored and those not favored." Black's Law Dictionary (11th ed. 2019). A person cannot be subjected to differential treatment until they encounter the discriminatory design or construction.

There is more. Section 3613(a)(1)(A) allows "[a]n aggrieved person" to file suit within two years of the occurrence of a discriminatory practice. "Aggrieved person" is defined as "any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *Id.* § 3602(i). This definition fits naturally with the interpretation of the statutory text urged by Plaintiff. Under PMG's reading, however, the limitations period would often expire before any person was "injured by a discriminatory housing practice"—this would be the case any time a person covered by the FHA did not buy or lease a unit within two years of a building reaching full occupancy. In many circumstances, then, the authorization for an "aggrieved person" to file suit within the specified time period would be rendered a nullity. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citation omitted).

B. Tort Principles

Starting the limitations period on the date when the plaintiff encounters the unlawful design or construction also aligns the cause of action created by the FHA with general common-

9

law tort principles. The Supreme Court has held that "[a] damages action under the [FHA] sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach." *Curtis v. Loether*, 415 U.S. 189, 195 (1974). "[T]he Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related [] liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Thus, courts should "assume Congress is familiar with the common-law rule and does not mean to displace it *sub silentio* in federal causes of action. A claim for damages under the FHA—which is akin to a tort action—is no exception to this traditional requirement." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1305 (2017) (internal quotation marks and citations omitted). The Supreme Court has applied those principles to determine that the FHA incorporates traditional tort rules of vicarious liability and proximate causation. *See Meyer*, 537 U.S. at 285 (vicarious liability); *Bank of Am.*, 137 S. Ct. at 1305 (proximate cause).

The traditional rule for statutes of limitation applied to tort actions is the one advanced by Plaintiff here: "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotation marks and citations omitted). Suppose that a new building is negligently designed, in a way that was discoverable through diligent investigation, but lay undiscovered until some disaster occurred and injured a tenant. It is obvious that the tenant's cause of action against the developer would accrue, and the statute of limitations would begin to run, at the time of the injury, regardless of how much time had passed since the initial sale or rental of the unit. *See, e.g.*, *Durant v. Grange Silo Co.*, 207 N.Y.S.2d 691, 692 (App. Div. 1960) (holding in case of grain silo collapse that "the cause of action

accrued on the date of the collapse . . . and that the Statute of Limitations began to run as of that date rather than from the date of sale or the discovery, prior to the silo's collapse, of certain defects in the materials or construction"); *Gile v. Sears, Roebuck & Co.*, 120 N.Y.S.2d 258, 259–61 (App. Div. 1952) (holding in slip-and-fall action brought "within three years after the date of the occurrence of the accident in which the personal injuries are alleged to have been sustained," but where "more than three years had elapsed since the completion of the performance of the defendant's work," "the cause of action did not accrue until the personal injuries were sustained"). Applying the same principle to the FHA, a protected person's cause of action accrues when *that person* is injured by an unlawful design or construction, not when other people encounter it (and are unharmed, because they are not discriminated against) through rental or sale.

    C.    Purpose

Interpreting the limitations period as commencing when a plaintiff first encounters an inaccessible design or construction element is not only the most natural reading of the provision, but also the one that best serves the purpose of the FHA. The Supreme Court has instructed courts to avoid "wooden application[s]" of the FHA that "undermine[] the broad remedial intent of Congress embodied in the Act." *Havens Realty*, 455 U.S. at 380. By creating a private right of action in the FHA, Congress intended that injured parties would act as "private attorneys general in vindicating a policy that Congress considered to be of the highest priority." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 211 (1972) (internal quotation marks omitted). The Fair Housing Amendments Act of 1988 ("FHAA"), Pub. L. No. 100–430, 102 Stat 1619, which added design and construction requirements to the FHA, also extended the statute of limitations for private claims, with the clear goal of making it easier for private attorneys general

11

to bring suit. *See* FHAA § 8; *see also* H.R. REP. 100-711, at 17 (1988), *reprinted in* U.S.C.C.A.N. 2173, 2178 (House report on the FHAA, stating, "The bill strengthens the private enforcement section by expanding the statute of limitations . . . ."). In doing so, the FHAA signaled Congress' intent that developers who failed to construct accessible residential properties would face a meaningful risk of costly lawsuits from injured parties.[2]

