UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

FAIR HOUSING JUSTICE CENTER, INC.       Index No. 19 Civ. 1171 (AT) (GWG)

                                            **SETTLEMENT AGREEMENT**

                       Plaintiff,

        v.

JDS DEVELOPMENT LLC;
616 FIRST AVENUE LLC; 202 8th LLC;
SHOP ARCHITECTS LLP;
PROPERTY MARKETS GROUP, INC.;
WERBER MANAGEMENT, INC.; and
202 PARK SLOPE LLC,

                       Defendants.
----------------------------------------------------------X

This Settlement Agreement (the "Agreement") is entered into by, between, and among, on the one hand, Fair Housing Justice Center, Inc. ("FHJC"), and on the other hand, the JDS Defendants (as defined below), SHoP (as defined below), the Werber Defendants (as defined below), and the PMG Defendants (as defined below) (collectively, the "Parties").

**WHEREAS**, on or about June 19, 2019, FHJC filed an Amended Complaint alleging that Defendants (as defined below) discriminated on the basis of disability in the design and construction of two multi-family residential developments in New York City in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.; the New York State Human Rights Law, New York Executive Law § 296 *et seq*.; and the New York City Human Rights Law, New York Administrative Code § 8-107 *et seq*.; and

**WHEREAS**, Defendants deny the allegations of wrongdoing and liability against them in the Amended Complaint, and by entering into this Agreement do not intend to admit, and do not admit, the same; and

**WHEREAS**, Defendants maintain they have complied and will continue to comply with the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.; the New York State Human Rights Law, New York Executive Law § 296 *et seq*.; and the New York City Human Rights Law, New York Administrative Code § 8-107 *et seq*.; and

**WHEREAS**, FHJC and Defendants desire to voluntarily resolve the claims and cross-claims asserted in this action, and agree that the terms of this Agreement, as a compromise to avoid protracted expenses and litigation, reflect a full and fair resolution of the disputes between the Parties; and

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, and ORDERED**, by, between, and among the Parties, and by the Court, that all claims will be compromised, settled, released, and dismissed upon and subject to the terms of this Agreement, as follows:

## SECTION I:  DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

1. The "JDS Defendants" shall mean and refer to JDS Development LLC, 616 First Avenue LLC, and 202 8th LLC, collectively.

2. The "JDS ACB Defendants" shall mean and refer to JDS Development LLC and 616 First Avenue LLC, collectively.

3. "SHoP" shall mean and refer to Shop Architects LLP.

4. The "Werber Defendants" shall mean and refer to Werber Management, Inc. and 202 Park Slope LLC, collectively.

5. The "PMG Defendants" shall mean and refer to Property Markets Group, Inc.

2

6.     "Defendants" shall mean and refer to the JDS Defendants, SHoP, the Werber Defendants, and the PMG Defendants, collectively.

7.     The "ACB" shall mean and refer to the residential apartment buildings located at 626 First Avenue in Manhattan (otherwise known as the "American Copper Buildings"), including all individual dwelling units and all common areas.

8.     "202 8th" shall mean and refer to the residential apartment building located at 202 8th Street in Brooklyn, including all individual dwelling units and all common areas.

9.     "Unoccupied ACB Units" shall mean and refer to the individual dwelling units at the ACB that are not occupied by tenants or other occupants on the date this Agreement is executed.

10.     "Occupied ACB Units" shall mean and refer to the individual dwelling units at the ACB that are occupied by tenants or other occupants on the date this Agreement is executed.

11.     The "ACB Common Areas" shall mean and refer to common areas of the ACB.

12.     "Unoccupied 202 8th Units" shall mean and refer to the individual dwelling units at 202 8th that are not occupied by tenants or other occupants on the date this Agreement is executed.

13.     "Occupied 202 8th Units" shall mean and refer to the individual dwelling units at 202 8th that are occupied by tenants or other occupants on the date this Agreement is executed.

14.     The "202 8th Common Areas" shall mean and refer to common areas of 202 8th.

15.     The "Action" shall mean and refer to *Fair Housing Justice Center, Inc. v. JDS Development LLC et al.*, 19-cv-01171-AT-GWG (S.D.N.Y.).

3

16.     The "Court" shall mean and refer to United States District Judge Analisa Torres of the United States District Court for the Southern District of New York or any successor judge that the Court may appoint.

## SECTION II:  TERM AND SCOPE

17.      All obligations under this Agreement, unless otherwise specified, shall commence the day following the date this Agreement is so-ordered by the Court ("Effective Date").  In the event that the Court declines to so order this Agreement, this Agreement shall become null and void and of no force or effect, and the Parties shall revert to their positions immediately prior to the execution of this Agreement.

18.     The provisions of Section IV and Section V below requiring remediation and permitting inspection of the ACB and 202 8th shall remain in force in perpetuity until all of the required remediation has been completed.

## SECTION III:  MONETARY RELIEF

19.     The JDS Defendants, the PMG Defendants, and SHoP shall collectively pay FHJC the total sum of TWO MILLION NINE HUNDRED THOUSAND DOLLARS AND NO CENTS ($2,900,000.00) (the "Settlement Amount") in full and complete satisfaction of all claims for monetary damages in the Action and all claims for attorneys' fees and costs incurred by FHJC through and including the Effective Date.

20.     Within thirty (30) days after the Effective Date, the Settlement Amount shall be paid by wire transfer to the attorney IOLTA account of FHJC's counsel (wiring information shall be provided to Defendants' counsel by FHJC's counsel).

## SECTION IV:  PROVISIONS RELATING TO THE ACB

21.     The JDS ACB Defendants shall promptly provide FHJC with a complete and accurate list of all of the Unoccupied ACB Units as of the Effective Date and represent and warrant that such list shall be complete and accurate.  FHJC shall maintain the confidentiality of such list at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.

22.     The JDS ACB Defendants shall promptly provide FHJC with a complete and accurate list of all of the Occupied ACB Units as of the Effective Date and represent and warrant that such list shall be complete and accurate.  FHJC shall maintain the confidentiality of such list at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.

23.     The JDS ACB Defendants shall complete all of the remediation described in Exhibit A hereto in the ACB Common Areas, the Unoccupied ACB Units, and the Occupied ACB Units.  To the extent that the JDS ACB Defendants may later believe that an aspect of the agreed-upon remediation as described in Exhibit A is not physically feasible in the field for unforeseen reasons or for reasons outside of the JDS ACB Defendants' control, the JDS ACB Defendants may request that FHJC consider an alternative remediation plan for such aspect of the agreed-upon remediation, and FHJC shall consider in good faith whether the remediation at issue is not physically feasible and whether the JDS ACB Defendants have proposed an acceptable alternative remediation plan and will provide reasonably feedback to the JDS ACB Defendants within a reasonable period of time.

24.     All of the costs directly or indirectly associated with remediating the ACB Common Areas, the Unoccupied ACB Units, and the Occupied ACB Units shall be borne by the

JDS ACB Defendants; provided, however, that FHJC shall bear all of the costs it incurs in connection with any review and/or inspections of remediation it performs of the ACB.  The schedule for completing such remediation is set forth below.

25.     The time period for remediation described in Exhibit A by the JDS ACB Defendants may be subject to extension for acts of God, force majeure events, other unforeseen circumstances, or other events beyond the control of the JDS ACB Defendants (including, but not limited to, the COVID-19 pandemic, permit delays, unavailability of materials, or a limited access or refused access to occupied units).  In the event that an extension of time is necessary to complete remediation, the time period for remediation will be extended by the amount of time reasonability attributable to such delay causing the event.

26.     With respect to the ACB Common Areas, the JDS ACB Defendants shall perform all of the remediation in the ACB Common Areas set forth in Exhibit A hereto as soon as is reasonably practicable after the Effective Date, subject to Paragraph 24 above.  The Parties currently believe that the ACB Common Areas can and should be remediated within approximately twenty-four (24) months after the Effective Date, though that is not a firm deadline and is subject to Paragraph 24 above.  The JDS ACB Defendants shall act in good faith and shall complete the remediation of the ACB Common Areas as soon as is reasonably practicable after the Effective Date.

27.     On approximately a semi-annual basis until all of the remediation of the ACB Common Areas required by this Agreement has been completed, the JDS ACB Defendants shall provide FHJC with a report (a) describing in reasonable detail the aspects of the required remediation of the ACB Common Areas that were completed during the prior two quarters and (b) containing measurements and photographs (including but not limited to photographs of

6

measurements) sufficient to demonstrate that all required remediation was completed in accordance with Exhibit A.  FHJC shall maintain the confidentiality of such report at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.  If FHJC believes in good faith that such report is not sufficient to demonstrate that such remediation was completed in accordance with Exhibit A, FHJC may, within (but only within) twenty-one (21) days of the receipt of such report, request additional information (including without limitation different measurements and/or photographs), and the JDS ACB Defendants shall make good-faith efforts to comply with any such reasonable request.  The JDS ACB Defendants shall also inform FHJC in writing reasonably promptly after the JDS ACB Defendants conclude that all of the remediation required by this Agreement in the ACB Common Areas has been completed.  FHJC shall have two opportunities (subject to the second to last sentence of this Paragraph) to inspect (at its own expense) the ACB Common Areas.  The first such inspection opportunity shall be within ninety (90) days after the JDS ACB Defendants provide FHJC with the second semi-annual report referred to in the first sentence of this Paragraph (which, for the avoidance of doubt, shall be approximately one (1) year after the Effective Date).  The second such inspection opportunity shall be within ninety (90) days after the JDS ACB Defendants inform FHJC that all of the remediation required by this Agreement in the ACB Common Areas has been completed.  Such inspections shall be conducted by FHJC and/or its experts, attorneys, legal assistants, or paralegals and shall be for the purpose of confirming that the required remediation was completed in accordance with Exhibit A and for no other purpose.  The JDS ACB Defendants acknowledge that each such inspection may take more than one day.  The JDS ACB Defendants and FHJC shall work together in good faith with each other and with the Werber Defendants to

schedule both such inspections on successive days (for the avoidance of doubt, in order to enable

an inspector who may be based outside of New York to make a single multi-day trip to New

York to inspect both the ACB Common Areas and the 202 8th Common Areas). To the extent

that the JDS ACB Defendants may engage in further remediation of the ACB Common Areas in

response to feedback provided by FHJC after its second inspection of the ACB Common Areas,

the JDS ACB Defendants shall afford FHJC the opportunity to inspect such further remediation.

For the avoidance of doubt, if FHJC does not inform the JDS ACB Defendants of an alleged

breach of their obligation to perform remediations of the ACB Common Areas until after two

years after the Effective Date, the fact that the JDS ACB Defendants may not have completed

such remediation within two years after the Effective Date shall not be deemed a breach merely

because it was not completed within two years after the Effective Date so long as the JDS ACB

Defendants had attempted to complete such remediation and believed in good faith that such

remediation had been timely completed.

28.     With respect to the Unoccupied ACB Units, the JDS ACB Defendants shall

perform all of the remediation described in Exhibit A hereto in the Unoccupied ACB Units as

soon as is reasonably practicable after the Effective Date, subject to Paragraph 24 above. The

Parties currently believe that the Unoccupied ACB Units can and should be remediated within

approximately twenty-four (24) months after the Effective Date, though that is not a firm

deadline and is subject to Paragraph 24 above. The JDS ACB Defendants shall act in good faith

and complete the remediation of the Unoccupied ACB Units as soon as is reasonably practicable

after the Effective Date.

29.     The JDS ACB Defendants acknowledge that their express assurance that all of the

remediation described in Exhibit A hereto shall be timely completed in the Unoccupied ACB

Units is of paramount importance to FHJC and material to FHJC's willingness to enter into this Agreement.  The JDS ACB Defendants acknowledge that if they choose to rent an Unoccupied ACB Unit to a tenant before FHJC has been afforded the report and opportunity to inspect provided for in the next Paragraph of this Agreement, and if further remediation is required after such unit is rented to such tenant, it may become more difficult and/or more expensive for the JDS ACB Defendants to timely complete such remediation.  The JDS ACB Defendants further acknowledge that if they choose to rent an Unoccupied ACB Unit to a tenant before FHJC has been afforded the report and opportunity to inspect provided for in this Agreement, and if all of the remediation described in Exhibit A hereto is not timely completed, FHJC shall have the right to seek all available remedies, including without limitation the right to seek injunctive relief, tenant displacement costs, and mission fulfilment damages; provided, however, that the JDS ACB Defendants reserve their right to defend against and oppose any such requested relief.

30.     On a quarterly basis until all of the required remediation in each of the Unoccupied ACB Units has been completed, the JDS ACB Defendants shall provide FHJC with a report (a) identifying the Unoccupied ACB Units that they believe have been remediated in accordance with Exhibit A; and (b) containing measurements and photographs (including but not limited to photographs of measurements) sufficient to demonstrate that all required remediation was completed in accordance with Exhibit A.  FHJC shall maintain the confidentiality of such report at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.  If FHJC believes in good faith that such report is not sufficient to demonstrate that such remediation was completed in accordance with Exhibit A, FHJC may, within (but only within) seven (7) days of the receipt of such report, request additional information (including without limitation different measurements and/or

photographs), and the JDS ACB Defendants shall make good-faith efforts to comply with any

such reasonable request.  If FHJC elects in its sole discretion (and at its own expense) to inspect

any Unoccupied ACB Unit that the JDS ACB Defendants have reported were remediated, then

FHJC shall be afforded fourteen (14) days from the receipt of such report (or, as the case may be,

from the receipt of any revised report) to complete such inspection, and the JDS ACB

Defendants shall afford FHJC and/or its experts, attorneys, legal assistants, or paralegals  prompt

and full access to such unit for the purpose of confirming that the required remediation was

completed in accordance with Exhibit A and for no other purpose.

    31.    With respect to the Occupied ACB Units, the JDS ACB Defendants shall perform

all of the remediation described in Exhibit A hereto as follows:

        a.    The JDS ACB Defendants shall perform the following remediation

    described in Exhibit A hereto in the Occupied ACB Units as soon as is reasonably

    practicable after the Effective Date:  all inaccessible thresholds (into and throughout the

    dwelling units).

        b.    With respect to the remainder of the remediation described in Exhibit A

    hereto, the JDS ACB Defendants shall, within thirty (30) days after the Effective Date,

    provide all ACB tenants with the notice that is set forth in Exhibit B hereto, and, to the

    extent that any tenant requests, within forty-five (45) days of such notice, that any of the

    remediation being offered be performed in his or her individual dwelling unit, the JDS

    ACB Defendants shall perform such remediation as soon as is reasonably practicable

    after such request is made.

        c.    To the extent not already performed pursuant to one of the previous two

    subparagraphs, the JDS ACB Defendants shall perform all of the remaining remediation

described in Exhibit A hereto in the Occupied ACB Units no later than within one

hundred and twenty days (120) days after each such current tenant or occupant vacates

the unit, time being of the essence.

32.     Promptly after the threshold remediation in each Occupied ACB Unit required by

Paragraph 30(a) has been completed, the JDS ACB Defendants shall provide FHJC with

measurements and photographs (including but not limited to photographs of measurements)

sufficient to demonstrate that all required remediation was completed in accordance with Exhibit

A.  If FHJC believes in good faith that such information is not sufficient to demonstrate that such

remediation was completed in accordance with Exhibit A, FHJC may, within (but only within)

seven (7) days of the receipt of such report, request additional information (including without

limitation different measurements and/or photographs), and the JDS ACB Defendants shall make

good-faith efforts to comply with any such reasonable request.  FHJC shall maintain the

confidentiality of such report at all times except with respect to its attorneys and experts and

except in connection with any action, proceeding, or motion to enforce this Agreement.  If FHJC

elects in its sole discretion (and at its own expense) to inspect any such unit, then then FHJC

shall be afforded fourteen (14) days from the receipt of such report (or, as the case may be, from

the receipt of any revised report) to complete such inspection, and the JDS ACB Defendants

shall afford FHJC and/or its experts, attorneys, legal assistants, or paralegals  prompt and full

access (subject to any notice rights of any tenants) to such unit for the purpose of confirming that

the required remediation was completed in accordance with Exhibit A and for no other purpose.

33.     The JDS ACB Defendants shall provide FHJC with written notice on a monthly

basis specifying each previously Occupied ACB Unit that became vacant in the preceding

month, including the date on which each such unit became vacant.  FHJC shall maintain the

confidentiality of such report at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement. Promptly after all of the required remediation in such a unit has been completed, the JDS ACB Defendants shall provide FHJC with a report (a) identifying the previously Occupied ACB Units that they believe have been remediated in accordance with Exhibit A; and (b) containing measurements and photographs (including but not limited to photographs of measurements) sufficient to demonstrate that all required remediation was completed in accordance with Exhibit A.  FHJC shall maintain the confidentiality of such report at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.  If FHJC believes in good faith that such report is not sufficient to demonstrate that such remediation was completed in accordance with Exhibit A, FHJC may, within (but only within) seven (7) days of the receipt of such report, request additional information (including without limitation different measurements and/or photographs), and the JDS ACB Defendants shall make good-faith efforts to comply with any such reasonable request.  If FHJC elects in its sole discretion (and at its own expense) to inspect any previously Occupied ACB Unit that the JDS ACB Defendants have reported was remediated, then FHJC shall be afforded fourteen (14) days from the receipt of such report (or, as the case may be, from the receipt of any revised report) to complete such inspection, and the JDS ACB Defendants shall afford FHJC and/or its experts, attorneys, legal assistants, or paralegals prompt and full access (subject to any notice rights of any tenants) to such unit for the purpose of confirming that the required remediation was completed in accordance with Exhibit A and for no other purpose.

34.     The JDS ACB Defendants acknowledge that their express assurance that all of the remediation described in Exhibit A hereto shall be completed in the Occupied ACB Units no

later than within one hundred and twenty days (120) days after the current tenant or occupant vacates such unit is of paramount importance to FHJC and material to FHJC's willingness to enter into this Agreement.  The JDS ACB Defendants acknowledge that if they choose to rent a previously Occupied ACB Unit to another tenant before FHJC has been afforded the report and opportunity to inspect provided for in the previous Paragraph of this Agreement, and if further remediation is required after such unit is rented to such other tenant, it may become more difficult and/or more expensive for the JDS ACB Defendants to complete such remediation by the deadline.  The JDS ACB Defendants further acknowledge that if they choose to rent a previously Occupied ACB Unit to another tenant before FHJC has been afforded the report and opportunity to inspect provided for in the previous Paragraph of this Agreement, and if all of the remediation described in Exhibit A hereto is not completed in such unit within one hundred and twenty days (120) days after the current tenant or occupant vacates such unit, FHJC shall have the right to seek all available remedies, including without limitation the right to seek injunctive relief, tenant displacement costs, and mission fulfilment damages; provided, however, that the JDS ACB Defendants reserve their right to defend against and oppose any such requested relief.