An interpretation of the limitations period for design-or-construction claims that cuts off the availability of such claims two years after every unit in a building was sold or occupied would stymie that purpose. If the limitations period began to run at the time that the last unit in a building is sold or occupied, as PMG argues, then developers would frequently avoid any liability for violations of the FHA based on the happenstance that no person protected by the FHA sought to live in their building in the early years after its development. Far from providing an effective deterrent to developers who might ignore the FHA's requirements, this interpretation would make it much less likely that any given violator would face a lawsuit, and would encourage unscrupulous parties to try their luck (or actively discriminate to ensure) that no disabled person applies before the building is full.

To be sure, "no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). But it is unlikely that Congress would have crafted a statute of limitations that cut off discrimination lawsuits arbitrarily, allowing developers who violate the

---

[2] This purpose is apparent from the face of the law, and confirmed by its legislative history: "The [FHAA] . . . is a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream. . . . Because persons with mobility impairments need to be able to get into and around a dwelling unit (or else they are in effect excluded because of their handicap), the bill requires that in the future covered multifamily dwellings be accessible and adaptable. This means that the doors and hallways must be wide enough to accommodate wheelchairs, switches and other controls must be in convenient locations, most rooms and spaces must be on an accessible route, and disabled persons should be able to easily make additional accommodations if needed, such as installing grab bars in the bathroom, without major renovation or structural change." H.R. REP. 100-711, at 18.

law and exclude persons with disabilities from their housing to escape liability on little more than chance. That interpretation would outright undermine the FHA's purpose.

D. Agency Interpretation

Finally, it is significant that Plaintiff's proposed reading of the statute of limitations fits together with the consistent interpretation of the Department of Housing and Urban Development ("HUD"). In its *Fair Housing Act Design Manual: A Manual to Assist Designers and Builders in Meeting the Accessibility Requirements of the Fair Housing Act*, HUD warns developers that "[w]ith respect to the design and construction requirements, complaints could be filed at any time that the building continues to be in noncompliance, because the discriminatory housing practice—failure to design and conduct the building in compliance—does not terminate." U.S. Dep't of Hous. & Urban Dev., *Fair Housing Act Design Manual: A Manual To Assist Designers and Builders in Meeting the Accessibility Requirements of the Fair Housing Act* 22 (rev. 2005), https://www.huduser.gov/portal/publications/PDF/FAIRHOUSING/fairfull.pdf; *see also Garcia*, 526 F.3d at 475–76 (Fisher, J., dissenting) (noting that this statement was contained in the 1998 version of the manual). And in its *Title VIII Complaint Intake, Investigation, and Conciliation Handbook*, HUD states, "A complainant aggrieved because an otherwise covered multifamily dwelling unit was not designed and constructed to meet the Fair Housing Accessibility Guidelines, may allege a continuing violation regardless of when construction of the building was completed." U.S. Dep't of Hous. & Urban Dev., *Title VIII Complaint Intake, Investigation, and Conciliation Handbook* 3-5 (rev. 2005), https://www.hud.gov/program_offices/administration/hudclips/handbooks/fheo/80241; *see Garcia*, 526 F.3d at 476 (Fisher, J., dissenting) (noting that this statement was contained in the 1995 version of the handbook). HUD frames the indefinite availability of an FHA design-or-

construction claim as based on the continuing violations doctrine, rather than the theory that a discriminatory practice does not occur until a party encounters the inaccessible structure, but the basic position is the same: developers can be subject to liability under the FHA for inaccessible design or construction for as long as the inaccessible features remain in place.

That position is entitled to substantial deference. "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001). HUD is a recognized expert in the FHA, and the Supreme Court has put significant stock in its interpretation of that statute's terms. *See Meyer* 537 U.S. at 281 ("[HUD], the agency primarily charged with the Act's implementation and administration, has specified that ordinary vicarious liability rules apply in this area, and the Court ordinarily defers to an administering agency's reasonable statutory interpretation."). HUD has espoused this position consistently over a long period of time, in multiple detailed publications directed at both the regulated entities and its own officers. And its position is consonant with the natural reading of the statute and the background against which the statute was enacted.