35.     Notwithstanding anything to the contrary in this Agreement, if the JDS ACB Defendants intend in the future to change the use of the ACB (for example, by converting the ACB to a hotel, an office building, or a warehouse), and if such change of use would make the ACB no longer a covered dwelling subject to accessibility requirements under the Fair Housing Act, the New York State Human Rights Laws, and the New York City Human Rights Law (the "Accessibility Requirements"), then the JDS ACB Defendants or their successors or assigns shall (i) provide FHJC with advance written notice before such change of use is made, including reasonable detail regarding the contemplated change of use and the reason(s) why the

13

Accessibility Requirements would no longer apply; (ii) meet and confer with FHJC in good faith regarding whether such contemplated change of use would in fact make the ACB no longer subject to the Accessibility Requirements; and (iii) afford FHJC the opportunity to inspect the ACB promptly after the use has been changed.  If the JDS ACB Defendants or their successors or assigns change the use of the ACB such that the Accessibility Requirements no longer apply to the ACB, then the JDS ACB Defendants or their successors or assigns shall no longer be obligated to perform the remediation set forth in Exhibit A; provided, however, that in such case, the JDS ACB Defendants or their successors or assigns shall be obligated to comply with any and all legal requirements, including without limitation the Americans with Disabilities Act, that apply to the ACB following such change of use.  Nothing contained herein shall provide FHJC with the right or opportunity to prevent the JDS ACB Defendants or their successors or assigns from converting use so long as the JDS ACB Defendants or their successors or assigns comply with any and all legal requirements with respect to accessibility when completing the conversion.

36.    The sale or transfer, in whole or in part, of an ownership interest in the ACB by any of the JDS ACB Defendants shall not affect the obligation of the JDS ACB Defendants to complete the remediation of the ACB required by this Agreement.  Should any of the JDS ACB Defendants sell or transfer any ownership interest in the ACB prior to the completion of the remediation required by this Agreement, the JDS ACB Defendants shall provide written notice to each buyer or transferee that the JDS ACB Defendants are required to complete the remediation required by this Agreement, and the JDS ACB Defendants shall either (i) complete all required remediation prior to the sale or transfer or (ii) obtain written consent of the buyer(s)/transferee(s) to allow the JDS ACB Defendants to complete the remediation required by this Agreement after

14

the sale/transfer, or (iii) cause the buyer/transferees to assume the obligations of the JDS ACB Defendants set forth in this Agreement.

## SECTION V:  PROVISIONS RELATING TO 202 8TH

37.     The Werber Defendants shall promptly provide FHJC with a complete and accurate list of all of the Unoccupied 202 8th Units as of the Effective Date and represent and warrant that such list shall be complete and accurate.  FHJC shall maintain the confidentiality of such list at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.

38.     The Werber Defendants shall promptly provide FHJC with a complete and accurate list of all of the Occupied 202 8th Units as of the Effective Date and represent and warrant that such list shall be complete and accurate.  FHJC shall maintain the confidentiality of such list at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.

39.     The Werber Defendants shall complete all of the remediation described in Exhibit C hereto in the 202 8th Common Areas, the Unoccupied 202 8th Units, and the Occupied 202 8th Units (except with respect to Lines 45, 46, 47, 53, 93, 98, and 134 of Exhibit C, which shall be required only until all of the other remediation described in Exhibit C hereto has been completed).  To the extent that the Werber Defendants may later believe that an aspect of the agreed-upon remediation as described in Exhibit C is not physically feasible in the field for unforeseen reasons or for reasons outside of the Werber Defendants' control, the Werber Defendants may request that FHJC consider an alternative remediation plan for such aspect of the agreed-upon remediation, and FHJC shall consider in good faith whether the remediation at issue is not physically feasible and whether the Werber Defendants have proposed an acceptable

15

alternative remediation plan and will provide reasonable feedback to the Werber Defendants within a reasonable period of time.

40.     FHJC shall have no responsibility to bear any of the costs directly or indirectly associated with the required remediation of 202 8th; provided, however, that FHJC shall bear all of the costs it incurs in connection with any review and/or inspection of remediation it performs of 202 8th.  The schedule for completing such remediation is set forth below.

41.     The time period for performance by the Werber Defendants of the remediation described in Exhibit C may be subject to extension for acts of God, force majeure events, other unforeseen circumstances, or other events beyond the control of the Werber Defendants (including, but not limited to, the COVID-19 pandemic, permit delays, unavailability of materials, or a limited access or refused access to occupied units).  In the event that an extension of time is necessary to complete remediation, the time period for remediation will be extended by the amount of time reasonability attributable to such delay causing the event.

42.     With respect to the 202 8th Common Areas, the Werber Defendants shall perform all of the common area remediation set forth in Exhibit C hereto as soon as is reasonably practicable after the Effective Date, subject to Paragraph 40 above.  The Werber Defendants shall act in good faith and shall complete the remediation of the 202 8th Common Areas within twenty-four (24) months after the Effective Date, subject to Paragraph 40 above and Paragraph 42 below.

43.     On approximately a semi-annual basis until all of the remediation of the 202 8th Common Areas required by this Agreement has been completed, the Werber Defendants shall provide FHJC with a report (a) describing in reasonable detail the aspects of the required remediation of the 202 8th Common Areas that were completed during the prior two quarters and

(b) containing measurements and photographs (including photographs of measurements) sufficient to demonstrate that all required remediation was completed in accordance with Exhibit C. FHJC shall maintain the confidentiality of such report at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement. If FHJC believes in good faith that such report is not sufficient to demonstrate that such remediation was completed in accordance with Exhibit C, FHJC may, within (but only within) twenty-one (21) days of receipt of such report, request additional information (including without limitation different measurements and/or photographs), and the Werber Defendants shall make good-faith efforts to comply with any such reasonable request. The Werber Defendants shall also inform FHJC in writing reasonably promptly after the Werber Defendants conclude that all of the remediation required by this Agreement in the 202 8th Common Areas has been completed. FHJC shall have two opportunities (subject to the second to last sentence of this Paragraph) to inspect (at its own expense) the 202 8th Common Areas. The first such inspection opportunity shall be within ninety (90) days after the Werber Defendants provide FHJC with the second semi-annual report referred to in the first sentence of this Paragraph (which, for the avoidance of doubt, shall be approximately one (1) year after the Effective Date). The second such inspection opportunity shall be within ninety (90) days after the Werber Defendants inform FHJC that all of the remediation required by this Agreement in the 202 8th Common Areas has been completed and shall not include an inspection of those remediations that were completed and previously inspected during the first such inspection. Such inspections shall be conducted by FHJC and/or its experts, attorneys, legal assistants, or paralegals and shall be for the purpose of confirming that the required remediation was completed in accordance with Exhibit C and for no other purpose. The Werber Defendants acknowledge that each such inspection may take

more than one day.  The Werber Defendants and FHJC shall work together in good faith with each other and with the JDS ACB Defendants to schedule both such inspections on successive days (for the avoidance of doubt, in order to enable an inspector who may be based outside of New York to make a single multi-day trip to New York to inspect both the ACB Common Areas and the 202 8th Common Areas).  To the extent that the Werber Defendants may engage in further remediation of the 202 8th Common Areas in response to feedback provided by FHJC after its second inspection of the 202 8th Common Areas, the Werber Defendants shall afford FHJC the opportunity to inspect such further remediation within a reasonable period of time.  For the avoidance of doubt, if FHJC does not inform the Werber Defendants of an alleged breach of their obligation to perform remediations of the 202 8th Common Areas until after two years after the Effective Date, the fact that the Werber Defendants may not have completed such remediation within two years after the Effective Date shall not be deemed a breach merely because it was not completed within two years after the Effective Date so long as the Werber Defendants had attempted to complete such remediation and believed in good faith that such remediation had been timely completed.

44.     The Werber Defendants shall, within thirty (30) days after the Effective Date, provide all tenants of all 202 8th Occupied Units with the notice that is set forth in Exhibit D hereto, and, to the extent that any tenant, within forty-five (45) days of such notice, requests that any of the remediation being offered be performed in his or her individual dwelling unit (including by submitting a BuildingLink maintenance request), the Werber Defendants shall perform such remediation as soon as is reasonably practicable after such request is made.

45.     Subject to the limitations described in Paragraphs 45 and 46 of this Agreement, the Werber Defendants shall not lease or rent any vacant unit at 202 8th Unit to any other tenant

or otherwise allow any such unit to become occupied or re-occupied until such unit has been remediated as required by this Agreement and until FHJC has been afforded the opportunity to review, or in its discretion inspect, such unit as set forth in this Agreement.

46.     During the period of time in which the remediation of the 202 8th Common Areas is ongoing, the Werber Defendants shall only be obligated to remediate one (1) vacant unit at a time unless a remediation request is made by a prospective tenant as set forth in the next sentence.  In the event there is more than one (1) vacant unit at any given time at 202 8th that has not been remediated as required by this Agreement, the Werber Defendants shall designate, in their discretion, one (1) such unit to be remediated before it is rented or re-rented, and the Werber Defendants shall be permitted to rent the other vacant units prior to the completion of the required remediation in such other unit(s); provided, however, that before such other unit(s) are rented, the Werber Defendants shall affirmatively offer to the incoming tenant to complete the remediation of such other unit(s) prior to such tenant's move-in date, and in the event such tenant elects to have some or all the remediation completed prior to the move-in date, the Werber Defendants shall so complete the requested remediation of such other unit (unless the tenant agrees in writing to allow the remediation to be completed after the tenant takes occupancy and to permit FHJC to inspect the unit, in which case the remediation shall be completed within 120 days of the date the tenant takes occupancy).  For the avoidance of doubt, in the event that such tenant elects not to have some or all the remediation of such unit completed, the Werber Defendants shall complete the remediation of such unit upon the next vacancy of such unit, subject to the limitation in the preceding sentences of this Paragraph.

47.     After all remediation of the 202 8th Common Areas required by this Agreement is complete, the Werber Defendants shall only be obligated to remediate up to three (3) vacant units

at a time unless a remediation request is made by a prospective tenant as set forth in the next sentence.  In the event there are more than three (3) vacant units at a given time, the Werber Defendants shall designate, in their discretion, three (3) such units to be remediated before they are rented, and the Werber Defendants shall be permitted to rent the other units prior to the completion of remediation in such unit(s); provided, however, that before such unit(s) are rented, the Werber Defendants shall affirmatively offer to the incoming tenant to complete the remediation of such unit(s) prior to such tenant's move-in date, and in the event such tenant elects to have the remediation completed prior to the move-in date, the Werber Defendants shall so complete the remediation of such unit(s) (unless the tenant agrees in writing to allow the remediation to be completed after the tenant takes occupancy and to permit FHJC to inspect the unit, in which case the remediation shall be completed within 120 days of the date the tenant takes occupancy).  For the avoidance of doubt, in the event that such tenant elects not to have the remediation of such unit(s) completed, the Werber Defendants shall complete the remediation of such unit(s) upon the next vacancy of such unit(s), subject to the limitation in the preceding sentences of this Paragraph.

48.     The Werber Defendants shall provide FHJC with written notice on a monthly basis specifying each previously Occupied 202 8th Unit that became vacant in the preceding month, including the date on which each such unit became vacant, unless (a) no such unit became vacant in the preceding month or (b) no such unit is subject to immediate remediation because of an exception set forth in either Paragraph 45 or 46 above.  Promptly after all of the required remediation in such a unit has been completed, the Werber Defendants shall provide FHJC with a report (a) identifying the previously Occupied 202 8th Units that they believe have been remediated in accordance with Exhibit C; and (b) containing measurements and

photographs (including photographs of measurements) sufficient to demonstrate that all required remediation was completed in accordance with Exhibit C.  FHJC shall maintain the confidentiality of such report at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.  If FHJC believes in good faith that such report is not sufficient to demonstrate that such remediation was completed in accordance with Exhibit C, FHJC may, within (but only within) seven (7) days of the receipt of such report, request additional information (including without limitation different measurements and/or photographs), and the Werber Defendants shall make good-faith efforts to comply with any such reasonable request.  If FHJC elects in its sole discretion (and at its own expense) to inspect any previously Occupied 202 8th Unit that the Werber Defendants have reported was remediated, then then FHJC shall be afforded fourteen (14) days from the receipt of such report (or, as the case may be, from the receipt of any revised report) to complete such inspection, and the Werber Defendants shall afford FHJC and/or its experts, attorneys, legal assistants, or paralegals prompt and full access (subject to any notice rights of any tenants) to such unit for the purpose of confirming that the required remediation was completed in accordance with Exhibit C and for no other purpose.

49.     Notwithstanding anything to the contrary in this Agreement, if the Werber Defendants intend in the future to change the use of 202 8th (for example, by converting 202 8th to a hotel, an office building, or a warehouse), and if such change of use would make 202 8th no longer a covered dwelling subject to the Accessibility Requirements, then the Werber Defendants or their successors or assigns shall (i) provide FHJC with advance written notice before such change of use is made, including reasonable detail regarding the contemplated change of use and the reason(s) why the Accessibility Requirements would no longer apply; (ii)

21

meet and confer with FHJC in good faith regarding whether such contemplated change of use

would in fact make 202 8th no longer subject to the Accessibility Requirements; and (iii) afford

FHJC the opportunity to inspect 202 8th promptly after the use has been changed.  If the Werber

Defendants or their successors or assigns change the use of 202 8th such that the Accessibility

Requirements no longer apply to 202 8th, then the Werber Defendants or their successors or

assigns shall no longer be obligated to perform the remediation set forth in Exhibit C; provided,

however, that in such case, the Werber Defendants or their successors or assigns shall be

obligated to comply with any and all legal requirements, including without limitation the

Americans with Disabilities Act, that may apply to 202 8th following such change of use.

Nothing contained herein shall provide FHJC with the right or opportunity to prevent the Werber

Defendants or their successors or assigns from converting use so long as the Werber Defendants

or their successors or assigns comply with any and all legal requirements with respect to

accessibility when completing the conversion.

     50.     Notwithstanding anything to the contrary in this Agreement, if the Werber

Defendants intend in the future to change the use of an aspect of 202 8th (for example, by

removing a common area pantry, or by reconfiguring a unit), and if the Werber Defendants

believe that such change of use can be done in a manner that complies with the Accessibility

Requirements other than by completing the remediation described in Exhibit C hereto, then the

Werber Defendants shall (i) provide FHJC with written notice of such intent, including

reasonable detail regarding the contemplated change of use and reasonable detail regarding how

such use is to be changed in a manner that complies with the Accessibility Requirements; and (ii)

afford FHJC the opportunity to inspect the affected area of 202 8th both before and after such

use has been changed.  If FHJC believes that the changed use fails to comply with any legal requirement, FHJC may avail itself of the enforcement procedures set forth in Section IX below.

51.     Except as set forth in this Agreement, the sale or transfer, in whole or in part, of an ownership interest in 202 8th by any of the Werber Defendants shall not affect the obligation of the Werber Defendants to complete the remediation of 202 8th required by this Agreement. Should any of the Werber Defendants sell or transfer any ownership interest in 202 8th prior to the completion of the remediation required by this Agreement, the Werber Defendants shall provide written notice to each buyer or transferee that the Werber Defendants are required to complete the remediation required by this Agreement, and the Werber Defendants shall either (i) complete all required remediation prior to the sale or transfer, (ii) obtain written consent of the buyer(s)/transferee(s) to allow the Werber Defendants to complete the remediation required by this Agreement after the sale/transfer, or (iii) cause the buyer/transferees to assume the obligations of the Werber Defendants set forth in this Agreement.

## SECTION VI:  FAIR HOUSING COMPLIANCE

52.      Defendants agree to comply with the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.; the New York State Human Rights Law, New York Executive Law § 296 *et seq*.; and the New York City Human Rights Law, New York Administrative Code § 8-107 *et seq*.; provided, however, for the avoidance of doubt, that this provision does not require any Defendant to comply with the New York State Human Rights Law outside of New York State or with the New York City Human Rights Law outside of New York City or with the Fair Housing Act outside of the United States, nor does it otherwise require any Defendant to do more than what is required under applicable law.

53.     Defendants shall refrain from retaliating against FHJC.

54.     Within thirty (30) days of the Effective Date, and for a period of three (3) years thereafter, the JDS Defendants, the PMG Defendants, and the Werber Defendants shall each designate an individual principal or employee at the supervisory level to serve as its compliance officer (the "Compliance Officer"), and shall provide FHJC with written notice of the name of such principal or employee.  The duties of the Compliance Officer shall include assisting the applicable entity in its compliance with the Accessibility Requirements.  If during such period a Defendant's Compliance Officer is no longer able to serve, then within thirty (30) days after he or she is no longer able to serve, such Defendant shall designate an individual principal or employee at the supervisory level to serve as such Defendant's successor Compliance Officer and shall provide FHJC with written notice of the name and contact information of such successor Compliance Officer.  The Compliance Officer's failure to perform his or her duties in any manner shall not be considered a breach of this Agreement; rather, it shall only be a breach of this Agreement if any Defendant fails to appoint and/or retain a Compliance Officer for the three-year period set forth herein.

55.     For a period of three (3) years from the Effective Date, SHoP shall not prepare drawings to be filed with the Building Department of the City of New York for any dwellings that are subject to the design and construction requirements of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(C) ("Covered Drawings") without retaining or causing the retention of an independent consultant with expertise in the Accessibility Requirements ("the Independent Consultant") to review the architectural plans and specifications relating to the Covered Drawings and to opine in writing regarding the Covered Drawings' compliance with the design and construction requirements of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(C).  SHoP shall

retain a copy of all reports, opinions, and/or substantive communications regarding compliance by or with the Independent Consultant relating to the Covered Drawings.

## SECTION VII:  TRAINING

56.    The JDS Defendants, SHoP, the Werber Defendants, and the PMG Defendants shall each designate two (2) of their principals or employees, one of whom shall be either their designated Compliance Officer or a senior manager, to attend a four-hour training to be provided by FHJC during ordinary business hours in New York, New York (or by remote video conferencing) during a business day at FHJC's expense regarding (i) the design and construction requirements of the Fair Housing Act, the Americans with Disabilities Act, and the New York State Human Rights Law as applied to residential dwellings; (ii) the duty to comply with federal, state, and local fair housing laws; (iii) and the duty to grant requests for reasonable accommodations or modifications.  Such designees shall be persons who have substantial involvement in the design and/or construction of new dwelling units.  Such training shall be provided virtually (via Zoom or other similar video conferencing platform) within six (6) months after the Effective Date.  The Parties shall work together in good faith to schedule this training at a mutually agreeable time.

## SECTION VIII:  RELEASES

57.    In exchange for adequate consideration, as set forth herein, FHJC, on behalf of itself and its directors, officers, employees, testers, parents, subsidiaries, affiliated entities, successors, assigns, agents, trustees, insurers, and attorneys, fully and forever releases, acquits, and discharges with prejudice, subject to the terms of this Agreement, Defendants, and each of their respective affiliates, joint venturers, joint venture partners, direct and indirect parent companies, direct and indirect subsidiary companies, beneficial owners or indirect beneficial

owners, equityholders or indirect equityholders, lenders, insurers, and reinsurers, and each of

their respective, principals, partners, directors, employees, agents, representatives, officers,

attorneys, heirs, assigns, and successors in interest, from any and all liability, claims, or rights of

action, of any kind or nature whatsoever, that arise from or relate in any way to the allegations

set forth or described in the Amended Complaint in this action, whether known or unknown,

including all claims for reasonable attorneys' fees and costs (hereinafter, the "Released Claims");

provided however, that Released Claims do not include any claims to enforce any provision of

this Agreement.  FHJC further represents that it is not currently aware of any facts that it believes

give rise to a colorable legal claim against any of the Defendants or any of their respective

affiliates, joint venturers, joint venture partners, direct and indirect parent companies, direct and

indirect subsidiary companies, beneficial owners or indirect beneficial owners, equityholders or

indirect equityholders, lenders, insurers, and reinsurers, and each of their respective, principals,

partners, directors, employees, agents, representatives, officers, attorneys, heirs, assigns, and

successors in interest, other than the Released Claims.

58.     Further, FHJC fully and forever releases, acquits, and discharges with prejudice,

subject to the terms of this Agreement, Defendants and their affiliates and each of their

principals, partners, joint ventureres, members and indirect members, employees, agents,

representatives, officers, heirs, assigns, subsidiaries, affiliates, successors in interest, attorneys,

insurers, and reinsurers from any claims arising under the design and/or construction

requirements of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*., the New York State Human

Rights Law, New York Executive Law § 296 *et seq*., the New York City Human Rights Law,

New York Administrative Code § 8-107 *et seq*. with respect to (a) any property located outside

of the following New York Counties:  New York, Kings, Queens, Bronx, Staten Island,

Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk, and/or Westchester; and (b) the properties located at the following addresses:  111 Leroy Street, New York, New York; 50 North 1st Street, Brooklyn, New York; 111 West 57th Street, New York, New York; 514 West 24th Street, New York, New York; 212 West 18th Street, New York, New York; 425 West 50th Street, New York, New York; 613 Baltic Street, Brooklyn, New York; and 126-163 Beach 5th Street, 150-164 Beach 6th Street, and 509 Seagirt Avenue, Far Rockaway, New York; and 1 QPS Tower aka 42-20 24th Street, Long Island City, New York ("1 QPS Tower") (excluding, however, with respect to 1 QPS Tower only, any successor to QPS 23-10 Development LLC, any architect, and/or any current or future owner of 1 QPS Tower).

59.     Each Defendant, on its own behalf and on behalf of its parents, subsidiaries, affiliated entities, successors, assigns, members, owners, directors, officers, agents, trustees, insurers, and attorneys, fully and forever releases, acquits, and forever discharges with prejudice FHJC, together with its directors, officers, employees, testers, parents, subsidiaries, affiliated entities, successors, assigns, agents, trustees, insurers, and attorneys, and each other Defendant, together with each of their respective affiliates, joint venturers, joint venture partners, direct and indirect parent companies, direct and indirect subsidiary companies, beneficial owners or indirect beneficial owners, equityholders or indirect equityholders, lenders, insurers, and reinsurers, and each of their respective principals, partners, directors, employees, agents, representatives, officers, attorneys, heirs, assigns, and successors in interest, from any and all liability, claims, or rights of action, of any kind or nature whatsoever, that arise from or relate in any way to the allegations set forth or described in the Amended Complaint and Answers in this action, whether known or unknown, including all defense and indemnification obligations, and all claims for reasonable attorneys' fees and costs.

27

60.     Within five (5) days after the payments required by Paragraph 18 above are made, counsel for the Parties shall execute, and counsel for FHJC shall file in the action, the Stipulation and Order of Dismissal that is attached hereto to Exhibit E.

61.     Each recipient of the releases in this Agreement that is not a party to this Agreement (each such recipient, a "Non-Party Releasee") is an intended third-party beneficiary of the relevant releases in this Agreement.  Each Non-Party Releasee shall have standing to enforce the relevant releases in this Agreement, and may file this Agreement and/or the Stipulation and Order of Dismissal in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## SECTION IX:  CONTINUING JURISDICTION AND DISPUTE RESOLUTION

62.     The Court shall retain jurisdiction to enforce Paragraph 18 of this Agreement with respect to payment of the Settlement Amount and Paragraphs 20 through 50 with respect to the required remediation of the ACB and 202 8th, and the Court shall have no jurisdiction to enforce any other Paragraph of this Agreement.

63.     The Parties shall endeavor in good faith to informally resolve any differences regarding the interpretation of and compliance with this Agreement.

64.     Prior to moving to enforce this Agreement before this Court or any other court, FHJC shall provide each affected Defendant with written notice of any allegation of non-compliance with this Agreement and provide such Defendant(s) with forty-five (45) days in which to cure any alleged noncompliance.  The Parties shall confer during such forty-five-day cure period and attempt in good faith to resolve the alleged noncompliance by agreement.  If the

28

Parties are unable to reach an agreement at the conclusion of such forty-five-day cure period,

FHJC may seek judicial relief.  For the avoidance of doubt, no Defendant shall have any

vicarious or joint and several liability for any breach of this Agreement by another Defendant.

65.     If FHJC prevails on any motion to enforce this Agreement before the Court or any

other court, FHJC shall be entitled to recover from the affected Defendant all attorneys' fees and

costs reasonably incurred in connection with such motion.  If the Court determines that FHJC has

failed to comply with the notice provision set forth in Paragraph 63, the affected Defendant shall

be entitled to recover attorneys' fees and costs reasonably incurred in connection with

responding to such motion or action.

## SECTION X:  MISCELLANEOUS

66.     Any notice, demand, request, waiver, or other communication under this

Agreement shall be in writing (including facsimile, email, or other similar electronic writing) and

shall be transmitted by email as follows:

If to FHJC, to:

ffreiberg@fairhousingjustice.org;
mwinfield@fairhousingjustice.org;
mwang@chwllp.com;
ehecker@chwllp.com; and
areiter@chwllp.com

If to the JDS Defendants:

rkhanna@goldbergsegalla.com;
sgreen@goldbergsegalla.com;
srakhlin@jdsdevelopment.com; and
njayadeva@jdsdevelopment.com

If to the Werber Defendants to:

jsherven@kdvlaw.com; and
bg@werber.com

If to SHoP:

tms@shoparc.com;
RSchwartz@ZDLAW.com; and
MVardaro@ZDLAW.com

If to the PMG Defendants:

fkaiman@propertymg.com; and
cseacord@grsm.com.

Any party may change its designated recipients by providing written notification to the individuals listed above.

67.     This Agreement constitutes the entire agreement between and among the Parties hereto as to the subject matter of this Agreement and supersedes all prior agreements and understandings, written or oral, with respect thereto.  Any amendment to, or waiver of, this Agreement must be agreed to in writing by each affected Party.  No waiver by any Party hereto of any breach by any other Party hereto of any provision of this Agreement to be performed by such other Party shall be deemed a waiver of a similar or any other breach or provision at the same or at any prior or subsequent time.

68.     This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine).

69.     This Agreement may be executed in one or more counterparts (including by electronic transmission), each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.  Signatures by facsimile, pdf, or other electronic imaging shall be deemed to constitute original signatures.

**AGREED TO BY THE PARTIES:**

FOR FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*:

By: FRED FREIBERG
Title EXECUTIVE DIRECTOR
Date: MARCH 5, 2021


FOR JDS DEVELOPMENT LLC, *Defendant*:


By:
Title
Date:


FOR 616 FIRST AVENUE LLC, *Defendant*:


By:
Title
Date:


FOR 202 8TH LLC, *Defendant*:


By:
Title
Date:

31

**AGREED TO BY THE PARTIES:**

FOR FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*:

_____

By:
Title
Date:


FOR JDS DEVELOPMENT LLC, *Defendant*:

_____

By:  Michael Stern
Title  Authorized Signatory
Date: March 5, 2021


FOR 616 FIRST AVENUE LLC, *Defendant*:

_____

By:  Michael Stern
Title Authorized Signatory
Date: March 5, 2021


FOR 202 8TH LLC, *Defendant*:

_____

By:  Michael Stern
Title Authorized Signatory
Date:  March 5, 2021

FOR SHOP ARCHITECTS LLP, *Defendant*:

*Gregg Pasquarelli*

_____
By:      Gregg Pasquarelli
Title    Principal
Date:    5 March 2021


FOR PROPERTY MARKETS GROUP, INC., *Defendant*:


_____
By:
Title
Date:


FOR WERBER MANAGEMENT, INC., *Defendant*:


_____
By:
Title
Date:


FOR 202 PARK SLOPE LLC, *Defendant*:


_____
By:
Title
Date:

FOR SHOP ARCHITECTS LLP, *Defendant*:

_____

By:
Title
Date:

FOR PROPERTY MARKETS GROUP, INC., *Defendant*:

_____

By:   Kevin Maloney
Title   Authorized Signatory
Date:   March 5, 2021

FOR WERBER MANAGEMENT, INC., *Defendant*:

_____

By:
Title
Date:

FOR 202 PARK SLOPE LLC, *Defendant*:

_____

By:
Title
Date:

FOR SHOP ARCHITECTS LLP, *Defendant*:

_____

By:
Title
Date:


FOR PROPERTY MARKETS GROUP, INC., *Defendant*:

_____

By:
Title
Date:


FOR WERBER MANAGEMENT, INC., *Defendant*:

By: BENJAMIN WERBER
Title PRESIDENT
Date: 3/4/2021


FOR 202 PARK SLOPE LLC, *Defendant*:

By: BENJAMIN WERBER
Title AUTHORIZED PERSON
Date: 3/4/2021

**AS TO FORM OF AGREEMENT ONLY:**

Dated: _March 5_____, 2021

CUTI HECKER WANG LLP

By: _____

Eric Hecker
Mariann Wang
Alice G. Reiter
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600

*Attorneys for Plaintiff*

Dated: _____, 2021

GOLDBERG SEGALLA, LLP

By: _____

Reshma Khanna
Scott Green
Shannon T. O'Connor
711 Third Avenue, Suite 1900
New York, New York 10017
(646) 292-8765

*Attorneys for Defendants JDS Development LLC,
616 First Avenue LLC, and 202 8th LLC*

Dated: _____, 2021

KAUFMAN DOLOWICH & VOLUCK LLP

By: _____

Jennifer Sherven
Taylor Ferris
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
(516) 283-8714

*Attorneys for Defendants Werber Management, Inc.
and 202 Park Slope LLC*

33

**AS TO FORM OF AGREEMENT ONLY:**

Dated: _____, 2021

CUTI HECKER WANG LLP

By: _____

      Eric Hecker
      Mariann Wang
      Alice G. Reiter
      305 Broadway, Suite 607
      New York, New York 10007
      (212) 620-2600

      *Attorneys for Plaintiff*


Dated: _____, 2021

GOLDBERG SEGALLA, LLP

By: _____

      Reshma Khanna
      Scott Green
      Shannon T. O'Connor
      711 Third Avenue, Suite 1900
      New York, New York 10017
      (646) 292-8765

      *Attorneys for Defendants JDS Development LLC,*
      *616 First Avenue LLC, and 202 8th LLC*


Dated: March 5, 2021

KAUFMAN DOLOWICH & VOLUCK LLP

By: _____

      Jennifer Sherven
      Taylor Ferris
      135 Crossways Park Drive, Suite 201
      Woodbury, New York 11797
      (516) 283-8714

      *Attorneys for Defendants Werber Management, Inc.*
      *and 202 Park Slope LLC*

33

**AS TO FORM OF AGREEMENT ONLY:**

Dated: _____, 2021

CUTI HECKER WANG LLP

By: _____
        Eric Hecker
        Mariann Wang
        Alice G. Reiter
        305 Broadway, Suite 607
        New York, New York 10007
        (212) 620-2600

        *Attorneys for Plaintiff*


Dated: _____, 2021

GOLDBERG SEGALLA, LLP

By: _____
        Reshma Khanna
        Scott Green
        Shannon T. O'Connor
        711 Third Avenue, Suite 1900
        New York, New York 10017
        (646) 292-8765

        *Attorneys for Defendants JDS Development LLC,*
        *616 First Avenue LLC, and 202 8th LLC*


Dated: _____March 5_____, 2021

KAUFMAN DOLOWICH & VOLUCK LLP

By: _____
        Jennifer Sherven
        Taylor Ferris
        135 Crossways Park Drive, Suite 201
        Woodbury, New York 11797
        (516) 283-8714

        *Attorneys for Defendants Werber Management, Inc.*
        *and 202 Park Slope LLC*

33

Dated: _____ March 5 _____, 2021

ZETLIN & DE CHIARA LLP

By: _Michael Vardaro_____
    Michael Vardaro
    Roy Schwartz
    801 2nd Avenue, 16th Floor
    New York, New York 10017
    (212) 682-6800

    *Attorneys for Defendant SHoP Architects LLP*

Dated: _____, 2021

GORDON REES SCULLY MANSUKHANI LLP

By: _____
    Christopher Seacord
    Mercedes Colwin
    Jeffrey Camhi
    One Battery Park Plaza, 28th Floor
    New York, New York 10004
    (212) 453-0755

    *Attorneys for Defendant Property Markets Group, Inc.*

IT IS SO ORDERED:

_____
Hon. Analisa Torres, U.S.D.J.
Date:

34

Dated: _____, 2021

ZETLIN & DE CHIARA LLP

By: _____

     Michael Vardaro
     Roy Schwartz
     801 2nd Avenue, 16th Floor
     New York, New York 10017
     (212) 682-6800

     *Attorneys for Defendant SHoP Architects LLP*

Dated: *March 5*, 2021

GORDON REES SCULLY MANSUKHANI LLP

By: _____

     Christopher Seacord
     Mercedes Colwin
     Jeffrey Camhi
     One Battery Park Plaza, 28th Floor
     New York, New York 10004
     (212) 453-0755

     *Attorneys for Defendant Property Markets Group, Inc.*

IT IS SO ORDERED:

_____
Hon. Analisa Torres, U.S.D.J.
Date:

# EXHIBIT A

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| | **Element** | **Condition** | **Remediation Plan** |
| 1 | **Common Use, General:** | | |
| 2 | The characters on signs that provide direction to or information about functional spaces must contrast with the background, either light on dark or dark on light.  The sign must have a matte finish. | The directional signage does not provide the light on dark or dark on light contrast between the characters and background. | Replace with accessible signage or add supplementary accessible signage. |
| 3 | Interior and exterior signs identifying permanent rooms and spaces must have raised characters that are in upper case and are 5/8" to 2" tall.  The message must be repeated in braille.  The signs must have a matte finish.  The characters must contrast with the background.  The baseline of the characters and braille must be between 48" and 60" above the floor. | The vinyl signs do not have any accessible features. | Replace with accessible signage or add supplementary accessible signage. |
| 4 | Common use interior doors, that are required for passage and that are not considered fire doors, must be openable with no more than 5-pounds force. | Doors with closers require 7 to 15 pounds force to operate. | Adjust all door closers so that they require less than 5 lbs. of force. |
| 5 | **Trash Rooms:** | | |
| 6 | The control for the trash chute intake door must be openable with no more than 5-pounds force. | The trash chute doors require more than 5-pounds force to operate. | Replace the trash chute intake door on every other floor with a door that is operable with no more than 5-pounds force.  In that the door opening forces change with significant temperature changes, the opening forces will be checked seasonally. |
| 7 | **Ground Floor Plaza:** | | |
| 8 | At least 5% of the seating or standing spaces must be accessible wheelchair spaces.  Wheelchair spaces must be dispersed. | There is no accessible seating. | Add two accessible tables that provide compliant clear floor space and knee space. |
| 9 | **Parking:** | | |
| 10 | Parking is provided.  Although it is valet parking, accessible parking must be provided. | There is no accessible parking. | Add two accessible parking spots. |
| 11 | A 36"-wide portion of the service counter must be no higher than 36". | The entire parking attendant window is 46" above the floor. | Add a sign with the phone number for the line into the attendant's office for anyone who needs to get the attention of the attendant. |
| 12 | Slope of curb ramp cannot exceed 8.33%. | The curb ramp to the West Tower entrance has a slope of 11%. | Provide a compliant curb ramp and landing. JDS will provide shop drawings to Plaintiff in advance of remediation so that Plaintiff can confirm that the proposed remediation plan is compliant. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 13 | Maneuvering space at the door cannot slope more than 2%. | The maneuvering space at the East Tower entrance has a slope of 6.6%. | Provide a compliant curb ramp and landing. JDS will provide shop drawings to Plaintiff in advance of remediation so that Plaintiff can confirm that the proposed remediation plan is compliant. |
| 14 | The pull side of the door requires a forward approach. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | The maneuvering space at the East Tower entrance extends only about 1 1/2" beside the latch side of the door. | Provide a compliant curb ramp and landing. JDS will provide shop drawings to Plaintiff in advance of remediation so that Plaintiff can confirm that the proposed remediation plan is compliant. |
| 15 | **West Tower: Cellar: Laundry:** | | |
| 16 | **Laundry:** | | |
| 17 | Changes in level that are no more than 1/2" require a ramp, platform lift, or elevator. | The accessible route to the dog wash is blocked by a 6 1/4" step. | Place the replacement accessible dog wash on an accessible route and where the controls are within reach. |
| 18 | There are common use tables.  Knee space underneath must be at least 27" high. | The knee space under the folding table is blocked by a shelf. | Place the replacement accessible dog wash on an accessible route and where the controls are within reach. |
| 19 | Operable parts that are required to be accessible must have a level 30" by 48" clear floor space. | The clear floor space for the dog wash is only 22" wide. | Place the replacement accessible dog wash on an accessible route and where the controls are within reach. |
| 20 | The common use sink faucet must be within reach.  A side reach over a countertop is required.  For the operable parts to be within reach the countertop cannot be taller than 34" or the operable parts cannot be more than 10" from the front edge of the counter. | The top of the dog wash sink is 36" above the floor.  The controls are 30" from the front edge and about 45" high. | Place the replacement accessible dog wash on an accessible route and where the controls are within reach. |
| 21 | **Bicycle Storage:** | | |
| 22 | Where interior and exterior signs identifying permanent rooms and spaces are provided, the baseline of tactile characters on Interior and exterior signs identifying permanent rooms and spaces must be between 48" and 60" above the floor. | The baselines of the uppermost characters are 61 1/4" above the floor. | Lower the sign so that the baseline of all characters are between 48" and 60" above the floor. |
| 23 | **West Tower: 1st Level:** | | |
| 24 | Accessible route must be at least 36" wide. | The accessible route between the mailboxes narrows to 28 3/4". | JDS will implement an agreed-upon alternative plan, unless the parties agree no plan is feasible. |
| 25 | **West Tower: 1st Level Toilet Room:** | | |
| 26 | The characters on interior and exterior signs identifying permanent rooms and spaces must contrast with the background, either light on dark or dark on light. | The sign does not provide the light on dark or dark on light contrast between the characters and background.  The characters are bronze and the background is a dark wood. | Replace with accessible signage or add supplementary accessible signage. |

| | **EXHIBIT A - American Copper Buildings Remediation Plan** | | |
|---|---|---|---|
| 27 | The room identification sign may be mounted on the push side of the door. If the door has a closer, and does not have a hold open device, the room identification sign must be mounted on the wall adjacent to the latch side of the door. | The sign is mounted on the pull side of the door. | Replace with accessible signage or add supplementary accessible signage. |
| 28 | The door hardware must be operable without tight grasping, tight pinching, or twisting of the wrist. | The toilet room door has a lock that requires tight grasping and twisting to operate. | Replace with or provide a locking mechanism that does not require grasping and twisting to operate. |
| 29 | Operable parts must be between 15" and 48" above the floor. | The soap dispenser is 53 1/2 above the floor. | Move or replace the soap dispenser so that it is no higher than 48" above the floor. |
| 30 | Where mirrors are provided, at least one shall have the bottom of the reflective edge within 40" of the floor. | The reflective surface of the mirror is mounted 43 1/4" above the floor. | Move the mirror so that the bottom of the reflective surface is no higher than 40" above the floor. |
| 31 | Lavatory knee space must extend at least 8" under the lavatory for a height of at least 27". | The lavatory knee space is only about 24 1/2" high at the apron. | Replace the lavatory with one that provides compliant knee space and has a counter surface and rim no higher than 34". Insulate exposed pipes. |
| 32 | Grab bars must be on the rear wall and on the sidewall nearest the toilet. | There is no grab bar on the rear wall. | Add a grab bar on the rear wall and removing the toilet seat cover. |
| 33 | The top of the gripping surface of the grab bar must be 33" to 36" above the floor. | The top is 39 1/4" above the floor. | Install grab bar so that the top of the gripping surface is no higher than 36" above the floor (and no less than 33" above the floor). |
| 34 | The sidewall grab bar at the toilet must be at least 42" long, must be within 12" of the rear wall, and must extend at least 54" from the rear wall. | It is only 36" long. The front end of the grab bar is only 44 1/2" from the rear wall. JDS will remediate. | The existing grab bar may be used on the rear wall. Install a new grab bar that is at least 42" long with the front edge 54" from the rear wall. |
| 35 | Centerline of toilet must be 16" to 18" from sidewall. | The toilet centerline is 19 1/4" from the sidewall. | Move the toilet so that so that the toilet centerline is between 16" and 18" from the sidewall. |
| 36 | **East Tower: 1st Level:** | | |
| 37 | At each accessible entrance to a building, at least one door shall be accessible. | The accessible entrance was locked during my survey. | Ensure management keeps this door unlocked. |
| 38 | Accessible route must be at least 36" wide. | The accessible route between the mailboxes narrows to 31" to 32". | JDS will implement the proposed solution found in Attachment 1 to this Exhibit, or an agreed-upon alternative plan. |
| 39 | **East Tower: 1st Level Toilet Room:** | | |
| 40 | The characters on interior and exterior signs identifying permanent rooms and spaces must contrast with the background, either light on dark or dark on light. | The sign does not provide the light on dark or dark on light contrast between the characters and background. The characters are bronze and the background is a dark wood. | Replace with accessible signage or add supplementary accessible signate. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 41 | The room identification sign may be mounted on the push side of the door. If the door has a closer, and does not have a hold open device. Otherwise, the room identification sign must be mounted on the wall adjacent to the latch side of the door. | The sign is mounted on the pull side of the door. | Provide an accessible toilet room sign on the wall to the latch side of the door. |
| 42 | The door hardware must be operable without tight grasping, tight pinching, or twisting of the wrist. | The toilet room door has a lock that requires tight grasping and twisting to operate. | Replace with or provide a locking mechanism that does not require tight grasping and twisting to operate. |
| 43 | At least 5% of the hooks must be within reach. It must be within 48" of the floor. | The top of the clothes hook is 70 1/2" above the floor. | Move or install new hook so that the top of the hook is no Higher than 48" above the floor. |
| 44 | Where mirrors are provided, at least one shall have the bottom of the reflective edge within 40" of the floor. | The reflective surface of the mirror is mounted 41" above the floor. | Move the mirror so that the bottom of the reflective surface is no higher than 40" above the floor. |
| 45 | Lavatory knee space must extend at least 8" under the lavatory for a height of at least 27". | The lavatory knee space is only about 24 1/2" high at the apron. | Replace the lavatory with one that provides compliant knee space and has a counter surface and rim no higher than 34". Insulate exposed pipes. |
| 46 | There must be 1 1/2" of clear space behind and below the rear grab bar. There must be 12" of clear space above and nothing may interfere with the space in front of the grab bar. | Use of the grab bar is blocked by the toilet seat cover. | Remove the toilet seat cover. |
| 47 | Clear floor space at the toilet must be at least 60" wide and 56" deep. The lavatory may not overhang this space. | The lavatory reduces the toilet clear floor space to only 50 1/2" wide. | Move the lavatory farther from the toilet. |
| 48 | Centerline of toilet must be 16" to 18" from sidewall. | The toilet centerline is 18 1/2" from the sidewall. | Move the toilet such that the toilet centerline is between 16" and 18" from the sidewall. |
| 49 | Toilet seat must be 17" to 19" above the floor. | The toilet seat is 19 1/4" high. | Remove the toilet seat cover. |
| 50 | The outlet of the toilet paper dispenser must be between 24" and 42" from the rear wall. | The near side is 20 1/2" from the rear wall. | Move the toilet paper dispenser so that it is at least 24" from the rear wall. |
| 51 | **West Tower: 28th Level:** | | |
| 52 | The top of the threshold cannot be more than 1/2" above the landing on both sides. If it is taller than 1/4", it must be beveled 1:2. | At the elevator lobby, the top is 3/4" above the landing. | Re-install or modify the threshold so that it no taller than 1/2". |
| 53 | **West Tower: 28th Level: Steam Room:** | | |
| 54 | The hand-held shower spray must be usable as a fixed showerhead or as a handheld. When fixed, it must be within reach. A forward reach is required. Therefore, the gripping surface must be within 48" of the floor. | At the rinsing shower, the handheld is 55" above the floor. | Lower the mounting pin so that the handheld handle is 48" above the floor. |
| 55 | The hand-held shower spray must have an on/off control with a non-positive shut-off. | The hand-held shower spray does not have an on/off control. | Replace with a compliant showerhead fixture. |
| 56 | **West Tower: 28th Level: Women's Room:** | | |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 57 | Objects may not protrude into the circulation path by more than 4" if the underside is more than 27" but less than 80" above the floor. | The underside of the hand dryer is about 40" above the floor and protrudes about 8" into the circulation path. | Permanently remove hand dryer and maintain adequate supply of paper towels. |
| 58 | Operable parts of the locker must be operable with one hand and without tight grasping, tight pinching, or twisting of the wrist. | The lock requires tight pinching to operate. | Replace with or provide a locking mechanism that does not require tight pinching to operate. |
| 59 | Where mirrors are provided, at least one shall have the bottom of the reflective edge within 40" of the floor. | The reflective surface of the mirror is mounted 42" above the floor. | Move the mirror so that the bottom of the reflective surface is mounted no higher than 40" above the floor. |
| 60 | For the faucet to be within reach, its controls cannot be beyond the front edge of the toe space.  The front edge of the toe space is no more than 9" in beyond the front of the knee space 27" above the floor. | The clear floor space extends 19 1/2" from the apron.  The faucet controls are 22" from the apron.  Therefore, faucet controls are 2 1/2" beyond the toe space. | Install a faucet with controls within 19 1/2" of the apron.  Or, replace the lavatory with a model that permits the knee space to be 13" deep and the toe space to be 22" deep. |
| 61 | Pipes under the lavatory or sink must be insulated to protect a person from burns and from sharp or abrasive edges. | The pipes under the accessible lavatory are not insulated. | Insulate the pipes under the lavatory. |
| 62 | The accessible shower must be a transfer-type that is exactly 36" by 36", roll-in type that is at least 30" deep by at least 60" wide, or an alternate roll-in type that is exactly 36" deep by at least 60" wide. | The shower is 35 1/4" wide. | Remove glass enclosure to convert to a standard roll-in shower. |
| 63 | This shower is the alternate roll-in type.  The entrance must be at least 36" wide. | The shower entrance is only 35" wide. | Relocate the front wall 36" from the rear wall and widen the door clear opening to 36". |
| 64 | This shower is the alternate roll-in type.  The seat must be on the front wall. | No seat is provided. | Remove glass enclosure to convert to a standard roll-in shower. |
| 65 | The hand-held shower spray must be usable as a fixed showerhead or as a handheld.  When fixed, it must be within reach.  A forward reach is required.  Therefore, the gripping surface must be within 48" of the floor. | The **handheld** is 54 1/2". | Lower the mounting pin so that the handheld handle is 48" above the floor. |
| 66 | The hand-held shower spray must have an on/off control with a non-positive shut-off. | The hand-held shower spray does not have an on/off control. | Replace with a shower spray that has an on/off control. |
| 67 | The rear grab bar must be at least 36" long.  It must extend from the toilet centerline to at least 12" in each direction. | The rear grab bar extends only 11" to the wall side of the toilet. | Move the grab bar such that it extends at least 12" in each direction from the toilet centerline. |
| 68 | Centerline of toilet must be 16" to 18" from sidewall. | The toilet centerline is 18 1/2" from the sidewall. | Move the toilet so the toilet centerline is between 16" and 18" from the sidewall. |
| 69 | The outlet of the toilet paper dispenser must be between 24" and 42" from the rear wall. | The near side is only 20 1/2" from the rear wall. | Move the toilet paper dispenser so that the outlet is at least 24" from the rear wall. |
| 70 | **West Tower: 28th Level: Men's Room:** | | |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 71 | A 30" by 48" clear floor space must be provided beside the short end of the bench | Clear floor space is not provided at the short end of the bench. | Relocate the bench to where a 30" by 48" clear floor space is provided at the short end.  Or, replace the bench with 42" bench and position it where a 30" by 48" clear floor space is provided at the short end. |
| 72 | Operable parts of the locker must be operable with one hand and without tight grasping, tight pinching, or twisting of the wrist. | The lock requires tight pinching to operate. | Replace with or provide a locking mechanism that does not require tight pinching, grasping or twisting to operate for 5% of the locks. |
| 73 | Where mirrors are provided, at least one shall have the bottom of the reflective edge within 40" of the floor. | The reflective surface of the mirror is mounted 41 1/4" above the floor. | Move the mirror so that the bottom of the reflective surface is no higher than 40" above the floor. |
| 74 | Lavatory knee space must extend at least 8" under the lavatory for a height of at least 27". | The lavatory knee space is only 26 1/2" high at the apron. | Raise the lavatory counter 1/2" or cut the apron to permit a 30"-wide knee space that is at least 27" high. |
| 75 | For the faucet to be within reach, its controls cannot be beyond the front edge of the toe space.  The front edge of the toe space is no more than 9" in beyond the front of the knee space 27" above the floor. | The clear floor space extends 19 1/2" from the apron.  The faucet controls are 22" from the apron.  Therefore, faucet controls are 2 1/2" beyond the toe space. | Install a faucet with controls within 19 1/2" of the apron.  Or, replace the lavatory with a model that permits the knee space to be 13" deep and the toe space to be 22" deep. |
| 76 | Pipes under the lavatory or sink must be insulated to protect a person from burns and from sharp or abrasive edges. | The pipes under the accessible lavatory are not insulated. | Insulate the pipes under the lavatory. |
| 77 | The accessible shower must be a transfer-type that is exactly 36" by 36", roll-in type that is at least 30" deep by at least 60" wide, or an alternate roll-in type that is exactly 36" deep by at least 60" wide. | The shower is 34" wide. | Remove glass enclosure to convert to a standard roll-in shower. |
| 78 | This shower is the alternate roll-in type.  The entrance must be at least 36" wide. | The shower entrance is only 35" wide. | Remove glass enclosure to convert to a standard roll-in shower. |
| 79 | This shower is the alternate roll-in type.  The seat must be on the front wall. | The handheld is 56" above the floor. | Lower the mounting pin so that the handheld handle is 48" above the floor. |
| 80 | The hand-held shower spray must be usable as a fixed showerhead or as a handheld.  When fixed, it must be within reach.  A forward reach is required.  Therefore, the gripping surface must be within 48" of the floor. | The handheld is 56" above the floor. | Lower the mounting pin so that the handheld handle is 48" above the floor. |
| 81 | The hand-held shower spray must have an on/off control with a non-positive shut-off. | The hand-held shower spray does not have an on/off control. | Replace with a shower sprayer that has an on/off control. |
| 82 | The sidewall grab bar at the toilet must be at least 42" long, must be within 12" of the rear wall, and must extend at least 54" from the rear wall. | The grab bar is only 36" long.  The front end is 47" from the rear wall. | Replace with a grab bar that extends at least **54"** from the rear wall. |
| 83 | The rear grab bar must be at least 36" long.  It must extend from the toilet centerline to at least 12" in each direction. | The rear grab bar extends only 10 1/2" to the wall side of the toilet. | Move the grab bar so that it extends at least 12" in each direction from the toilet centerline. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 84 | The outlet of the toilet paper dispenser must be between 24" and 42" from the rear wall. | The near side is only 20 1/2" from the rear wall. | Move the toilet paper dispenser so that its outlet is at least 24" from the rear wall. |
| 85 | **Skybridge: 28th Level: Pool:** | | |
| 86 | Interior and exterior signs identifying permanent rooms and spaces must have a matte finish.  The characters and symbols must contrast with the background. | The characters are mounted on a glass door.  Glare significantly reduces the contrast between the white characters and clear background. | Add a supplemental sign or replace with accessible signage. |
| 87 | Objects may not protrude into the circulation path by more than 4" if the underside is more than 27" but less than 80" above the floor. | On the angled columns, the light sconces project 8" into the circulation path and is below 80". | Add a small table under each of these sconces. |
| 88 | Operable parts must be operable with one hand and without tight grasping, tight pinching, or twisting of the wrist.  It must be operable with no more than 5-pounds force. | The spa timer switch requires tight grasping and twisting. | Replace with an accessible spa timer that does not require twisting, grasping, or tight pinching. |
| 89 | The hand-held shower spray must be usable as a fixed showerhead or as a handheld.  When fixed, it must be within reach.  A forward reach is required.  Therefore, the gripping surface must be within 48" of the floor. | At the rinsing shower, the handheld is 57" above the floor. | Lower the mounting pin so that the handheld handle is 48" above the floor. |
| 90 | The hand-held shower spray must have an on/off control with a non-positive shut-off. | The hand-held shower spray does not have an on/off control. | Replace with compliant showerhead fixture. |
| 91 | **Skybridge: 29th Level: Lounge:** | | |
| 92 | Abrupt changes in level that exceed 1/4" must be beveled at 1:2. Abrupt changes that exceed 1/2" must slope no more than 8.33%. | The top of the expansion joint cover and matting is 3/4" to 1" above the finish floor.  The edge conditions slope at about 30%. | Implement remediation described in Attachment 2 to this Exhibit. |
| 93 | **Skybridge: 29th Level: Lounge: Toilet Room:** | | |
| 94 | The characters on interior and exterior signs identifying permanent rooms and spaces must contrast with the background, either light on dark or dark on light. | The sign does not provide the light on dark or dark on light contrast between the characters and background.  The characters are bronze and the background is a dark wood. | Provide a compliant sign mounted on the wall to the latch side of the door. |
| 95 | The door hardware must be operable without tight grasping, tight pinching, or twisting of the wrist. | The door has a locking mechanism that requires pinching, tight grasping and twisting to operate. | Replace with a locking mechanism that does not require pinching, tight grasping, or twisting to operate. |
| 96 | At least 5% of the hooks must be within reach.  It must be within 48" of the floor. | The top of the clothes hook is 61" above the floor. | Move the hook so that the top of it is no higher than 48" above the floor. |
| 97 | Lavatory knee space must extend at least 8" under the lavatory for a height of at least 27". | The lavatory knee space is only about 24 1/2" high at the apron. | Replace the lavatory with one that provides compliant knee space. |
| 98 | The rear grab bar must be at least 36" long.  It must extend from the toilet centerline to at least 12" in each direction. | The rear grab bar extends only 11" to the wall side of the toilet. | Relocate the grab bar so that it extends 12" from the toilet centerline on the wall side and 24" from the centerline on the open side. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 99 | The sidewall grab bar at the toilet must be at least 42" long, must be within 12" of the rear wall, and must extend at least 54" from the rear wall. | It is 13" from the rear wall. | Reposition the grab bar so that it is within 12" of the rear wall and the front end is at least 54" from the rear wall. |
| 100 | Centerline of toilet must be 16" to 18" from sidewall. | The toilet centerline is 18 3/4" from the sidewall. | Move the toilet and lavatory so that the toilet centerline is between 16" and 18" from the sidewall. |
| 101 | The outlet of the toilet paper dispenser must be between 24" and 42" from the rear wall. | The near end of the toilet paper dispenser is 21 1/2" from the rear wall. | Move the toilet paper dispenser so that the near end of the dispenser is at least 24" from the rear wall. |
| 102 | **East Tower: 29th Level: Toilet Room Outside Empire Studio:** | | |
| 103 | The room identification sign may be mounted on the push side of the door.  If the door has a closer, and does not have a hold open device.  Otherwise, the room identification sign must be mounted on the wall adjacent to the latch side of the door. | The sign is mounted on the pull side of the door. | Provide an accessible toilet room sign on the wall to the latch side of the door. |
| 104 | The pull side of the door requires a latch-side approach.  The door has a closer.  Therefore, the maneuvering space must be at least 54" deep and must extend at least 24" from the latch. | The maneuvering space at the door is only 41" deep. | Install an automatic door opener. |
| 105 | Common use interior doors, that are required for passage and that are not considered fire doors, must be openable with no more than 5-pounds force. | The door requires 15 pounds force. | Install an automatic door opener. |
| 106 | Doors with closers must take at least 3 seconds to move from a 70-degree position to a point 3" from the latch. | The door closes in 2 seconds. | Install an automatic door opener. |
| 107 | The top of the threshold cannot be more than 1/2" above the landing on both sides.  If it is taller than 1/4", it must be beveled 1:2. | The top is 3/4" above the landing. | Adjust the floor tiles and threshold to reduce the height to 1/2". |
| 108 | The door hardware must be operable without tight grasping, tight pinching, or twisting of the wrist. | The door has a locking mechanism that requires pinching, tight grasping and twisting to operate. | Replace with or provide a locking mechanism that does not require pinching, tight grasping or twisting to operate. |
| 109 | At least 5% of the hooks must be within reach.  It must be within 48" of the floor. | The top of the clothes hook is 70 1/2" above the floor. | Move or add new hook so that the top of the hook is no higher than 48" above the floor. |
| 110 | Lavatory knee space must extend at least 8" under the lavatory for a height of at least 27". | The lavatory knee space is only about 24 1/2" high at the apron. | Replace the lavatory with one that provides compliant knee space. |
| 111 | The rear grab bar must be at least 36" long.  It must extend from the toilet centerline to at least 12" in each direction. | The rear grab bar is only extends only 10 1/2" to the wall side of the toilet. | Relocate the grab bar so that it extends 12" from the toilet centerline on the wall side and 24" from the centerline on the open side. |
| 112 | Toilet seat must be 17" to 19" above the floor. | The toilet is wall-hung.  The seat is 20" high. | Remove toilet seat cover. |
| 113 | **East Tower: 29th Level: Empire Studio:** | | |

| | **EXHIBIT A - American Copper Buildings Remediation Plan** | | |
|---|---|---|---|
| 114 | Operable parts must be between 15" and 48" above the floor. | The touch pad is 61 1/2" above the floor. | Relocate touch pad to be no higher than 48" above the floor. |
| 115 | Operable parts must be between 15" and 48" above the floor. | The "push to exit" button is 53 3/4" above the floor. | Relocate "push to exit" button so that it is no higher than 48" above the floor. |
| 116 | **West Tower: 29th Level:** | | |
| 117 | Objects may not protrude into the circulation path by more than 4" if the underside is more than 27" but less than 80" above the floor. | The underside of the reception desk counter is 39 1/2" above the floor and protrudes about 12" into the circulation path. | Install a guardrail for cane detection. |
| 118 | At least 5% of the seating or standing spaces must be accessible wheelchair spaces. Wheelchair spaces must be dispersed. | There are about 10 seats at 3 tables. Therefore, at least one must have wheelchair spaces. However, none are provided. | Provide one accessible table in the juice bar area. |
| 119 | **West Tower: 28th Level: Fitness Center:** | | |
| 120 | The pull side of the door requires a forward approach. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | At the entrance door from the Fitness Lobby, the maneuvering space extends only 15 3/4" beside the latch side of the door. | Install an automatic door opener. |
| 121 | Knee space under the drinking fountain must be at least 27" high for a depth of at least 8" and at least 17" deep at the floor. | It is only 26 3/4" high and only 11 1/2" deep. | Replace with an accessible water filling station. |
| 122 | **West Tower: 28th Level: Fitness Center: Studio 1:** | | |
| 123 | The pull side of the door requires a forward approach. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | The maneuvering space extends only 5" beside the latch side of the door. | Move machine to an accessible location. |
| 124 | Operable parts must be between 15" and 48" above the floor. | The operable parts on the thermostat are 54 1/2" above the floor. | Lower the thermostat so that its operable parts are no higher than 48" above the floor. |
| 125 | Operable parts must be between 15" and 48" above the floor. | The operable parts on the touch pad are 57" above the floor. | Lower so that operable parts are no higher than 48" above the floor. |
| 126 | **West Tower: 28th Level: Fitness Center: Studio 2:** | | |
| 127 | Accessible route may narrow to 32" for a distance of no more than 24". | The accessible route to the thermostat and touch pad narrows to 30". | Move equipment. |
| 128 | Operable parts must be between 15" and 48" above the floor. | The operable parts on the thermostat are 54" above the floor. | Lower so that operable parts are no higher than 48" above the floor. |
| 129 | Operable parts must be between 15" and 48" above the floor. | The operable parts on the touch pad are 61" above the floor. | Lower so that operable parts are no higher than 48" above the floor. |
| 130 | **West Tower: 29th Level: Fitness Center:** | | |
| 131 | Knee space under the drinking fountain must be at least 27" high for a depth of at least 8" and at least 17" deep at the floor. | It is only 26 1/2" high and only 11 1/2" deep. | Replace with an accessible water filling station. |
| 132 | **West Tower: 29th Level: Fitness Center: Toilet Room near the punching bag:** | | |
| 133 | The door hardware must be operable without tight grasping, tight pinching, or twisting of the wrist. | The door has a locking mechanism that requires pinching, tight grasping and twisting to operate. | Replace with or provide a locking mechanism that does not require pinching, tight grasping or twisting to operate. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 134 | At least 5% of the hooks must be within reach.  It must be within 48" of the floor. | The top of the clothes hook is 61 1/2" above the floor. | Move or add new hook so that the top of it is no higher than 48" above the floor. |
| 135 | Lavatory knee space must extend at least 8" under the lavatory for a height of at least 27". | The lavatory knee space is only about 24 1/2" high at the apron. | Replace the lavatory with one that provides compliant knee space. |
| 136 | Centerline of toilet must be 16" to 18" from sidewall. | The toilet centerline is 18 1/2" from the sidewall. | Move the toilet and lavatory so that the toilet centerline is between 16" and 18" from the sidewall. |
| 137 | The outlet of the toilet paper dispenser must be between 24" and 42" from the rear wall. | The near side is only 20 1/2" from the rear wall. | Move the toilet paper dispenser so that it is at least 24" from the rear wall. |
| 138 | **West Tower: 29th Level: Playroom:** | | |
| 139 | The pull side of the door requires a latch-side approach.  The door has a closer.  Therefore, the maneuvering space must be at least 54" deep and must extend at least 24" from the latch. | The maneuvering space at the door is only 40" deep. | Install an automatic door opener. |
| 140 | Operable parts must be between 15" and 48" above the floor. | The "push to exit" button is 53" above the floor. | Install an automatic door opener. |
| 141 | **West Tower: 29th Level: Playroom Toilet Room:** | | |
| 142 | The pull side of the door requires a forward approach.  Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | The maneuvering space is only 59" deep and extends only 8 1/2" beside the latch side of the door. | Install automatic door opener. |
| 143 | A baby changing table is provided.  Therefore, at least one must be accessible.  When unfolded, a 30" by 48" clear floor space must be provided with knee space that is at least 27" tall and that extends 17" under the table. | The knee and toe space is only 16" deep. | Provide compliant knee space per 4.30.3, 4.30.4.  The baby changing table is a recessed model.  Remount it so that it is recessed 1" less than it is now. |
| 144 | For facilities used primarily by children 6 through 12 years old, the lavatory knee height to be as low as 24" if the counter is no higher than 31". | The knee space is blocked by the lavatory legs and bracing. | Make accessible for children with disabilities ages 6 through 12 and provide knee clearance that is at least 24" high. |
| 145 | Toilet uses a side approach.  Therefore, the clear floor space must be at least 48" wide and 56" deep.  The lavatory, which may overhang the clear floor space, must be at least 36" from the toilet sidewall. | The vanity legs reduce the clear floor space width at the toilet to 33". | Relocate lavatory 3" farther from the toilet.  Remove vanity legs and provide at least 24" high knee space under lavatory. |
| 146 | The toilet flush control must be on the open side of the toilet. | The toilet flush control is on the wall side. | Replace tank with one that has the flush on the right side. |
| 147 | **East Tower: 41st Level: Left Toilet Room Identified as "Storage":** | | |
| 148 | When not all toilet rooms are accessible, each accessible toilet room must be identified by an International Symbol of Accessibility (ISA) and each non-accessible toilet room must provide signage that directs one to the nearest accessible toilet room. | The left toilet room is more accessible than the right toilet room.  It is not identified by an ISA. | Add appropriate signage. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 149 | Where mirrors are provided, at least one shall have the bottom of the reflective edge within 40" of the floor. | The reflective surface of the mirror is mounted 46 3/4" above the floor. | Move the mirror so that the bottom of the reflective surface is no higher than 40" above the floor. |
| 150 | Knee and toe space must extend at least 17" under the lavatory. | The clear floor space is blocked by the cabinet. | Replace the lavatory with one that provides compliant knee space. |
| 151 | The rear grab bar must be at least 36" long.  It must extend from the toilet centerline to at least 12" in each direction. | The rear grab bar is only 24" long and extends only 9" to the wall side of the toilet. | Replace with a rear grab bar that extends at least 12" in each direction from the toilet centerline. |
| 152 | The sidewall grab bar at the toilet must be at least 42" long, must be within 12" of the rear wall, and must extend at least 54" from the rear wall. | It is only 24" long.  It is 13" from the rear wall.  The front end of the grab bar is only 37" from the rear wall. | Replace with a 42" grab bar and install so that it extends 12" from the toilet centerline on the wall side and 24" from the centerline on the open side. |
| 153 | The outlet of the toilet paper dispenser must be between 24" and 42" from the rear wall. | The near end of the toilet paper dispenser is 22" from the rear wall. | Move the toilet paper dispenser so that it is at least 24" from the rear wall. |
| 154 | **East Tower: Rooftop:** | | |
| 155 | Objects may not protrude into the circulation path by more than 4" if the underside is more than 27" but less than 80" above the floor. | The underside of the bar counter is 37 3/4" above the floor and protrudes 11 1/2" into the circulation path. | Install a foot rest for cane detection |
| 156 | At least 5% of the seating or standing spaces must be accessible wheelchair spaces.  Wheelchair spaces must be dispersed. | There are several tables.  Therefore, at least 1 table must have wheelchair spaces.  However, none of the tables provide compliant knee and toe clearances. | Add two accessible tables that provide compliant clear floor space and knee space. |
| 157 | The common use electrical receptacles that are available for recharging personal devices must be within reach.  The lower outlet on these receptacles must be at least 15" above the floor. | The lower outlet only 9 3/4" above the floor. | Add a cover to the outlet that is locked. |
| 158 | **East Tower: Rooftop Pool:** | | |
| 159 | Knee space under the drinking fountain must be at least 27" high for a depth of at least 8". | It is only 26 1/2" high. | Replace with an accessible water filling station. |
| 160 | Drinking fountain clear floor space must be centered. | The clear floor space is off-centered by 9 1/2". | Replace with an accessible water filling station. |
| 161 | Operable parts must be operable with one hand and without tight grasping, tight pinching, or twisting of the wrist.  It must be operable with no more than 5-pounds force. | The spa timer switch is a knob, which requires tight grasping, tight pinching, or twisting of the wrist to operate. | Replace with a compliant control that does not require tight grasping, tight pinching, or twisting to operate. |
| 162 | **East Tower: Rooftop: Left Toilet Room:** | | |
| 163 | | | JDS shall prohibit all public use of this restroom, including by tenants and/or their guests.  Because it is not an accessible restroom, accessible signage shall be removed, and it shall be locked at all times. |
| 164 | **East Tower: Rooftop: Right Toilet Room:** | | |

| EXHIBIT A - American Copper Buildings Remediation Plan | | | |
|---|---|---|---|
| 165 | | | JDS shall prohibit all public use of this restroom, including by tenants and/or their guests. Because it is not an accessible restroom, accessible signage shall be removed, and it shall be locked at all times. |
| 166 | **DWELLING UNITS** | | |
| 167 | Where the top of the threshold is more than 1/4" above the landing, the transition must be beveled at least 1:2. | In a significant number of the dwelling units, the entrance door threshold is about 1/2" tall.  The vertical face is about 3/8" tall before the bevel begins.  In many units, bathroom thresholds are non-compliant as well. | JDS will remediate by modifying all non-compliant entrance thresholds and thresholds throughout the dwelling units -- including entrance thresholds, bedroom thresholds, bathroom thresholds, and terrace/balcony thresholds -- such that they are beveled at least 1:2. For the 59 units inspected by Plaintiff's expert, JDS will remediate the following thresholds in the following units (descriptions included to help identify thresholds within a particular unit: E.3B (master bedroom); E.27B (entrance); W.9A (bathroom); W.21J (entrance); W.24C (entrance); W.30B (swinging balcony); W.30C (swinging balcony); W.35C (entrance); W.39A (entrance); W.39H (entrance and bathroom); W.29J (entrance and bathroom); W.40F (entrance); W.41D (bathroom); W.41L (entrance); W.42G (entrance); W.46C (bathroom); W.46C (bathroom); W.46F (entrance and bathroom); W.46H (entrance and bathroom); W.48B (swinging balcony). For the remaining 702 units, JDS will inspect every threshold to and throughout each dwelling unit and will remediate every inaccessible threshold such that they are properly beveled if the top of the threshold is more than 1/4" above the landing. |
| 168 | The primary entrance door operating hardware must be mounted between 34" and 48" of the floor. | The unit entrance door has a privacy door latch on the inside the is 54" above the floor. | JDS will remediate in every unit in the building by moving or adding privacy latches to an accessible height of no more than 48" above the floor. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 169 | Door clear opening must be at least 31 5/8". | In all units doors have clear openings between 25" and 31". | JDS will remediate inadequate door clear openings in and throughout all of 761 units to the extent that replacing the door hinges with swing-clear hinges achieves compliance.  For the 59 units inspected by Plaintiff's expert, JDS will remediate the following doors in the following units to the extent that replacing the hinges with swing-clear hinges achieves compliance (descriptions included to help identify doors within a particular unit): E.3A (bedroom door); E.3b (bedroom doors, walk-in closet door, coat closet door); E.3G (bedroom doors); E.3H (bedroom door); E.7E (bedroom doors, coat closet door); E.14J (bedroom doors); E.18C (bedroom door); E.20A (bedroom doors, coat closet door); E.20J (bedroom doors); E.24H (bedroom doors); E.27B (bedroom doors); E.28A (bedroom doors, walk-in closet door); E.28F (bedroom doors); E.30B (bedroom doors, walk-in closet door); E.32E (walk-in closet door); E.32G (bedroom doors, walk-in closet door); E.33C (bedroom doors, walk-in closet door); E.33D (bedroom door); E.35B (bedroom doors, walk-in closet door, hall bathroom door); E.35C (bedroom doors, walk-in closet door); E.35F (bedroom doors, coat closet door); E.36D (bedroom door); E.38E (bedroom door); E.40E (bedroom doors, coat closet door); E.41A |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| | | | (bedroom doors, laundry room door, walk-in closet door, master bath linen closet door, middle bedroom closet door); E.41C (bedroom doors, walk-in closet doors); E.41F (bedroom door); W.9A (bedroom doors); W.9G (bedroom door, coat closet door); W.14B (bedroom door, bathroom door); W.14J (bedroom doors); W.21J (bedroom door); W.24C (bedroom doors, hall bathroom door); W.26D (walk-in closet door); W.30B (bedroom doors, hall bathroom door); W.30C (bedroom doors, coat closet door, hall bathroom door); W.33G (bedroom door, walk-in closet door, coat closet door)l W.35C (bedroom doors, master bathroom door, coat closet door); W.39A (bedroom doors, walk-in closet door, master bathroom door) W.39H (walk-in closet door); W.39J (bedroom door, bathroom door, coat closet door); W.40F (bedroom doors, hall bathroom door, walk-in closet door); W.41A (bedroom door, hallway door); W.41D (walk-in closet door); W.41L (bedroom door, coat closet door); W.42G (bedroom doors, coat closet door); W.43D (walk-in closet); W.46C (bedroom door); W.46F (bedroom doors, walk-in closet door); W.46H (bedroom doors, coat closet door, walk-in closet door); W.47A (bedroom doors, walk-in closet door); W.47B (bedroom doors, walk-in closet door); W.47C (bedroom doors, walk-in closet door, linen closet door); W.48B (bedroom doors, coat closet door, second bedroom closet door). Upon request of a tenant, JDS will remediate the terrace door opening in W.48B. For the remaining 702 units, JDS will inspect every door opening to and throughout each dwelling unit and will remediate every door opening so that the clearance is at least 31 5/8" to the extent that replacing the hinges with swing-clear hinges achieves compliance. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 170 | A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | At the bedroom doors in many units, the maneuvering space extends less than 18" beside the latch side of the door. | JDS will remediate a sufficient number of units, to the extent that re-swinging the bedroom door achieves compliance, such that 80% of the 761 units will be compliant. In other words, 609 dwelling units will have at least one bedroom with adequate maneuvering space. For the 59 units inspected by Plaintiff's expert, JDS will retrofit the following bedroom maneuvering spaces in the following units by re-swinging the door to create proper maneuvering space: E.3B (second bedroom); E.7E (second bedroom); E.27B (second bedroom); E.33D (only bedroom); E.41C (second bedroom); and W.41A (only bedroom). For the 59 units inspected by Plaintiff's expert, JDS will retrofit only the following bedroom maneuvering spaces by adjusting the closet walls and door frames: E. 28F (master bedroom) and E.41A (master bedroom and bedroom to right). |
| 171 | At least one of the electrical receptacles over an uninterrupted corner countertop must be within reach. Where court jurisdictions believe that the Design Manual is the same as the Fair Housing Accessibility Guidelines, the centerline of the outlet must be at least 36" from the corner. | In kitchens with corners, many have both outlets less than 27" from the corner. | JDS will remediate inaccessible above-corner-counter outlets in dwelling units below the 35th floor so that each unit has at least one accessible above-corner-counter outlet. For the 59 units inspected by Plaintiff's expert, JDS will retrofit above-corner-counter kitchen outlets in the following units: E.3B; E.20A; E.27B; E.28A; E.30B; E.35B; E.41; W.39A; W.38B. For the remaining 702 uninspected units that are below the 35th floor, JDS will inspect each above-corner-counter outlet and will retrofit those whose centerlines are not located at least 36" from the corner so that each unit has at least one accessible above-corner-counter kitchen outlet. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 172 | The centerline of the lowest electrical outlet must be at least 15" above the floor.  In a space, an outlet that is lower than 15" is permitted provided that a comparable outlet that performs the same function provided in the same area. | In the living/dining/kitchen area, there are floor-mounted outlets in an area where no accessible outlets are provided. | For the 59 units inspected by Plaintiff, JDS will add a wall-mounted outlet in the living/dining areas per drawings prepared by RRA and provided to Plaintiff's counsel on 2/1/21. Specifically, JDS will add a wall-mounted outlet in the following dwelling units: E.18C; E.28F; E.33D; E.36D; E. 40E; W.24C; W.30B; W.30C; W.46C: W.46H; W. 48B. For the remaining units, JDS will provide affirmative notice to tenants and prospective tenants that where the living/dining room area has only floor-mounted outlets, JDS will install a wall-mounted outlet in the same area where feasible. |
| 173 | **Subject to Plaintiff's approval following a video demonstration that shall occur within 45 days of the Effective Date, subject to unavoidable delays in the receipt of necessary materials, and the parties' good-faith efforts to make any necessary adjustments to the protocol, and with the understanding that JDS will have supplies on hand to implement within 10 days of any tenant's or prospective tenant's request, JDS will implement an agreed-upon kitchen conversion protocol to remediate the following items:** | | |
| 174 | At the work surface and the kitchen sink, the counter must be no higher than 34" or if requested when taking occupancy, it must be adjustable or replaceable within 10 days. | | |
| 175 | A 30"-wide accessible work surface must be provided in the kitchen counter that is no higher than 34".  It must have knee and toe space underneath.  A removable cabinet may be installed.  The surfaces underneath must be finished. | | |
| 176 | The kitchen sink must have a forward clear floor space.  It must be at least 30" by 48" and centered.  The knee space must be at least 27" high.  The toe space must extend to the faucet controls. | | |
| 177 | The kitchen sink has a parallel clear floor space.  It must be flush to the counter edge, at least 30" by 48", and centered. | | |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 178 | **Subject to Plaintiff's approval following a video demonstration that shall occur within 45 days of the Effective Date, subject to unavoidable delays in the receipt of necessary materials, and the parties' good-faith efforts to make any necessary adjustments to the protocol, and with the understanding that JDS will have supplies on hand to implement within 10 days of any tenant's or prospective tenant's request, JDS will implement an agreed-upon bathroom conversion protocol to remediate the following items:** | | |
| 179 | Lavatory requires a centered forward approach clear floor space.  The knee space must be at least 30" wide, at least 27" for a distance of at least 8" past the front ledge.  Toe space must be at least 9" high and extend at least 17" under the lavatory.  A removable cabinet may be installed. | | |
| 180 | The 30" by 48" parallel clear floor space must be centered on the lavatory. | | |
| 181 | The shower must have a 30" x 48" parallel clear floor space where the toes align with the control wall. | | |
| 182 | The opening to the roll-in shower must be as wide as the shower. | | |
| 183 | Clearance in front of the tub must be at least as long as the tub and at least 30" wide.  A lavatory with compliant knee and toe clearances may overlap the clear floor space at the control end. | | |
| 184 | The clear floor space at the toilet must be at least 60" wide and 56" deep.  The lavatory may overhang the toilet clear floor space to a point within 18" of the centerline of the toilet if knee and toe space is provided underneath the lavatory and the clear floor space is at least 66" deep.  Since the toe space must be at least 9" tall and extend to the wall, the side panel cannot extend to the floor. | | |
| 185 | **ONE-OFF REMEDIATIONS IN DWELLING UNITS: The following remediations need to be done only in the units identified below** | | |
| 186 | **Unit W.43D, Studio, 1-bath:** | | |
| 187 | Clearance between opposing counters, cabinets, appliances, and walls must be at least 40". | The clearance between the refrigerator and the only location available for the island is only 34". | Replace with new kitchen island with accessible dimensions. |

| | EXHIBIT A - American Copper Buildings Remediation Plan | | |
|---|---|---|---|
| 188 | **Unit W.47A, 1-bedroom, 1 1/2-bath:** | | |
| 189 | Reinforcement must be provided in the rear wall at the toilet.  On the rear wall, it must extend at least 12" to each side of the toilet centerline.  Preferably, it should extend to the corner or tub and at least 26" on the other side of the centerline.  If a sidewall is provided, it must be at least 24" long.  Preferably, it should extend from 10" from the rear wall to 56" from the rear wall. | The reinforcement in the sidewall is only 22 1/2" long. | Install fold-down grab bar upon request of tenant. |
| 190 | **Unit W.48B, 2-bedroom, 2 1/2-bath with Terrace:** | | |
| 191 | The centerline of the lowest electrical outlet must be at least 15" above the floor.  In a space, an outlet that is lower than 15" is permitted provided that a comparable outlet that performs the same function provided in the same area. | In the corner of the living room, there are floor-mounted outlets in an area where no accessible outlets are provided. | Install outlet on terrace divider. |
| 192 | **Unit W.48B, 2-bedroom, 2 1/2-bath with Terrace:** | | |
| 193 | Door clear opening must be at least 31 3/4". | The door to the terrace has a clear opening of only 29 1/2". | Remediate the inaccessible door opening upon request of tenant. |
| 194 | **Unit E.20A, 2-bedroom, 2-bath:** | | |
| 195 | The range must have a 30" by 48" clear floor space that is parallel and centered on the range. | It is 7" off-center. | Remediate upon request, based on plans agreed upon by the parties. |
| 196 | **Unit W.39H, Studio, 1-bath:** | | |
| 197 | The range must have a 30" by 48" clear floor space that is parallel and centered on the range. | It is 7" off-center. | Remediate upon request, per remediation plan described in Attachment 3 to this Exhibit. |



East Mailroom

About 11'-4" wide

May require losing 6 of the spare mailboxes

PROVIDE ACCESS DOOR IN WALL FOR ACCESS TO LIGHT BOX FOR MAINTENANCE. SEE ELEVATIONS (TYP.)

SIM

MAILROOM

48X24

44X26

44X26



3/8" Metal expansion plate

1 1/2" neoprene strips of varying thickness (3/8", 1/4", 1/8")

Cover carpet

Adhesive



Attachment 3

| KITCHEN SCHEDULE | |
|---|---|
| KITCHEN TYPE | COUNT |
| IH KITCHEN - IH-0S | 13 |
| IH KITCHEN - IH-1S | 96 |
| IH KITCHEN - IH-2L01 | 6 |
| IH KITCHEN - IH-2L02 | 3 |
| IH KITCHEN - IH-2L03 | 7 |
| IH KITCHEN - IH-2S | 25 |
| IH KITCHEN - IH-3S | 10 |
| MR KITCHEN - A1 | 60 (3) |
| MR KITCHEN - A2 | 158 |
| MR KITCHEN - A3 | 11 |
| MR KITCHEN - A4 | 33 (3) |
| MR KITCHEN - B1 | 30 (5) |
| MR KITCHEN - B2 | 72 |
| MR KITCHEN - B3 | 3 |
| MR KITCHEN - B4 | 41 (5) |
| MR KITCHEN - C1 | 122 |
| MR KITCHEN - C2 | 15 |
| MR KITCHEN - D1 | 36 |
| MR KITCHEN - D2 | 13 |
| MR KITCHEN - PH-C1 | 2 |
| MR KITCHEN - PH-D1 | 3 |
| MR KITCHEN - PH-D2 | 2 (2) |

Grand total: 761

REQUIRES BLOCKING FOR WALL MOUNTED INSTALLATION

REMOVABLE / REPLACEABLE UNITS FOR FUTURE H.C. USE; TYPICAL

KITCHEN KEY 1/2" = 1'-0"

C2 NORTH ELEVATION 1/2" = 1'-0"
C2 PLAN 1/2" = 1'-0"
B2 SOUTH ELEVATION
B2 EAST ELEVATION
C1 PLAN
B1 EAST ELEVATION (UFAS COMPLIANT) 1/2" = 1'-0"
THE CABINET BELOW THE SINK WAS DESIGNED TO BE REMOVED TO PROVIDE CLEAR FLOOR SPACE FOR THE SINK AND THE RANGE.
B1 SOUTH ELEVATION (UFAS COMPLIANT) 1/2" = 1'-0"
B1 PLAN (UFAS COMPLIANT) 1/2" = 1'-0"
THE CABINET BELOW THE SINK WAS DESIGNED TO BE REMOVED TO PROVIDE CLEAR FLOOR SPACE FOR THE SINK AND THE RANGE.
A2 PLAN 1/2" = 1'-0"
A1 ELEVATION NORTH (UFAS COMPLIANT) 1/2" = 1'-0"
A1 PLAN (UFAS COMPLIANT) 1/2" = 1'-0"

C1 NORTH ELEVATION 1/2" = 1'-0"
Unit W39H (39-N)
B2 PLAN 1/2" = 1'-0"
A2 NORTH ELEVATION 1/2" = 1'-0"

DEVELOPER: JDS DEVELOPMENT GROUP

ARCHITECT: SHOP ARCHITECTS, P.C.

MEP ENGINEER: BURO HAPPOLD

STRUCTURAL ENGINEER: WSP CANTOR SEINUK

LANDSCAPE ARCHITECT: SCAPE/LANDSCAPE ARCHITECTURE PLLC

CIVIL ENGINEER: AKRF

GEOTECHNICAL ENGINEERS: RA CONSULTANTS LLC

CODE CONSULTANT: METROPOLIS GROUP INC.

ELEVATION CONSULTANT: VDA

SITE DIAGRAM

# 626 1ST AVENUE

626 1ST AVENUE
NEW YORK, NY 10016

SKI-053 / A

DRAWING TITLE: KITCHEN PLANS AND ELEVATIONS - MR UNITS

SEAL & SIGNATURE

| | |
|---|---|
| DATE | 08/01/13 |
| PROJECT NO. | 130204 |
| DRAWN BY | Author |
| CHECKED BY | Checker |
| DOB NO. | |

DRAWING NUMBER: A-600.00

SHEET XX OF XX

8/14/2015 1:25:53 PM

Attachment 3

| KITCHEN SCHEDULE | |
|---|---|
| KITCHEN TYPE | COUNT |
| IH KITCHEN - IH-0S | 13 |
| IH KITCHEN - IH-1S | 96 |
| IH KITCHEN - IH-2L01 | 6 |
| IH KITCHEN - IH-2L02 | 3 |
| IH KITCHEN - IH-2L03 | 7 |
| IH KITCHEN - IH-2S | 25 |
| IH KITCHEN - IH-3S | 10 |
| MR KITCHEN - A1 | 60 (3) |
| MR KITCHEN - A2 | 158 |
| MR KITCHEN - A3 | 11 |
| MR KITCHEN - A4 | 33 (3) |
| MR KITCHEN - B1 | 30 (5) |
| MR KITCHEN - B2 | 72 |
| MR KITCHEN - B3 | 3 |
| MR KITCHEN - B4 | 41 (5) |
| MR KITCHEN - C1 | 122 |
| MR KITCHEN - C2 | 15 |
| MR KITCHEN - D1 | 36 |
| MR KITCHEN - D2 | 13 |
| MR KITCHEN - PH-C1 | 2 |
| MR KITCHEN - PH-D1 | 3 |
| MR KITCHEN - PH-D2 | 2 |

Grand total: 761

REQUIRES BLOCKING FOR WALL MOUNTED INSTALLATION

REMOVABLE / REPLACEABLE UNITS FOR FUTURE H.C. USE; TYPICAL

KITCHEN KEY 1/2" = 1'-0"

BLOCKING AS NEEDED FOR ALL UPPER CABINETS
WD-104
MT-102
EQ-112
PT-103
EQ-124
EQ-101
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYP.
WB-108

11 B4 SOUTH ELEVATION 1/2" = 1'-0"

BLOCKING AS NEEDED FOR ALL UPPER CABINETS
MILLWORKER TO COORDINATE W/ MANUFACTURER SPECS.
HIDDEN DRAWER WITHIN CABINET
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYP.
WD-104
PT-103
EQ-103
PT-105
MT-102
WB-108

10 B4 EAST ELEVATION 1/2" = 1'-0"

EQ-103
PB-102
PB-119
PB-103
EQ-120
ST-102
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYP.
NOTE: FOR ABOVE COUNTER OUTLET LOCATIONS AND HEIGHT, SEE REFERENCED BACKSPLASH DETAILS

9 B4 PLAN 1/2" = 1'-0"

Unit E20A (20-R)

WD-104
PT-302
MT-102
WALL MOUNTED SHELF
EQ-123
EQ-102
BLOCKING AS NEEDED FOR ALL UPPER AND TALL CABINETS
THE CABINET BELOW THE SINK WAS DESIGNED TO BE REMOVED TO PROVIDE CLEAR FLOOR SPACE FOR THE SINK.
MILLWORKER TO COORDINATE W/ MANUFACTURER SPECS
THE CABINET ADJACENT TO THE SINK WAS DESIGNED TO BE REMOVED TO PROVIDE CLEAR FLOOR SPACE FOR THE RANGE.
HIDDEN DRAWER WITHIN CABINET
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYPICAL
WB-108

8 D2 WEST ELEVATION (UFAS COMPLIANT) 1/2" = 1'-0"

BLOCKING AS NEEDED FOR ALL UPPER CABINETS
PT-105
PT-103
EQ-104
WD-104
MT-102
EQ-113
MILLWORKER TO COORDINATE W/ MANUFACTURER SPECS
EQ-111
WB-108

7 D2 SOUTH ELEVATION (UFAS COMPLIANT) 1/2" = 1'-0"

EQ-102
EQ-123
PB-103
PB-119
PB-102
ST-102
THE CABINET BELOW THE SINK WAS DESIGNED TO BE REMOVED TO PROVIDE CLEAR FLOOR SPACE FOR THE SINK.
THE CABINET ADJACENT TO THE SINK WAS DESIGNED TO BE REMOVED TO PROVIDE CLEAR FLOOR SPACE FOR THE RANGE.
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYP.
NOTE: FOR ABOVE COUNTER OUTLET LOCATIONS AND HEIGHT, SEE REFERENCED BACKSPLASH DETAILS
EQ-107
EQ-104

6 D2 PLAN (UFAS COMPLIANT) 1/2" = 1'-0"

BLOCKING AS NEEDED FOR AL UPPER AND TALL CABINETS
WD-104
PT-103
MT-102
EQ-123
EQ-102
MILLWORKER TO COORDINATE W/ MANUFACTURER SPECS.
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYPICAL
WB-108

5 B3 NORTH ELEVATION (UFAS COMPLIANT) 1/2" = 1'-0"

BLOCKING AS NEEDED FOR ALL UPPER CABINETS
PT-105
PT-103
EQ-103
WD-104
EQ-112
MT-102
WALL MOUNTED SHELF
MILLWORKER TO COORDINATE W/ MANUFACTURER SPECS.
EQ-110
WB-108
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYP.
HIDDEN DRAWER WITHIN CABINET

4 B3 WEST ELEVATION (UFAS COMPLIANT) 1/2" = 1'-0"

NOTE: FOR ABOVE COUNTER OUTLET LOCATIONS AND HEIGHT, SEE REFERENCED BACKSPLASH DETAILS
ST-102
PB-103
PB-119
PB-102
EQ-102
EQ-123
EQ-122
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYP.
EQ-103

3 B3 PLAN (UFAS COMPLIANT) 1/2" = 1'-0"

BLOCKING AS NEEDED FOR ALL UPPER AND TALL CABINETS
WD-104
PT-103
EQ-103
PT-105
EQ-112
MT-102
WALL MOUNTED SHELF
EQ-123
EQ-102
MILLWORKER TO COORDINATE W/ MANUFACTURER SPECS.
EQ-110
WB-108
HIDDEN DRAWER WITHIN CABINET
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYP.

2 A3 NORTH ELEVATION (UFAS COMPLIANT) 1/2" = 1'-0"

NOTE: FOR ABOVE COUNTER OUTLET LOCATIONS AND HEIGHT, SEE REFERENCED BACKSPLASH DETAILS
EQ-103
EQ-122
ST-102
PB-102
PB-103
PB-119
EQ-102
EQ-123
REMOVABLE 30" BASE CABINETS & REPLACEABLE COUNTERTOP FOR FUTURE H.C. USE, TYP.

1 A3 PLAN (UFAS COMPLIANT) 1/2" = 1'-0"

JDS DEVELOPMENT GROUP — DEVELOPER
SHoP — ARCHITECT
Buro Happold — MEP ENGINEER
WSP — STRUCTURAL ENGINEER
SCAPE / LANDSCAPE ARCHITECTURE PLLC — LANDSCAPE ARCHITECT
AKRF — CIVIL ENGINEER
RA CONSULTANTS LLC Geotechnical Engineering — GEOTECHNICAL ENGINEERS
METROPOLIS — CODE CONSULTANT
vda — ELEVATOR CONSULTANT

SITE DIAGRAM: 36TH STREET, 35TH STREET, 1ST AVENUE, FDR

BULLETIN 5
BULLETIN 3
BULLETIN 2
REVISION

# 626 1ST AVENUE

626 1ST AVENUE
NEW YORK, NY 10016

SKI-053 / B

DRAWING TITLE: KITCHEN PLANS AND ELEVATIONS - MR UNITS

| | |
|---|---|
| SEAL & SIGNATURE | |
| DATE | 05/15/14 |
| PROJECT NO. | 130204 |
| DRAWN BY | Author |
| CHECKED BY | Checker |
| DOB NO. | |
| DRAWING NUMBER | A-602.00 |

SHEET XX OF XX

4/17/2015 4:39:11 PM

# EXHIBIT B

**EXHIBIT B – FORM OF NOTICE TO RESIDENTS OF
THE AMERICAN COPPER BUILDINGS**

Dear Residents:

Building management has been in the process of evaluating whether certain changes should be made to make the American Copper Buildings even more accessible to tenants and guests with disabilities.  You may have noticed that various changes have recently been made or are underway in the common areas of the buildings.

We either already have inspected, or in the coming weeks will inspect, the door thresholds in your unit to determine whether any changes to those thresholds should be made.  In addition, you may have the option, but not the obligation, to have some or all of the following additional changes made in your unit at no cost to you:

> **Privacy Latches:**  In all units, privacy latches can be placed or moved so that they are located between 34" and 48" above the floor.

> **Door Openings**: For some apartments, one or more door openings (including without limitation bedroom doors, non-pocket bathroom doors, and walk-in closet doors) can be adjusted to provide a clear opening of at least 31 3/8" by replacing the door hinges with swing-clear hinges.

> **Bedroom Maneuvering Space:**  In some units, the bedroom door can be re-swung so that it opens in the opposite direction to provide for improved maneuvering space within the bedroom.

> **Kitchen Electrical Outlets:**  In some units, an above- counter kitchen outlet can be moved so that the centerline of the outlet is at least 36" inches from the corner.

> **Living/Dining Room Electrical Outlets:**  In some units, a wall-mounted outlet can be installed to provide an alternative to floor-mounted outlets.

In offering tenants the option of making certain changes to their units for accessibility purposes, we are attempting to balance, on the one hand, the desire to make certain changes available to tenants at no cost to them with, on the other hand, the desire not to disrupt tenants who do not want the changes.  It is entirely up to you whether to ask us to make any of the changes for which you may be eligible (other than changes to door thresholds, which will be made at a convenient time in all units that need them).

Please review the list of potentially available changes above, and if you would like any available changes to be made in your apartment, **you must notify the management office in writing (or by BuildingLink) no later than forty-five (45) days from today**, and we will confirm which changes may be available for your unit.  Once again, the cost of making these changes will be paid by management and will not result in an increase in your rent.

If you have any questions about the above, please let us know.

# EXHIBIT C

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| | **ELEMENT** | **CONDITION** | **REMEDIATION PLAN** |
| 1 | **Common Use, General:** | | |
| 2 | Where the reach range is unobstructed, operable parts on electrical switches must be within 48" of the floor. | Large rocker switches are specified.  That means the top portion will be out of reach if the switch is centered 48" above the floor. | Move rocker switches to locations where top is at or below 48". |
| 3 | Where the elevator door is centered, the finished dimensions must be at least 80" wide and 51" deep.  Where the door is to one side, the finished dimensions must be at least 68" wide and 51 deep. | The door is to one side and the finished dimensions are only 50" by 76 3/4". | Remove wall paneling or sub-paneling inside elevator cab so that there is 51" depth remaining. |
| 4 | **Trash Rooms:** | | |
| 5 | The control for the trash chute intake door must be openable with no more than 5-pounds force. | In all the trash rooms, the control on the trash chute intake door requires 6 to 7 pounds force. | Adjust or replace on each trash chute a closing mechanism with control that requires only 5 lbs force to operate. |
| 6 | **Laundry Room:** | | |
| 7 | Operable parts must be within reach.  A side reach is required.  There is no obstruction.  Therefore, it must be between 9" and 54" above the floor. | The card slot on the SEBCO card payment kiosk is 56 3/4" above the floor. | Move card slot so that it is a maximum of 48" above the floor, or replace kiosk with accessible machine. Alternatively, instead of making the area accessible, Werber may decide to permanently prohibit use of the common area laundry machine by all tenants. |
| 8 | Operable parts must be within reach.  A side reach over an obstruction is required.  If the obstruction is no more than 34" tall and no more than 24" deep, then the operable part must be within 46" of the floor.  If the obstruction is more than 34" tall, then the operable part must be within 10" of the front edge and must be within 48" of the floor. | The washer and dryer are 35 1/2" tall.  The controls are on the back panel, more than 10" from the front edge. | Replace with accessible machines. Alternatively, instead of making the area accessible, Werber may decide to permanently prohibit use of the common area laundry machine by all tenants. |
| 9 | **Residential Storage:** | | |
| 10 | The pull side of the door requires a forward approach.  Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | At the room entrance door, the maneuvering space extends only 16" beside the latch side of the door. | If permitted by the fire code, re-swing the door in opposite direction. If not permitted by fire code, install an automatic door operator. |

| EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|
| 11 | The top of the threshold cannot be more than 1/2" above the landing on both sides.  If it is taller than 1/4", it must be beveled 1:2. | At the cages, the top is 1 1/4" above the landing and are not beveled. | Threshold must be beveled 1:2 if higher than 1/4". Werber may achieve this by pounding the threshold flat or by cutting out the excess height. Alternatively, Werber may choose to replace the storage cage with another type that has a compliant threshold. |
| 12 | **First Floor:** | | |
| 13 | For mailboxes for residential units that have mobility features, the operable parts may not be mounted any higher than 54". The USPS does not permit mailboxes to have operable parts below 28" and the floor of parcel boxes to be below 15". | The highest operable part is about 63 3/4" above the ground. | Adjust the mailboxes so that they are compliant, pursuant to specifications to be agreed-upon by the parties unless no plan is feasible. |
| 14 | The pull side of the door requires a forward approach. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | At the corridor door that separates the elevator from the fitness room, the maneuvering space extends only 17" beside the latch side of the door. | Re-swing the door in opposite direction or install automatic door opener. |
| 15 | **Exterior Seating Area Near Back Entrance:** | | |
| 16 | Ramps must have handrails on both sides. | The ramp between the building entrance and the seating area does not have a handrail on the wall side. | Install hand rail on the wall side of the ramp. Alternatively, Werber may decide to permanently remove all seating from the exterior area and not provide any seating to tenants in this area. |
| 17 | Ramp handrails must extend at least 12" over the landings. The extensions must be parallel to the landing.  Therefore, any bend at the end of the handrail is not part of the 12" level extension. | The handrails extend only 8" over the top landing and is missing at the bottom landing. | Install handrails so that they extend at least 12" over both landings. Alternatively, Werber may decide to permanently remove all seating from the exterior area and not provide any seating to tenants in this area. |
| 18 | Ramp landings cannot slope more than 2% in either direction. | The landing on the curved portion of the ramp slopes 3.6%. | Install accessible ramp. Alternatively, Werber may decide to permanently remove all seating from the exterior area and not provide any seating to tenants in this area. |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 19 | Accessible route cannot slope more than 8.33%. It cannot slope more than 5% without being constructed as a ramp. | At the top run, the slope is 12.6%. | Install accessible ramp. Alternatively, Werber may decide to permanently remove all seating from the exterior area and not provide any seating to tenants in this area. |
| 20 | Courtyard: | | |
| 21 | The top of the threshold cannot be more than 1/2" above the landing on both sides. If it is taller than 1/4", it must be beveled 1:2. | At the door to the Courtyard, the top is 3/4" above the floor and landing. | Threshold at door to Courtyard must be beveled 1:2. Reinstall the flooring at the threshold to 1/2" maximum below the top of the threshold. Slope no more than 2% to the existing flooring. (The exterior side cannot be fixed without replacing the entire door assembly.) Werber may choose to alter or adjust the door however it likes, but the threshold height requirement (no more than 3/4") and the requirement that it be beveled properly at 1:2 if higher than 1/4" will not change based on any door adjustment. |
| 22 | Pantry near Courtyard: | | |
| 23 | Where common use sinks are provided in an accessible room or space, at least 5% must be accessible. | There is a common use sink. It does not have accessible features. | Replace sink with accessible one. Alternatively, Werber may choose to permanently remove all pantry items so that the area is for seating only. |
| 24 | The faucet on a common use sink is considered an operable part and must be within reach. A side reach over a cabinet that is no more than 34" tall may be used if the faucet is within 24" of the front edge. The operable parts must be within 46" of the floor. | The counter is 36 3/4" tall. Therefore, the faucet is out of reach. | Replace sink with accessible one. Alternatively, Werber may choose to permanently remove all pantry items so that the area is for seating only. |
| 25 | Fitness Room: | | |
| 26 | Operable parts must be within reach. A side reach without an obstruction is possible. Therefore, the operable part must be within 54" of the floor. | The hand sanitizer is 57" above the ground. | Move the hand sanitizer so that it is maximum 54" above the floor. |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 27 | Accessible route must be at least 36" wide. Accessible route may narrow to 32" for a distance of no more than 24". | Parts of the accessible route to each type of fitness equipment narrow to less than 36" wide for a distance of more than 24". | Rearrange the equipment such that there is an accessible route to at least one of each type of equipment. Werber may remove furniture and/or equipment to accommodate the need for additional space, so long as it does not remove all furniture from this area. |
| 28 | **Restroom near Fitness Room:** | | |
| 29 | The door hardware must be operable without tight grasping, tight pinching, or twisting of the wrist. | The door lock requires tight grasping to operate. | Provide an accessible lock that does not require tight grasping to operate. (It could be a surface mounted lock.) |
| 30 | Where mirrors are provided, at least one shall have the bottom of the reflective edge within 40" of the floor. | The reflective surface of the mirror is mounted 40 3/4" above the floor. | Move the mirror so that the bottom of the reflective surface is mounted maximum 40" above the floor. |
| 31 | Pipes under the lavatory or sink must be insulated to protect a person from burns and from sharp or abrasive edges. | The pipes under the accessible lavatory are not insulated. | Insulate the pipes under the sink. |
| 32 | Grab bars must be on the rear wall and on the sidewall nearest the toilet. | There are no grab bars. | Add grab bars on the rear wall and the sidewall nearest the toilet so that the following are accomplished: the top of the grab bar shall be mounted between 33" and 36" above the floor; the side grab bar shall be at least 42" long; the rear end shall be no farther than 12" from the rear wall; and the front end shall be at least 54" from the rear wall. The rear grab bar shall be at least 36" long. From the centerline of the toilet, it shall extend at least 12" to the sidewall and at least 24" to the open side. |
| 33 | Centerline of toilet must be 18" from sidewall. | The centerline is 15" from the sidewall. | Move toilet or wall so that the centerline is 16" - 18" from the sidewall. |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 34 | The toilet flush control must be on the open side of the toilet. | The toilet flush control is on the wall side. | Replace with toilet that has flush control on the open side of the toilet.  Alternatively, Werber may install the following dual-flush toilet: https://www.build.com/duravit-219601-l-dual/s1666583?uid=3938596 |
| 35 | The centerline of the toilet paper dispenser must be 7" to 9" in front of the toilet. | It is 16" in front of the toilet. | Move the toilet paper dispenser so that the centerline of it is 7" to 9" from the front of the toilet. |
| 36 | **Roof:** | | |
| 37 | Operable parts must be within reach.  A side reach over an obstruction is required.  If the obstruction is no more than 34" tall and no more than 24" deep, then the operable part must be within 46" of the floor.  If the obstruction is more than 34" tall, then the operable part must be within 10" of the front edge and must be within 54" of the floor. | The outdoor grill is set in a counter that is 35 1/2 high.  The grill has a lid.  When open the lid handle is 58 1/2" from the front edge and 17" above the ground. | Retrofit the lid with an accessible handle retrofit kit. The following retrofit kit is acceptable: https://aokitchens.com/product/lynx-ada-handle-kit-for-gas-grills-lx-adakit. |
| 38 | Where common use sinks are provided in an accessible room or space, at least 5% must be accessible. | There is a common use sink.  It does not have accessible features. | Replace with an accessible sink. Alternatively, Werber may re-install the existing sink so that it is no higher than 34". |
| 39 | The faucet on a common use sink is considered an operable part and must be within reach.  A side reach over a cabinet that is no more than 34" tall may be used if the faucet is within 24" of the front edge.  The operable parts must be within 46" of the floor. | The counter is 35 1/2" tall.  Therefore, the faucet is out of reach. | Replace with an accessible sink. Alternatively, Werber may re-install the existing sink so that it is no higher than 34". |
| 40 | Seating is provided at tables.  A compliant wheelchair space must provide clear floor space under the table that is at least 30" wide, 27" high for a depth of 8", and 17" deep at a height of 9". | The knee space is 25 3/4" high. | Replace seating and/or tables so that there is clear floor space under the table at least 30" side, 27" for a depth of 8", and 17" deep at a height of 9". |
| 41 | **Dwelling Units, General: The following barriers to access exist in all units inspected by Plaintiff's expert, and must be remediated in every unit in the** | | |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 42 | Where the top of the threshold is more than 1/4" above the landing, the transition must be beveled at least 1:2. | The entry door threshold is more than 1/4" tall. The bevel is only 1:1. | The threshold must be beveled at least 1:2. Werber may change the threshold material **or type**, so long as the threshold is no higher than 3/4" and the threshold is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 43 | Door clear openings must be at least 31 5/8". | Swinging doors to bedrooms, walk-in closets, and bathrooms have clear opening of 31". | Door hinges will be replaced with swing-clear hinges or by installing a wider door and frame to create accessible door openings. |
| 44 | Operable parts on the thermostat must be within 54" of the floor. | The operable parts are mounted 60" - 61 3/4" above the floor | Move the thermostats so that the operable parts are no higher than 54" inches above the floor. Alternatively, Werber may install smart devices to control the thermostat, so long as no additional cost is incurred by a tenant who opts to use the smart device. |
| 45 | The kitchen sink must have a forward clear floor space. It must be at least 30" by 48" and centered. The knee space must be at least 27" high. The toe space must extend to the faucet controls. | The sink base cabinet is not removable. The sink is too deep to permit compliant knee space. The pipes and the garbage disposal are not insulated. | Subject to Plaintiff's approval following a video demonstration that shall occur within 30 days of the Effective Date and the parties' good-faith efforts to make any necessary adjustments to the protocol, and with the understanding that Werber will have supplies on hand to implement within 10 days of any tenant's or prospective tenant's request, Werber will implement an agreed-upon kitchen conversion protocol. |
| 46 | A 30"-wide accessible work surface must be provided in the kitchen counter that is no higher than 34". It must have knee and toe space underneath. A removable cabinet may be installed. | It is not provided. | Werber will have on hand three (3) units of the Regency foldable table the parties have agreed upon for implementation in a dwelling unit within 10 days of a tenant's request. Werber will shorten legs and add wheels to the table to preserve compliant counter height. |

| EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|
| 47 | All bathrooms shall be provided for the future installation of grab bars and shower seats at toilets, bathtubs, and showers.  Reinforcement should extend 2" beyond mounting locations. | No evidence that reinforcement was installed at all required locations. | Install fold-down grab bar only upon tenant's or prospective tenant's request. |
| 48 | Lavatory requires a centered forward approach clear floor space.  The knee space must be at least 30" wide, at least 27" for a distance of at least 8" past the front ledge.  Toe space must be at least 9" high and extend at least 17" under the lavatory.  A removable cabinet may be installed. | In the bathroom that must comply, the cabinet is not removable. | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |
| 49 | **Unit 1A, 2 stories, 1-bedroom, 2-bath: (This is the only unit of this type)** | | |
| 50 | In the dwelling unit, the swinging terrace door threshold cannot be taller than 3/4" on the inside.  When taller than 1/4" it must be beveled 1:2. | The terrace door threshold is 1" tall. | The threshold must be beveled at least 1:2.  Slope the subfloor so that the top of the threshold is no more than 3/4" above the finish floor. Install a 1:2 bevel strip. Werber may adjust the door and/or use a different threshold material or type, so long as the threshold is no higher than 3/4" and is beveled properly at 1:2 if the threshold height is greater than 1/4". |
| 51 | Clearance between opposing counters, cabinets, appliances, and walls must be at least 40". | The clearance between the counter and the oven is only 38 1/2". | Replace or modify oven so that it is flush with the face of the cabinets. |
| 52 | **Unit 1B, 2 stories, 1-bedroom, 1 1/2-bath: (This is the only unit of this type)** | | |
| 53 | Inside the unit, the primary entrance door requires a forward approach.  Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | The maneuvering space extends only 14 3/4" to the side. | Provide an automatic door operator that can be operated from inside the apartment. Alternatively, Werber will offer installation of the automatic door opener to any current tenant. If the tenant does not elect to have the automatic door opener installed, then Werber shall post a notice in a visible location in the unit that states clearly that an automatic door opener will be installed upon request and at no additional cost to the future tenant. |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 54 | In the dwelling unit, the swinging terrace door threshold cannot be taller than 3/4" on the inside.  When taller than 1/4" it must be beveled 1:2. | The terrace door threshold is 1" tall. | The threshold must be beveled at least 1:2 Slope the subfloor so that the top of the threshold is no more than 3/4" above the finish floor. Install a 1:2 bevel strip. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 55 | If the closet is deeper than 24", the closet door is intended for user passage.  It must provide at least 31 5/8" clear opening. | The coat closet is 35" deep and the clear opening of the door is only 25". | To the extent the closet's interior width is 38" or wider, widen the door opening so that the clear opening is at least 31 5/8". |
| 56 | A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | At the bedroom door, the maneuvering space extends only about 5" beside the latch side. | Re-swing the door to open in the other direction. |
| 57 | At least one of the electrical receptacles over an uninterrupted corner countertop must be within reach. Where court jurisdictions believe that the Design Manual is the same as the Fair Housing Accessibility Guidelines, the centerline of the outlet must be at least 36" from the corner. | In the corner between the sink and range, no outlet is more than 25" from the corner. | Move the above-counter outlet so that its centerline is at least 36" from the corner. |
| 58 | Toilet centerline must be at least 15" from the side of the lavatory counter and must be at least 18" from the sidewall or tub.  There must be at least 33" between the sidewall and the side of the lavatory. | It is 14" from the lavatory counter and 17" from the sidewall for a total of only 31". | Move the toilet and lavatory in the full bathroom with a bathtub so that the toilet's centerline is at least 15" from the side of the lavatory counter, at least 18" from the sidewall, for a total of at least 33" between the sidewall and the side of the lavatory. |
| 59 | Unit 1C, 1-bedroom, 1-bath: (This is the only unit of this type.) | | |
| 60 | A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | Inside the bedroom, the maneuvering space extends only about 5" beside the latch side of the door. | Re-swing the door in opposite direction. |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 61 | Clear floor space for the lavatory must be at least 30" by 48".  If parallel to the lavatory, it must be centered.  If forward, knee and toe space must be provided under the lavatory. | The parallel clear floor space for the lavatory is off-center by 2 1/2".  A forward approach is blocked by a vanity. | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |
| 62 | Toilet centerline must be at least 18" from the sidewall or tub. | It is 15 3/4" from the wall. | Move toilet so that the centerline is at least 18" from the sidewall. |
| 63 | **Unit 2A, 2-bedroom, 2-bath: (There are 9 units of this type: 2A, 3A, 4A, 5A, 6A, 7A, 8A, 9A, 10A** | | |
| 64 | Inside thresholds cannot be taller than 1/2".  Where the top of the threshold is more than 1/4" above the landing, the transition must be beveled at least 1:2. | The entry door threshold is 3/4" tall. | Slope the subfloor so that the top of the threshold is no more than 1/2" above the finish floor.  Bevel the edges 1:2. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 65 | Clearance between opposing counters, cabinets, appliances, and walls must be at least 40". | The clearance between the counter and the oven is only about 38 1/2". | Replace oven with a model that is flush with the face of the cabinets. |
| 66 | The shower must have a 30" x 48" parallel clear floor space where the toes align with the control wall. | Clear floor space is blocked by a vanity cabinet. | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |
| 67 | **Unit 2B, 1-bedroom, 1-bath: (There are 9 units of this type: 2B, 3B, 4B, 5B, 6B, 7B, 8B, 9B, 10B.)** | | |
| 68 | In the dwelling unit, the impervious balcony surface may be up to 4" below the finish floor and 4 3/4" below the top of the threshold. | At the balcony, it is 5 1/2" below the top of the threshold. | On the outside, add 3/4" of height to the balcony surface, which could probably done with tile. Then, raise the guardrail 3/4" for liability reasons.  Alternatively, install a custom door and threshold. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 69 | Clearance between opposing counters, cabinets, appliances, and walls must be at least 40". | The clearance between the counter and the oven is only 38 1/2". | Replace oven with a model that is flush with the face of the cabinets. |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 70 | A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | Inside the bathroom, the maneuvering space extends only about 4" beside the latch side of the door. | Re-swing the door in opposite direction. |
| 71 | Unit 2C, 1-bedroom, 1-bath: (There are 4 units of this type: 2C, 3C, 4C, 5C.) | | |
| 72 | A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | Inside the bathroom and the bedroom, the maneuvering spaces extend only about 5" beside the latch side of the door. | Re-swing bathroom and bedroom doors in the opposite direction. |
| 73 | Unit 2D, 1-bedroom, 1-bath: (There are 4 units of this type: 2D, 3D, 4D, 5D.) | | |
| 74 | A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | Inside the bedroom, the maneuvering space extends only about 5" beside the latch side of the door. | Re-swing the bedroom door in the opposite direction. |
| 75 | Toilet centerline must be at least 15" from the side of the lavatory counter and must be at least 18" from the sidewall or tub. There must be at least 33" between the sidewall and the side of the lavatory. | It is 14" from the lavatory counter and 17 1/2" from the wall for a total of 31 1/2". | Move the toilet and lavatory so that the toilet centerline is at least 15" from the side of the lavatory counter, at least 18" from the sidewall, for a total of at least 33" between the sidewall and the side of the lavatory |
| 76 | Unit 2E, 1-bedroom, 1-bath: (There are 3 units of this type: 2E, 3E, 4E.) | | |
| 77 | If the closet is deeper than 24", the closet door is intended for user passage. It must provide at least 31 5/8" clear opening. | The walk-in closet is 39" deep and the clear opening of the door is only about 27". | To the extent the closet's interior width is 38" or wider, widen the door opening so that the clear opening is at least 31 5/8". |
| 78 | Unit 2F, 2-bedroom, 2-bath: (There are 3 units of this type: 2F, 3F, 4F.) | | |
| 79 | A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | Inside the bedrooms, the maneuvering spaces extend only about 5" beside the latch side of the door. | Re-swing the bedroom doors in the opposite direction. |

| EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|
| 80 | At least one of the electrical receptacles over an uninterrupted corner countertop must be within reach. Where court jurisdictions believe that the Design Manual is the same as the Fair Housing Accessibility Guidelines, the centerline of the outlet must be at least 36" from the corner. | In the corner between the refrigerator and range, no outlet is more than 25" from the corner. | Move the above-counter outlet so that its centerline is at least 36" from the corner. |
| 81 | Clear floor space for the lavatory must be at least 30" by 48". If parallel to the lavatory, it must be centered. If forward, knee and toe space must be provided under the lavatory. | In the Master Bath, the parallel clear floor space for the lavatory is off-center by 8 3/4". A forward approach is blocked by a vanity. | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |
| 82 | Lavatory requires a centered forward approach clear floor space. The knee space must be at least 30" wide, at least 27" for a distance of at least 8" past the front ledge. Toe space must be at least 9" high and extend at least 17" under the lavatory. A removable cabinet may be installed. | In both bathrooms, the cabinet is not removable. | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |
| 83 | **Unit 5B, 1-bedroom, 1-bath: (This unit is the same as Unit 2B.)** | | |
| 84 | Inside thresholds cannot be taller than 1/2". Where the top of the threshold is more than 1/4" above the landing, the transition must be beveled at least 1:2. | The entry door threshold is about 3/4" tall. | Slope the subfloor so that the top of the threshold is no more than 1/2" above the finish floor. Bevel the edges 1:2. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 85 | If the closet is deeper than 24", the closet door is intended for user passage. It must provide at least 31 5/8" clear opening. | The walk-in closet is about 39" deep and the clear opening of the door is only about 27". | To the extent the closet's interior width is 38" or wider, widen the door opening so that the clear opening is at least 31 5/8". |
| 86 | The centerline of the lowest electrical outlet must be at least 15" above the floor. | On the terrace, the centerline of the lowest outlet is only 8". | Move the lowest electrical outlet on the terrace so that it is at least 15" above the floor. |
| 87 | **Unit 5E, 3-bedroom, 2-bath: (This is the only unit of this type.)** | | |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 88 | Inside thresholds cannot be taller than 1/2". Where the top of the threshold is more than 1/4" above the landing, the transition must be beveled at least 1:2. | The entry door threshold is 1" tall. | Slope the subfloor so that the top of the threshold is no more than 1/2" above the finish floor. Bevel the edges 1:2. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 89 | In the dwelling unit, the swinging terrace door threshold cannot be taller than 3/4" on the inside. When taller than 1/4" it must be beveled 1:2. | The terrace door thresholds are about 1" tall. | The threshold must be beveled at least 1:2. Slope the subfloor so that the top of the threshold is no more than 3/4" above the finish floor. Install a 1:2 bevel strip. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 90 | If the closet is deeper than 24", the closet door is intended for user passage. It must provide at least 31 5/8" clear opening. | The coat closet is 30" deep and the clear opening of the door is only 25". | To the extent the closet's interior width is 38" or wider, widen the door opening so that the clear opening is at least 31 5/8". |
| 91 | A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | Inside the bedrooms, the maneuvering space extends only about 5" beside the latch side of the door. | Re-swing the bedroom doors in the opposite direction. |
| 92 | The centerline of the lowest electrical outlet must be at least 15" above the floor. | On the terrace, the centerline of the lowest outlet is only 10 1/5". | Move the lowest electrical outlet on the terrace so that it is at least 15" above the floor. |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 93 | Clear floor space at the kitchen sink must be at least 30" by 48" and centered. | It is off center by 2". | Subject to Plaintiff's approval following a video demonstration that shall occur within 30 days of the Effective Date and the parties' good-faith efforts to make any necessary adjustments to the protocol, and with the understanding that Werber will have supplies on hand to implement within 10 days of any tenant's or prospective tenant's request, Werber will implement an agreed-upon kitchen conversion protocol. |
| 94 | At least one of the electrical receptacles over an uninterrupted corner countertop must be within reach. Where court jurisdictions believe that the Design Manual is the same as the Fair Housing Accessibility Guidelines, the centerline of the outlet must be at least 36" from the corner. | In the corner between the refrigerator and range, no outlet is more than 25" from the corner. | Move the above-counter outlet so that its centerline is at least 36" from the corner. |
| 95 | Clear floor space for the lavatory must be at least 30" by 48".  If parallel to the lavatory, it must be centered.  If forward, knee and toe space must be provided under the lavatory. | In the Master Bath, the parallel clear floor space for the lavatory is off-center by 2".  A forward approach is blocked by a vanity. | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |
| 96 | The shower must have a 30" x 48" parallel clear floor space where the toes align with the control wall. | In the Master Bath, the vanity blocks the clear floor space to the shower. | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |
| 97 | **Unit 6C, 1-bedroom, 1-bath: (This is the only unit of this type.)** | | |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 98 | Inside the unit, the primary entrance door requires a forward approach.  Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | The maneuvering space extends only 16 1/4" to the side. | Provide an automatic door operator that can be operated from inside the apartment. Alternatively, Werber will offer installation of the automatic door opener to any current tenant. If the tenant does not elect to have the automatic door opener installed, then Werber shall post a notice in a visible location in the unit that states clearly that an automatic door opener will be installed upon request and at no additional cost to the future tenant. |
| 99 | In the dwelling unit, the swinging terrace door threshold cannot be taller than 3/4" on the inside.  When taller than 1/4" it must be beveled 1:2. | The terrace door threshold is 1 1/4" tall and is not beveled. | The terrace threshold must be beveled at least 1:2. Slope the subfloor so that the top of the threshold is no more than 3/4" above the finish floor. Install a 1:2 bevel strip. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 100 | Door clear opening must be at least 31 5/8". | The door to the bedroom walk-in closet a clear opening of only about 27 1/2". | To the extent the closet's interior width is 38" or wider, widen the door opening so that the clear opening is at least 31 5/8". |
| 101 | The centerline of the lowest electrical outlet must be at least 15" above the floor. | On the terrace, the centerline of the lowest outlet is only 8". | Move the lowest electrical outlet on the terrace so that it is at least 15" above the floor. |
| 102 | **Unit 6D, 2-bedroom, 2-bath: (This is the only unit of this type.)** | | |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 103 | In the dwelling unit, the swinging terrace door threshold cannot be taller than 3/4" on the inside. When taller than 1/4" it must be beveled 1:2. | The terrace door threshold is 1" tall and is not beveled. | Slope the subfloor so that the top of the threshold is no more than 3/4" above the finish floor. Install a 1:2 bevel strip. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 104 | A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | Inside the master bedroom, the maneuvering space extends only about 9" beside the latch side of the door. | Re-swing the bedroom door in the opposite direction. |
| 105 | The centerline of the lowest electrical outlet must be at least 15" above the floor. | On the terrace, the centerline of the lowest outlet is only 11 1/4". | Move the lowest electrical outlet on the terrace so that it is at least 15" above the floor. |
| 106 | The range must have a 30" by 48" clear floor space that is parallel and centered on the range. | It is 5 3/4" off-center. | Rearrange the oven, cooktop, and hood so that it is centered on the wall with cabinets on both sides. Werber shall offer the remediation to the current tenant, and if the tenant elects to have the remediation completed, Werber will so complete it. If the tenant does not elect to have the remediation completed, then Werber may delay completion of the remediation until it endeavors to substantially renovate the kitchen in this unit. |
| 107 | **Unit 8C, 1-bedroom, 1-bath: (There are 3 units of this type: 7C, 8C, 9C.)** | | |
| 108 | If the closet is deeper than 24", the closet door is intended for user passage. It must provide at least 31 5/8" clear opening. | The walk-in closet is about 39" deep and the clear opening of the door is only about 27". | To the extent the closet's interior width is 38" or wider, widen the door opening so that the clear opening is at least 31 5/8". |
| 109 | Clearance between opposing counters, cabinets, appliances, and walls must be at least 40". | The clearance between the counter and the oven is only 38 1/2". | Replace oven with a model that is flush with the face of the cabinets. |
| 110 | **Unit 8D, Studio, 1-bath: (There are 2 units of this type: 7D, 8D.)** | | |

| | | | |
|---|---|---|---|
| | **EXHIBIT C: 202 8TH STREET REMEDIATION PLAN** | | |
| 111 | Clearance between opposing counters, cabinets, appliances, and walls must be at least 40". | The clearance between the counter and the oven is only about 38 1/2". | Replace oven with a model that is flush with the face of the cabinets. |
| 112 | Clear floor space for the lavatory must be at least 30" by 48". | The toilet reduces the length of the parallel clear floor space to 42". | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |
| 113 | **Unit 8E, 1-bedroom, 1-bath: (There are 2 units of this type: 7E, 8E.)** | | |
| 114 | In the dwelling unit, the impervious balcony surface may be up to 4" below the finish floor and 4 3/4" below the top of the threshold. . | The top of the threshold is 1" tall above the floor inside and 5 1/2" above the balcony surface. | On the inside: Slope the subfloor at 2% so that the top of the threshold is no more than 3/4" above the finish floor. Install a 1:2 bevel strip. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". On the outside: Install tile on the balcony surface so that the surface is within 4 ¾" of the top of the threshold. |
| 115 | Door clear opening must be at least 31 5/8". | The door to the walk-in closet has a clear opening of only about 27 1/2". | To the extent the closet's interior width is 38" or wider, widen the door opening so that the clear opening is at least 31 5/8". |
| 116 | Door clear opening must be at least 31 5/8". | The door to the coat closet has a clear opening of only about 27 1/2". | To the extent the closet's interior width is 38" or wider, widen the door opening so that the clear opening is at least 31 5/8". |
| 117 | The range must have a 30" by 48" clear floor space that is parallel and centered on the range. | It is 5 1/2" off-center. | Rearrange the oven, cooktop, and hood so that it is centered on the wall with cabinets on both sides. Werber shall offer the remediation to the current tenant, and if the tenant elects to have the remediation completed, Werber will so complete it. If the tenant does not elect to have the remediation completed, then Werber may delay completion of the remediation until it endeavors to substantially renovate the kitchen in this unit. |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 118 | **Unit 9D, 1-bedroom, 1-bath: (This is the only unit of this type.)** | | |
| 119 | In the dwelling unit, the impervious balcony surface may be up to 4" below the finish floor and 4 3/4" below the top of the threshold. . | The top of the threshold is 1" tall above the floor inside and 5 1/2" above the balcony surface. | On the inside:  Slope the subfloor at 2% so that the top of the threshold is no more than 3/4" above the finish floor. Install a 1:2 bevel strip. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4".  On the outside: Install tile on the balcony surface so that the surface is within 4 ¾" of the top of the threshold. |
| 120 | The centerline of the lowest electrical outlet must be at least 15" above the floor. | On the living room balcony, the centerline of the lowest outlet is only 13". | Move the lowest electrical outlet on the living room balcony so that it is at least 15" above the floor. |
| 121 | Clearance between opposing counters, cabinets, appliances, and walls must be at least 40". | The clearance between the counter and the oven is only 38 1/2". | Replace oven with a model that is flush with the face of the cabinets. |
| 122 | Toilet centerline must be at least 15" from the side of the lavatory counter and must be at least 18" from the sidewall or tub.  There must be at least 33" between the sidewall and the side of the lavatory. | It is 11 1/4" from the lavatory counter and 17 1/4" from the wall for a total of 28 1/2". | Move the toilet and lavatory so that toilet centerline is at least 15" from the side of the lavatory counter, at least 18" from the sidewall, for a total of at least 33" between the sidewall and the side of the lavatory. |
| 123 | **Unit 10C, 3-bedroom, 2-bath: (This is the only unit of this type.)** | | |
| 124 | Inside thresholds cannot be taller than 1/2".  Where the top of the threshold is more than 1/4" above the landing, the transition must be beveled at least 1:2. | The entry door threshold is 3/4" tall. | Slope the subfloor so that the top of the threshold is no more than 1/2" above the finish floor. Bevel the edges 1:2. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |

| EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|
| 125 In the dwelling unit, the balcony door threshold cannot be taller than 3/4" on the inside.  When taller than 1/4" it must be beveled 1:2. | The balcony door threshold is 1" tall and is not beveled. | The balcony threshold must be beveled at least 1:2. Slope the subfloor so that the top of the threshold is no more than 3/4" above the finish floor. Install a 1:2 bevel strip. Werber may use a different threshold material or type, so long as the threshold is no higher than 3/4" and it is beveled properly at 1:2 if the threshold is higher than 1/4". |
| 126 A forward approach to the pull side of the door is required. Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch. | Inside 2 bedrooms, the maneuvering spaces extend only about 5" beside the latch side of the door. | Re-swing the bedroom doors in the opposite direction. |
| 127 The centerline of the lowest electrical outlet must be at least 15" above the floor. | On the balcony, the centerline of the lowest outlet is only 10". | Move the lowest electrical outlet on the balcony so that it is at least 15" above the floor. |
| 128 The kitchen is U-shaped.  Therefore, the kitchen must clear floor space must be at least 60" wide. | The U-shaped kitchen is only 57" wide. | Move the island to provide 60" between the face of the oven and the edge of the counter. |
| 129 The range must have a 30" by 48" clear floor space that is parallel and centered on the range. | It is 3" off-center. | Rearrange the oven, cooktop, and hood so that it is centered on the wall with cabinets on both sides. Werber shall offer the remediation to the current tenant, and if the tenant elects to have the remediation completed, Werber will so complete it. If the tenant does not elect to have the remediation completed, then Werber may delay completion of the remediation until it endeavors to substantially renovate the kitchen in this unit. |
| 130 The shower must have a 30" x 48" parallel clear floor space where the toes align with the control wall. | In the Master Bath, the vanity blocks the clear floor space to the shower. | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |

| | EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|---|
| 131 | **Unit 11A, 2-bedroom, 2-bath: (There are 2 units of this type: 11A, 12A (no terrace).)** | | |
| 132 | The top of the threshold at the swinging **terrace** door cannot be taller than 1/2" on either side. | On the terrace side, the top of the threshold is about 2" above the terrace. | Adjust the terrace pavers nearest the door so that the pavers is 1/4" below the bottom of the door and slope no more than 2%. |
| 133 | The centerline of the lowest electrical outlet must be at least 15" above the floor. | On the terrace, the centerline of the lowest outlet is only about 8". | Move the lowest electrical outlet on the terrace so that it is at least 15" above the floor. |
| 134 | Clear floor space at the kitchen sink must be at least 30" by 48" and centered. | It is off center by 3 1/2". | Subject to Plaintiff's approval following a video demonstration that shall occur within 30 days of the Effective Date and the parties' good-faith efforts to make any necessary adjustments to the protocol, and with the understanding that Werber will have supplies on hand to implement within 10 days of any tenant's or prospective tenant's request, Werber will implement an agreed-upon kitchen conversion protocol. |
| 135 | The shower must have a 30" x 48" parallel clear floor space where the toes align with the control wall. | In the Master Bath, the vanity blocks the clear floor space to the shower. | Werber will wall-mount the existing Duravit Vero sink or will wall mount a new sink that is substantially similar to the existing Duravit Vero sink. |
| 136 | Toilet centerline must be at least 15" from the side of the lavatory counter and must be at least 18" from the sidewall or tub.  There must be at least 33" between the sidewall and the side of the lavatory. | In the Master Bath, it is 14" from the lavatory counter and 18" from the wall for a total of 32". | Move the toilet and lavatory so that toilet centerline is at least 15" from the side of the lavatory counter, at least 18" from the sidewall, for a total of at least 33" between the sidewall and the side of the lavatory. |
| 137 | **Unit 12B, 1-bedroom, 1-bath: (There are 2 units of this type: 11B, 12B.)** | | |
| 138 | In the dwelling unit, the impervious balcony surface may be up to 4" below the finish floor and 4 3/4" below the top of the threshold. | It is 5 1/4" below the top of the threshold. | On the outside, add 3/4" of height to the balcony surface, which could probably done with tile. Then, raise the guardrail 3/4" for liability reasons.  Alternatively, install a custom door and threshold. |

| EXHIBIT C: 202 8TH STREET REMEDIATION PLAN | | |
|---|---|---|
| 139 | If the closet is deeper than 24", the closet door is intended for user passage.  It must provide at least 31 5/8" clear opening. | The coat closet is 27" deep and the clear opening of the door is only about 30 3/4". | To the extent the closet's interior width is 38" or wider, widen the door opening so that the clear opening is at least 31 5/8". |
| 140 | Clearance between opposing counters, cabinets, appliances, and walls must be at least 40". | The clearance between the counter and the oven is only 38 1/2". | Replace oven with a model that is flush with the face of the cabinets. |
| 141 | Centerline of toilet must be 16" to 18" from sidewall. | The toilet centerline is 19 1/2" from the sidewall. | Move the toilet so that its centerline is between 16" and 18" inches from the sidewall. |

# EXHIBIT D

**EXHIBIT B – FORM OF NOTICE TO RESIDENTS
OR PROSPECTIVE RESIDENTS OF 202 8TH STREET**

Dear Residents:

Building management has been in the process of evaluating whether certain changes should be made to make the building to ensure that the building is even more accessible to tenants and guests with disabilities.  You may have noticed recently that various changes have been made or are underway in the common areas of the building.  More of those changes will follow in future months.

Based on apartment inspections already conducted by management, you may have the option, but not the obligation, to have certain changes made to your apartment.  The list below is not exhaustive; it is intended to give you a sense of the kinds of changes that may be available to you depending on the circumstances in your unit.

**Door Thresholds:**  In some units, adjustments may be made to door thresholds so that they are lower and/or sufficiently beveled.

**Door Openings**:  For some apartments, one or more door openings (including without limitation bedroom doors, non-pocket bathroom doors, and walk-in closet doors) can be adjusted to provide a clear opening of at least 31 3/8" by replacing the door hinges with swing-clear hinges.

**Bedroom Maneuvering Space**:  In some units, the bedroom door can be re-swung so that it opens into the hallway (rather than into the bedroom) which may provide for improved maneuvering space within the bedroom.

**Kitchen Electrical Outlets:**  In some units, an above-counter kitchen outlet can be moved so that the centerline of the outlet is at least 36" inches from the corner.

In offering tenants the option of making certain changes to their units, we are attempting to balance, on the one hand, the desire to make certain changes available to tenants at no cost to them with, on the other hand, the desire not to disrupt tenants who do not want the changes.  It is entirely up to you whether to ask us to make any of the changes for which you may be eligible.

Please review the list of potentially available changes above, and if you would like any available changes to be made in your apartment, **please submit a maintenance request through BuildingLink no later than forty-five (45) days from the date of this letter.**  If you would like to know which changes may be available for your unit, you may contact our office at _____.  Once again, the cost of making these changes will be paid by management and will not result in an increase in your rent.

If you have any questions about the above, please let us know.

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.   Index No. 19 Civ. 1171 (AT) (GWG)

       Plaintiff,    **STIPULATION AND ORDER**
                **OF DISMISSAL**

   v.

JDS DEVELOPMENT LLC;
616 FIRST AVENUE LLC; 202 8th LLC;
SHOP ARCHITECTS LLP;
PROPERTY MARKETS GROUP, INC.;
WERBER MANAGEMENT, INC.; and
202 PARK SLOPE LLC,

       Defendants.
-----------------------------------------------------------X

   The parties to this action, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and (a)(ii) and the So-Ordered Settlement Agreement dated March __ 2021, hereby stipulate to the dismissal with prejudice of this action, including all claims and cross-claims between and among all Parties, with each party to bear its own attorneys' fees and costs, except that the Court shall retain jurisdiction over this action to the extent expressly provided for in the Settlement Agreement.

Dated: New York, New York
   March __, 2021

CUTI HECKER WANG LLP      GOLDBERG SEGALLA, LLP

By: _____   By: _____
  Eric Hecker         Reshma Khanna
  Mariann Wang        Scott Green
  Alice G. Reiter        Shannon T. O'Connor
  305 Broadway, Suite 607    711 Third Avenue, Suite 1900
  New York, New York 10007   New York, New York 10017
  (212) 620-2600       (646) 292-8765

  *Attorneys for Plaintiff*     *Attorneys for Defendants JDS*
              *Development LLC,*
              *616 First Avenue LLC, and 202 8th*
              *LLC*

KAUFMAN DOLOWICH & VOLUCK
LLP

By: _____

     Jennifer Sherven
     Taylor Ferris
     135 Crossways Park Drive, Suite 201
     Woodbury, New York 11797
     (516) 283-8714

     *Attorneys for Defendants Werber*
     *Management, Inc,. and*
     *202 Park Slope LLC*

GORDON REES SCULLY
MANSUKHANI LLP

By: _____

     Christopher Seacord
     Mercedes Colwin
     Jeffrey Camhi
     One Battery Park Plaza, 28th Floor
     New York, New York 10004
     (212) 453-0755

     *Attorneys for Defendant Property*
     *Markets Group, Inc*

ZETLIN & DE CHIARA LLP

By: _____

     Michael Vardaro
     Roy Schwartz
     801 2nd Avenue, 16th Floor
     New York, New York 10017
     (212) 682-6800

     *Attorneys for Defendant SHoP*
     *Architects LLP*

.

IT IS SO ORDERED:


_____
Hon. Analisa Torres, U.S.D.J.
Date:

2