    E.    Application

In sum, the Court concludes that the FHA limitations period on design-or-construction claims set out in 42 U.S.C. § 3613(a)(1)(A) begins to run when a person protected by the FHA encounters the allegedly unlawful building elements, and thus is subjected to discrimination. Applying that rule to this case, Plaintiff's FHA claim against PMG is timely. Testers employed by Plaintiff visited the Park Slope Building, toured apartments there, and witnessed unlawful

design and construction elements on August 29, 2018.  Compl. ¶¶ 42–43.  Plaintiff filed suit on February 7, 2019—roughly five months later.  ECF No. 1.

PMG argues that even if the limitations period runs from the date on which a person experiences an injury, Plaintiff's FHA claim against it is still untimely because Plaintiff is an advocacy group, not an individual.  Reply at 7–8, ECF No. 138.  PMG points to the complaint's allegation that Plaintiff suffered injury because "Defendants' discriminatory practices frustrated and continue to frustrate Plaintiff's mission to ensure that all people have equal access to housing opportunities in the New York City region," Compl. ¶ 55, and caused Plaintiff to divert resources from other projects, *id.* ¶ 66.  PMG contends that Plaintiff suffered that injury at the time the Park Slope Building was constructed, even if it was unaware of it, and not at the time that its testers visited the building.  Reply at 7–8.  But this argument confuses the injury that supports Plaintiff's standing to sue with the legal violation that starts the limitations period.  Regardless of when Plaintiff's mission became frustrated, there was no relevant "aggrieved person" who was subjected to a "discriminatory housing practice" until the testers visited the Park Slope Building.

Accordingly, PMG's motion to dismiss Plaintiff's FHA claim is DENIED.

III.    NYSHRL and NYCHRL

PMG also moves to dismiss Plaintiff's NYSHRL and NYCHRL claims as time-barred, claiming for the same reasons as above that the limitations period began to run either when the last unit in the Park Slope Building was sold or when the last certificate of occupancy was issued.  PMG Mem. at 11–12.  The parties agree that the act that triggers the limitations period is the same under the NYSHRL and NYCHRL as it is under the FHA.  *See* PMG Mem. at 11; Pl. Opp. at 26–28; Reply at 12.

The limitations period for NYSHRL claims is three years, pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 214(2). ("The following actions must be commenced within three years . . . an action to recover upon a liability, penalty or forfeiture created or imposed by statute."); *see Johnson v. DCM Erectors, Inc.*, No. 15 Civ. 5415, 2016 WL 407293, at *2 (S.D.N.Y. Feb. 2, 2016) ("The statute of limitations for NYSHRL . . . claims is three years."). "Generally, 'a cause of action for discrimination under [the NYSHRL] accrues and the limitation period begins to run on the date of the alleged discriminatory act.'" *Flaherty v. Massapequa Pub. Sch.*, 752 F. Supp. 2d 286, 293 (E.D.N.Y. 2010) (quoting *Queensborough Cmty. Coll. of City Univ. of New York v. State Human Rights Appeal Bd., State Div. of Human Rights*, 372 N.Y.S.2d 722, 723 (1975), *aff'd*, 41 N.Y.2d 926, 363 N.E.2d 349 (1977)), *aff'd*, 462 F. App'x 38 (2d Cir. 2012). Since the alleged discriminatory act in this case is Plaintiff's testers' discovery of the inaccessible conditions at the Park Slope Building, Plaintiff's NYSHRL claim was timely filed.

The limitations period for NYCHRL claims is also three years. The statute provides that "A civil action commenced under this section must be commenced within three years after the alleged unlawful discriminatory practice . . . occurred." N.Y.C. Admin. Code § 8-502(d). This language closely tracks that of 42 U.S.C. § 3613(a)(1)(A). Because the alleged unlawful discriminatory practice occurred when Plaintiff's testers visited the Park Slope Building, Plaintiff's NYCHRL claim is timely.

Accordingly, PMG's motion to dismiss Plaintiff's NYSHRL and NYCHRL claims is DENIED.

## CONCLUSION

Because the limitations period on Plaintiff's claims against PMG did not begin to run until Plaintiff's testers encountered the alleged design and construction defects in August 2018, and Plaintiff filed suit in February 2019, none of Plaintiff's claims are barred by the statute of limitations. Accordingly, PMG's motion to dismiss the claims against it on that basis is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 110.

SO ORDERED.

Dated: March 9, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge